**No. 24-5905**

_____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

_____

CHRISTINA GROFF,
PLAINTIFF/APPELLANT,
v.
KEURIG GREEN MOUNTAIN, INC.,
DEFENDANT/APPELLEE

_____

On Appeal from the
United States District Court for the Central District of California
The Hon. Sunshine S. Sykes, District Judge
No. 5:23-cv-01492-SSS-SP

_____

### APPELLANT CHRISTINA GROFF'S OPENING BRIEF

_____

Dated: December 6, 2024

WADE KILPELA SLADE LLP
Gillian L. Wade
Sara D. Avila
Marc A. Castaneda
Kristy Graham
2450 Colorado Ave., Suite 100E
Santa Monica, CA 90404
Telephone: (310) 667-7273

*Attorneys for Appellant Christina Groff*

# DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Plaintiff-Appellant Christina Groff states, by and though her counsel, that she is not a corporate entity and therefore has no parent corporations, subsidiaries, or affiliates that have issued shares to the public.


Date:  December 6, 2024

WADE KILPELA SLADE LLP


*/s/ Gillian L. Wade*
Gillian L. Wade

*Attorneys for Appellant Christina Groff*

# TABLE OF CONTENTS

**Page**

DISCLOSURE STATEMENT ................................................... i

TABLE OF AUTHORITIES ................................................... ii

INTRODUCTION ................................................................... 1

JURISDICTIONAL STATEMENT ........................................... 4

ISSUES PRESENTED ............................................................. 5

STATEMENT OF THE CASE .................................................. 6

    A.    Keurig Engages in Tying Behavior in Violation of the MMWA ......... 6

    B.    Plaintiff's Purchase of the Product and Resulting Injury ..................... 9

    C.    Procedural History ................................................. 10

SUMMARY OF THE ARGUMENT ........................................ 12

STANDARD OF REVIEW .................................................... 13

ARGUMENT ....................................................................... 14

    I.    The District Court Erred in Finding Plaintiff Was Required to Plead Reliance as an Element to Her UCL Claims ....................................... 14

        A.    There is no reliance requirement for UCL claims that do not sound in fraud ............................................................. 15

        B.    Plaintiff need not allege reliance because Plaintiff's claims are not based on allegations of misrepresentation and deception ... 17

        C.    The lower court's reliance analysis is rooted in a line of inapposite false advertising cases ............................................. 20

        D.    The reasonable consumer standard in the false advertising context is inapplicable here ..................................................... 22

ii

E.  Even Assuming Reliance is Required, Plaintiff Relied on the Product Webpage and Expected the Product Was Subject to a Warranty that Complied with the Law ......................................24

II.  Plaintiff Plausibly Alleged Claims Under the 'Unlawful' and 'Unfair' Prongs of the Unfair Competition Law ...............................................25

A.  Plaintiff Has Standing to Pursue Her UCL Claims .................26

1.  Plaintiff Has Suffered an Economic Injury ....................26

2.  Plaintiff Need Not Demonstrate Damages Under the MMWA for her UCL Claims, But Has Nevertheless Satisfied This Element ......................................................28

B.  Plaintiff Adequately Alleges Unlawful Conduct ......................34

1.  Keurig Engages in Tying Behavior, in Violation of 15 U.S.C. § 2302(c) and 16 C.F.R. § 700.10(c) ................34

2.  The "Without Charge" Exception is Inapplicable .........37

C.  Plaintiff Adequately Alleges Unfair Conduct ...........................40

D.  Plaintiff Has Standing to Seek Injunctive Relief ......................41

III.  The District Court Abused its Discretion in Granting Keurig's Motion to Dismiss *With* Prejudice .......................................................44

CONCLUSION .................................................................................................47

STATEMENT OF RELATED CASES .................................................................48

CERTIFICATE OF COMPLIANCE .....................................................................49

CERTIFICATE OF SERVICE ...........................................................................50

# TABLE OF AUTHORITIES

**Cases**                                                                                    **Page(s)**

*Abers v. Rounsavell*
    116 Cal. Rptr. 3d 860 (Cal. Ct. App. 2010)...................................................36

*Adams v. Hackett*
    7 Cal. 187 (1857) ........................................................................................27

*Altvater v. Breckenridge*
    345 P.2d 358 (Cal. Ct. App. 1959) .......................................................32, 34

*Asencio v. Miller Brewing Co*
    2006 U.S. Dist. LEXIS 103716 (C.D. Cal. Aug. 11, 2006) ........................31

*Ashcroft v. Iqbal*
    556 U.S. 662 (2009).....................................................................................13

*Atchole v. Silver Spring Imps., Inc.*
    379 F. Supp. 2d 797 (D. Md. 2005).............................................................33

*Backus v. General Mills, Inc.*
    122 F. Supp. 3d 909 (N.D. Cal. 2015)..........................................................16

*Bowman v. Wilson*
    672 F.2d 1145 (3d Cir. 1982) ......................................................................26

*Brown v. Stored Value Cards, Inc.*
    953 F.3d 567 (9th Cir. 2020) .......................................................................46

*Burks v. HP Inc.*
    No. 22STCV20806 (Cal. Super Ct., Cnty of L.A.) ......................................41

*Cappello v. Walmart Inc.*
    394 F. Supp. 3d 1015 (N.D. Cal. 2019)........................................................16

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*
    973 P.2d 527 (Cal. 1999).......................................................................29, 40

iv

*Chabner v. United of Omaha Life Ins. Co.*
   225 F.3d 1042 (9th Cir. 2000) .........................................................29, 30

*Clayworth v. Pfizer, Inc.*
   233 P.3d 1066 (Cal. 2010).............................................................17

*Danvers Motor Co., Inc. v. Ford Motor Co.*
   432 F.3d 286 (3d Cir. 2005) .........................................................26

*Davidson v. Kimberly-Clark Corp.*
   889 F.3d 956 (9th Cir. 2018) .................................................42, 43

*Dickerson v. NWAN Inc.*
   2018 U.S. Dist. LEXIS 19842 (D. Ariz. Feb. 7, 2018) ..........................38, 39

*Doc's Dream, LLC v. Dolores Press, Inc.*
   678 F. App'x 541 (9th Cir. 2017).................................................44

*Dore v. Arnold Worldwide, Inc.*
   139 P.3d 56 (Cal. 2006).............................................................36

*Durell v. Sharp Healthcare*
   108 Cal. Rptr. 3d 682 (Cal. Ct. App. 2010).................................15, 20, 21, 22

*Ebner v. Fresh, Inc.*
   838 F.3d 958 (9th Cir. 2016) .........................................................13

*Eminence Capital, LLC v. Aspeon, Inc.*
   316 F.3d 1048 (9th Cir. 2003) .........................................................45

*Foman v. Davis*
   371 U.S. 178 (1962)....................................................................44

*Hall v. City of Los Angeles*
   697 F.3d 1059 (9th Cir. 2012) .........................................................44

*In re iPhone Application Litig.*
   6 F. Supp. 3d 1004 (N.D. Cal. 2013).........................................15, 20, 21, 22

*In re Tobacco II*
207 P.3d 39 (Cal. 2009) ........................................................15, 16, 20, 21, 22

*In re Tracht Gut, LLC*
836 F.3d 1146 (9th Cir. 2016) ..............................................14, 46

*In re Vaccine Cases*
36 Cal. Rptr. 3d 80 (Cal. Ct. App. 2005) ...........................................31

*Ingalls v. Spotify USA, Inc.*
2017 U.S. Dist. LEXIS 110817 (N.D. Cal. July 17, 2017) ...........................30

*Intel Corp. v. Hamidi*
71 P.3d 296 (Cal. 2003) ..................................................32, 34

*Jacobs v. La-Z-Boy Inc.,*
2024 U.S. Dist. LEXIS 208219 (C.D. Cal. Nov. 14, 2024) .........................22

*John R. Sand & Gravel Co. v. United States*
60 Fed. Cl. 230 (2004) ..................................................27

*Kearns v. Ford Motor Co.*
567 F.3d 1120 (9th Cir. 2009) ........................................14

*Kissel v. Code 42 Software, Inc.*
2016 U.S. Dist. LEXIS 184368 (C.D. Cal. Apr. 14, 2016) ....................16, 19

*Kwikset Corp. v. Superior Ct.*
246 P.3d 877 (Cal. 2011) ............................... 14, 16, 20, 21, 22, 26

*Matoff v. Brinker Rest. Corp.*
439 F. Supp. 2d 1035 (C.D. Cal. 2006) .......................................30

*McGarvey v. Penske Auto. Grp., Inc.*
639 F. Supp. 2d 450 (D.N.J. 2009) ....................................33, 37, 39

*Morey v. Vannucci*
75 Cal. Rptr. 2d 573 (Cal. Ct. App. 1998) ....................................36

*Pacific Exp., Inc. v. United Airlines, Inc.*
  959 F.2d 814 (9th Cir. 1992) ........................................................40

*Parker v. DeTella*
  1998 U.S. Dist. LEXIS 4523 (N.D. Ill. Apr. 6, 1998)............................28, 32

*Paulus v. Bob Lynch Ford, Inc.*
  43 Cal. Rptr. 3d 148 (Cal. Ct. App. 2006).....................................30

*Prescott v. Bayer Healthcare LLC*,
  2020 U.S. Dist. LEXIS 136651 (N.D. Cal. July 31, 2020) ..........................43

*Pyskaty v. Wide World of Cars, LLC*
  856 F.3d 216 (2d Cir. 2017) ......................................................33

*Rasmussen v. Apple Inc.*
  27 F. Supp. 3d 1027 (N.D. Cal. 2014)...........................................25

*Robinson v. Onstar*
  2019 U.S. Dist. LEXIS 241113 (S.D. Cal. Mar. 18, 2019)..........................16

*Sasso v. Tesla, Inc.*
  584 F. Supp. 3d 60 (E.D.N.C. Feb. 7, 2022) .....................................33

*Schaer v. Newell Brands Inc.*
  2023 U.S. Dist. LEXIS 28028 (D. Mass. Feb. 15, 2023).............................32

*Skilstaf, Inc. v. CVS Caremark Corp.*
  669 F.3d 1005 (9th Cir. 2012) ....................................................13

*Steroid Hormone Product Cases*
  104 Cal. Rptr. 3d 329 (Cal. Ct. App. 2010).....................................24

*Svenson v. Google, Inc.*
  2015 U.S. Dist. LEXIS 43902 (N.D. Cal. April 1, 2015) ................18, 19, 20

*Thrifty-Tel, Inc. v. Bezenek*
  54 Cal. Rptr. 2d 468 (Cal. Ct. App. 1996).....................................32

*Tucker v. Post Consumer Brands, LLC*
      2020 U.S. Dist. LEXIS 71090 (N.D. Cal. Apr. 21, 2020)............................43

*United States v. Lucero*
      989 F.3d 1088 (9th Cir. 2021) ........................................................................35

*Williams v. Gerber Prods. Co.*
      552 F.3d 934 (9th Cir. 2008) ..........................................................................23


**Statutes**

15 U.S.C. § 2301 ...........................................................................................................1

15 U.S.C. § 2302(c) .................................................................................6, 28, 34, 37

15 U.S.C. § 2304(d) ..................................................................................................39

15 U.S.C. § 2310(d)(1).............................................................................................28

16 C.F.R. § 700.1 ........................................................................................................1

16 C.F.R. § 700.10(c)..............................................................6, 28, 34, 35, 37, 38

28 U.S.C. § 1291 .........................................................................................................4

28 U.S.C. § 1332(d) ...................................................................................................4

Cal. Bus. & Prof. Code § 17200 ...............................................................................1

Cal. Bus. & Prof. Code § 17204 .......................................................................26, 28

Cal. Bus. & Prof. Code § 17602 .............................................................................30

Cal. Bus. & Prof. Code § 22576 .............................................................................19

Cal. Civ. Code § 1770(a) .........................................................................................21

Fed. R. Civ. P. 15(a)...........................................................................................26, 44

# INTRODUCTION

This class action concerns Defendant/Appellee Keurig Green Mountain, Inc.'s ("Defendant" or "Keurig") unlawful business practices regarding its consumer warranties. Plaintiff/Appellant Christina Groff ("Plaintiff") claims Keurig's warranty violates the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.* ("Magnuson-Moss" or "MMWA") and its implementing regulations 16 C.F.R. §§ 700.1, *et seq.*, which prohibit manufacturers from conditioning warranty coverage on the use of only authorized repair services or parts. Keurig's warranty conveys to consumers that the warranty will be void if they use third-party repair services or non-Keurig parts. This practice, known as "tying," is forbidden by the MMWA as it restricts consumer choice and gives manufacturers undue control over repair markets. Plaintiff, who purchased a Keurig K-Mini Plus Coffee Maker in July 2022, claims Keurig's violations of the MMWA render it liable under the "unlawful" and "unfair" prongs of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, et seq. ("UCL").

In its Order granting Defendant's Motion to Dismiss the Second Amended Complaint, the District Court erroneously found Plaintiff failed to demonstrate statutory standing to sue under the UCL, on grounds she did not adequately allege she relied on Keurig's unlawful tying provision when purchasing her coffee maker. Specifically, the District Court found Plaintiff did not claim that she read or was

aware of the warranty's unlawful tying condition before or at the time of purchase, nor did she allege that she relied on it when deciding to pay a premium for the product. Despite this matter involving no misrepresentations or deception, the District Court maintained her claims still effectively sounded in fraud, which requires showing actual reliance. The District Court concluded that Plaintiff did not meet this standard and granted Keurig's Motion to Dismiss. Additionally, the District Court denied Groff leave to amend the complaint, finding she could not cure the deficiencies in her allegations.

As discussed more fully herein, the District Court erred in finding the Second Amended Complaint sounded in fraud and that Plaintiff was required to plead reliance. The District Court did not identify a single misrepresentation in this action, as there were no allegations in the Second Amended Complaint ("SAC") concerning any misrepresentations or fraud. Rather, Plaintiff alleges Defendant unlawfully conditions its Warranty on the use of only authorized repair service and/or authorized replacement parts. There is no deception here—rather, Defendant is violating the MMWA through warranty language that deters or prohibits third-party repair, harming Plaintiff's property interest in the product she purchased.

The absence of any fraud theory obviates the need to plead "reliance" for purposes of standing under the UCL. There are only two elements to Plaintiff's

2

"unlawful" and "unfair" prong UCL claim: (1) whether Keurig engaged in unlawful and/or unfair business practices (i.e., selling a product subject to a warranty containing an unlawful tying provision) and (2) whether Plaintiff suffered an economic injury as a result of Keurig's unlawful and/or unfair business practices. Plaintiff's SAC clearly articulates Keurig's violations of the MMWA and demonstrates Plaintiff suffered an economic injury because she overpaid for a product subject to unlawful tying provisions. California law recognizes the loss of the full benefit of the bargain and diminution in value as cognizable economic injuries sufficient to confer standing under the UCL.

Additionally, the District Court abused its discretion by denying Plaintiff leave to amend the complaint, failing to provide an adequate reason as required by Ninth Circuit precedent and Rule 15's liberal amendment standard. The District Court's single-sentence explanation did not address why amendment could not cure the purported deficiencies by further making clear that Plaintiff's claims did not rely on a fraud theory. Even if dismissal on the merits is upheld, the refusal to allow further amendment is reversible error, as Plaintiff demonstrated a good faith attempt to address prior deficiencies and should be afforded an opportunity to amend.

## JURISDICTIONAL STATEMENT

The Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291 because this is an appeal following the District Court's dismissal of the action with prejudice.

The District Court had jurisdiction over the underlying dispute pursuant to the Class Action Fairness Act of 2005 (28 U.S.C. §§ 1332(d)) ("CAFA"), because the consolidated Class Action Complaint alleged damages in excess of $5,000,000 and there existed minimal diversity between at least one of the class members and Defendant, and none of the exceptions applied. 28 U.S.C. § 1332(d).

## ISSUES PRESENTED

Whether the District Court erred in dismissing Plaintiff's UCL claims on grounds she failed to plead reliance, despite the Second Amended Complaint containing no allegations of false advertising, fraud, or deception?

Whether the District Court abused its discretion in granting Keurig's Motion to Dismiss without leave to amend and with prejudice?

## STATEMENT OF THE CASE

### A.    Keurig Engages in Tying Behavior in Violation of the MMWA.

Defendant's Warranty provides that "[o]nly the use of Keurig® K-Cup® brand pods and accessories will guarantee the proper functioning and lifetime of your Keurig® brewer." 4-ER-606. "Any damage to or malfunction of your brewer resulting from the use of non-Keurig® pods and accessories may not be covered by this warranty or may result in a service fee if the damage or malfunction is determined to be caused by such use." 4-ER-606-07. Additionally, the Warranty provides: "Nor does this warranty cover damages caused by use of non-Keurig® pods or accessories, services performed by anyone other than Keurig® or its authorized service providers, use of parts other than genuine Keurig® parts, or external causes such as abuse, misuse, inappropriate power supply, or acts of God." 4-ER-607.

The foregoing language directly violates Magnuson-Moss and its implementing regulations. *See* 15 U.S.C. § 2302(c); 16 C.F.R. § 700.10(c). Section 2302(c) provides "[n]o warrantor of a consumer product may condition his written or implied warranty of such product on the consumer's using, in connection with such product, any article or service . . . which is identified by brand, trade, or corporate name." Similarly, 16 C.F.R. § 700.10(c) provides "[n]o warrantor may condition the continued validity of a warranty on the use of only authorized repair

6

service and/or authorized replacement parts for non-warranty service and
maintenance . . . ."

Even if Defendant did not actually impair the Warranty by conditioning it on
the use of only authorized repair service and/or authorized replacement parts, the
warranty language certainly conveys as much to consumers, which itself violates
anti-tying regulations. Plaintiff alleged facts demonstrating consumer advocates
understood the Warranty language to exclude the use of third-party repairs and
parts:

- **"Fixing The K"** – a website devoted to "Keurig Troubleshooting"
  states "We want to highlight any repairs carried out on your brewer
  that Keurig does not do will void the warranty. So PLEASE DO NOT
  attempt any repairs on your machine if you are still under their
  warranty. We mention this in several places on our site, but we
  wanted to make sure you saw it here too."[1]

- **"Coffee Grump"** – in an article titled "Can I Fix My Keurig? A
  Realistic Guide," the author post the FAQ "What can void Keurig
  warranty?" and states, *inter alia*, "If you attempt to repair the unit, the
  warranty will be void."[2]

---

[1] 4-ER-607 (*citing* Fixing the K, "Keurig Warranty – Understanding Your Rights"
(available at https://fixingthek.com/keurig-warranty-understanding-your-rights/)).
[2] 4-ER-607 (*citing* Coffee Grump, "Can I Fix My Keurig? A Realistic Guide"
(available at https://coffeegrump.com/a-realistic-guide-to-fixing-your-keurig/)).

- **"My Virtual Coffee House"** – in an article titled "Understanding Your Keurig Warranty – What is in the fine print," the author explicitly cautions: "The big thing here we want to highlight is that any repairs that are carried out on your Keurig brewer that are not done by Keurig will make the warranty void. So PLEASE DO NOT attempt any repairs on your machine if you are still under their warranty."[3]

- **"Lucky Belly"** – in an article titled "10 Easy Steps To Disassemble A Keurig," the author writes "One word of warning: don't try your own repairs if your Keurig is still under warranty. Any attempts to fix it yourself will void the warranty."[4]

Moreover, as alleged in the SAC, the public interest advocacy group US PIRG contacted Defendant's customer service and, posing as a Keurig customer, asked if third-party repair would void the Warranty. Defendant's representative unequivocally stated that it would.

---

[3] 4-ER-607-08 (*citing* My Virtual Coffee House, "Understanding Your Keurig Warranty – What is in the fine print" (available at https://myvirtualcoffeehouse.com/understanding-your-keurig-warranty-what-is-in-the-fine-print)).

[4] 4-ER-608 (*citing* Lucky Belly, "10 Easy Steps To Disassemble A Keurig," (available at https://www.luckybelly.com/how-to-take-apart-a-keurig/)).



4-ER-608-09, Fig. 1.

**B.      Plaintiff's Purchase of the Product and Resulting Injury**

In July 2022, Plaintiff purchased a Keurig K-Mini Plus Coffee Maker (the

"Product", manufactured by Keurig. 4-ER-612. This Product was subject to

Defendant's Warranty over the course of a one-year period following Plaintiff's

purchase (the "Warranty Period"). 4-ER-612. For the reasons set forth in the

preceding section, Plaintiff was unable to repair her Product via a third party,

independent repair service during the Warranty Period without purportedly voiding

her Warranty. This condition of the Warranty is unlawful and has caused Plaintiff

injury. Specifically, Plaintiff suffered an economic injury because the unlawful

tying provisions in the Warranty diminished the value of the Product. 4-ER-612.

Accordingly, Plaintiff suffered an economic injury because she would not have

paid as much as she did for the Product due to the Warranty's unlawful tying provisions. 4-ER-612. Further, Plaintiff anticipates buying a new Product in the future, and would consider purchasing a Product from Defendant, but does not wish to have her rights under Magnuson-Moss thwarted by Defendant's unlawful tying provisions in its Warranty. 4-ER-612-13.

### C.    Procedural History

Plaintiff's First Amended Class Action Complaint ("FAC") included allegations suggesting Defendant made certain misrepresentations to Plaintiff about the validity of her coffee maker warranty. 7-ER-1679, 7-ER-1680, 7-ER-1691, 7-ER-1692, 7-ER-1693. The District Court seized on this misrepresentation theory in dismissing Plaintiff's UCL claims. *See* 4-ER-639-40 (characterizing Defendant's alleged intentional misrepresentations as the "crux" of Plaintiff's UCL claims and finding that Plaintiff failed to allege actual reliance on the warranty's unlawful tying provisions). In its order dismissing the FAC, the Court granted Plaintiff leave to amend. 4-ER-640. Plaintiff then filed an amended complaint, the dismissal of which is the subject of this appeal.

In the Second Amended Class Action Complaint ("SAC"), Plaintiff sought to excise the theory undergirding the court's previous dismissal of Plaintiff's UCL claims. The SAC does not allege that Plaintiff was deceived by any misrepresentation or omission by Defendant.  *See* 4-ER-615-18. Rather, the SAC

10

alleges that Defendant's representations are warranty-voiding restrictions that violate Magnuson-Moss and its anti-tying provisions. *See* 4-ER-601, 4-ER-610, 4-ER-617. Plaintiff lost money because she purchased a product of diminished value stemming from a warranty that restricts her ability to use third-party repairs and parts. 4-ER-612, 4-ER-617. The crux of Plaintiff's UCL claims in the SAC,[5] then, is that the warranty's tying provision is unlawful, and that unlawfulness diminished the value of the product that Plaintiff purchased. Under this theory, Plaintiff need not to have relied on any misrepresentation in order to have suffered harm as a result of Defendant's unlawful and unfair conduct.

Despite Plaintiff having excised any misrepresentation theory from the SAC, in its dismissal order, the District Court characterized the allegations in the SAC as "largely unchanged" from the FAC.[6] *See* 1-ER-2-6. The District Court again dismissed Plaintiff's UCL claims on reliance grounds, reasoning that the crux of Plaintiff's allegations remained the same as in the FAC. 1-ER-5. Because, according to the Court, Plaintiff did not allege that she read and relied on the unlawful tying provision the warranty, she again failed to demonstrate statutory

---

[5] Plaintiff asserts two UCL causes of action against Defendant—one under the UCL's "unlawful" prong and one under the "unfair" prong. Both claims involve the same root misconduct. *See* 4-ER-617-18.
[6] In the District Court's view, the "crux" of the allegations in the SAC remained the same—that "Keurig made misrepresentations to [Plaintiff] and similarly situated consumers that the warranty's validity is conditioned on her using an authorized provider to perform repairs…in violation of the Magnusson-Moss Warranty Act's anti-tying provisions." 1-ER-4-5.

11

standing under the UCL. 1-ER-4-5. The District Court also denied Plaintiff's

request for leave to amend. 1-ER-6.

## SUMMARY OF THE ARGUMENT

The District Court erred in finding the Second Amended Complaint sounded

in fraud and that Plaintiff was required to plead reliance. This action is not a false

advertising case, and the District Court did not identify a single misrepresentation

in this action, as there were no allegations concerning any misrepresentations or

fraud. Rather, Defendant sold Plaintiff a product with a faulty warranty that

diminished the value of the product.

Additionally, the District Court abused its discretion by denying Plaintiff

leave to amend the complaint, failing to provide an adequate reason as required by

Ninth Circuit precedent and Rule 15's liberal amendment standard. The District

Court's single-sentence explanation did not address why amendment could not

cure the purported deficiencies, particularly where Plaintiff's claims did not rely on

a fraud theory. Even if dismissal on the merits is upheld, the refusal to allow

further amendment is reversible error, as Plaintiff demonstrated a good faith

attempt to address prior deficiencies and should be afforded at least another

opportunity to amend before determining that amendment is futile.

Lastly, Defendant may argue on appeal that, to the extent this Court finds the

District Court made the foregoing errors, dismissal with prejudice was nevertheless

appropriate because (1) Plaintiff lacked statutory standing to pursue her UCL Claims because she did not adequately allege she suffered an economic injury, (2) Plaintiff failed to allege damages under the MMWA, (3) Plaintiff did not adequately allege unlawful conduct violative of the MMWA, (4) assuming Plaintiff alleged unlawful tying conduct, such conduct is not violative of the MMWA because Defendant provided repairs without charge, and (5) Plaintiff failed to assert a viable claim under the 'unfair' prong of the UCL. The District Court did not reach a determination on these issues, however, to the extent this Court were to address these issues, each of these arguments are without merit, for the reasons set forth *infra*.

## STANDARD OF REVIEW

This Court "review[s] de novo the district court's grant of a motion to dismiss under [Federal Rule of Civil Procedure] 12(b)(6), accepting all factual allegations in the complaint as true and construing them in the light most favorable to the nonmoving party." *Ebner v. Fresh, Inc.*, 838 F.3d 958, 962 (9th Cir. 2016) (*quoting Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1014 (9th Cir. 2012)). Determining whether a complaint states a plausible claim for relief is a "context-specific task," requiring "the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

13

Additionally, a district court's grant of a motion to dismiss without leave to amend and with prejudice is reviewed for abuse of discretion. *In re Tracht Gut, LLC*, 836 F.3d 1146, 1150 (9th Cir. 2016).

## ARGUMENT

## I.   The District Court Erred in Finding Plaintiff Was Required to Plead Reliance as an Element to Her UCL Claims.

The District Court held that Plaintiff's UCL claims sound in fraud and, as a result, there is a reliance requirement bound up in those claims' causation element.[7] *See* 1-ER-4 ("In UCL cases that involve allegations that sound in fraud, the phrase 'as a result of' requires that a plaintiff show that she actually relied on the misrepresentation.") (citing *Kwikset Corp. v. Superior Ct.*, 246 P.3d 877, 888 (Cal. 2011)). Because, per the District Court's reasoning, Plaintiff did not allege that she read and relied on the warranty's unlawful tying provision when she decided to purchase her coffee maker, she failed to allege statutory standing under the UCL. 1-ER-4-5.

---

[7] The District Court also reasoned that because Plaintiff's UCL claims sound in fraud, Rule 9(b)'s heightened pleading requirement applies. *See* 1-ER-4. Because this case does not involve allegations of fraud for the reasons discussed, the court's holding as to Rule 9(b) is also erroneous. *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1122 (9th Cir. 2009) ("To the extent a party does not aver fraud, the party's allegations need only satisfy the requirements of Rule 8(a)(2).").

14

A.      **There is no reliance requirement for UCL claims that do not sound in fraud.**

The District Court's reliance analysis goes astray at step one. Plaintiff's allegations do not sound in fraud; they do not so much as allude to Plaintiff being deceived by any warranty misrepresentation or omission by Defendant. Under Ninth Circuit precedent, Plaintiff need not allege reliance on any purported misrepresentations by Defendant because Plaintiff does not allege fraud in the first place.

There can be no doubt that the "as a result of" language in the UCL imparts a reliance requirement for claims under the UCL's fraudulent prong. *See In re Tobacco II*, 207 P.3d at 39 (the "as a result of" language "imposes an actual reliance requirement on plaintiffs prosecuting a private enforcement action under the UCL's fraud prong."). The same is true of unlawful- or unfair-prong claims, but only when "the predicate unlawfulness is misrepresentation and deception." *Durell v. Sharp Healthcare*, 108 Cal. Rptr. 3d 682, 694 (Cal. Ct. App. 2010); *accord Kwikset*, 246 P.3d at 888 n. 9; *In re iPhone Application Litig.*, 6 F. Supp. 3d 1004, 1014 (N.D. Cal. 2013).

For purposes of the UCL, when the predicate unlawfulness does not involve misrepresentation and deception, however, there is no reliance requirement. *In re Tobacco II Cases*, 207 P.3d 20, 39 n. 17 (Cal. 2009) ("There are doubtless many

15

types of unfair business practices in which the concept of reliance, as discussed here, has no application."); *see also Kissel v. Code 42 Software, Inc*., No. SACV 15-1936-JLS (KESx), 2016 U.S. Dist. LEXIS 184368, at *21-23 (C.D. Cal. Apr. 14, 2016) ("Following *Tobacco II* Cases and *Kwikset*, courts have used a relaxed causation standard where a UCL claim does not sound in fraud. . . . Given that Kissel's claims do not sound in fraud, we similarly decline to require reliance as to her allegations of causation.");*Cappello v. Walmart Inc.*, 394 F. Supp. 3d 1015, 1020 (N.D. Cal. 2019) ("When a plaintiff alleges a different type of unfair competition not based on a misrepresentation, however, courts have dispensed with [the] actual reliance requirement."); *Robinson v. Onstar*, No. 15-CV-1731 JLS (BGS), 2019 U.S. Dist. LEXIS 241113, at *21 (S.D. Cal. Mar. 18, 2019) ("[Plaintiff's] allegations…do not sound in fraud and, consequently, the Court agrees with Plaintiff that she need not plead reliance to establish standing under the UCL."); *Kissel v. Code 42 Software, Inc.*, No. 8:15-cv-01936, 2016 U.S. Dist. LEXIS 184368, 2016 WL 7647691, at *2 (C.D. Cal. Apr. 14, 2016) ("[T]he California Supreme Court has consistently indicated that this concept of reliance may not apply to UCL claims that do *not* sound in fraud.") (citations omitted); *see also Backus v. General Mills, Inc.*, 122 F. Supp. 3d 909, 926 (N.D. Cal. 2015) ("[The plaintiff's claims do not sound in fraud, and the UCL does not carry a heightened standard for standing in this case."). That is the case here.

16

**B.      Plaintiff need not allege reliance because Plaintiff's claims are not based on allegations of misrepresentation and deception.**

The District Court ignored the line of authority from which it should have drawn guidance—cases where the plaintiffs' UCL claims were not rooted in allegations of misrepresentation and deception. This case is of that ilk. Because Plaintiff's unlawful- and unfair-prong claims stem from Defendant's straightforward violation of the MMWA rather than any misrepresentations or deception, those claims do not sound in fraud.[8] As a result, there is no reliance requirement that Plaintiff must satisfy.

UCL cases involving statutory violations outside the false advertising context are particularly instructive. In *Clayworth v. Pfizer, Inc.*, 233 P.3d 1066 (Cal. 2010), the California Supreme Court declined to require the plaintiffs to establish reliance in support of their UCL claim. There, the plaintiff pharmacies sued pharmaceutical manufacturers defendants, alleging they conspired to fix prices of brand-name drugs in the United States, resulting in inflated prices between 50% and 400% higher than those for the same drugs in Canada, where

---

[8] Because the UCL's unfair prong "borrows" violations of other federal, state, or local laws, Plaintiff's claim under that prong stems from Defendant's statutory violation of the MMWA in the most literal sense. *See* 4-ER-616-17. Plaintiff's unfair-prong claim stems from the same statutory violation because that unlawful conduct is a *per se* violation of the unfair prong, is immoral, unethical, unscrupulous, or substantially injurious to consumers, and because the MMWA provisions that Defendant violated are the source of the public policy for purposes of the "tethering" test. *See* 4-ER-617-18.

17

pricing is regulated. *Id.* at 1070-71. The plaintiffs claimed they were forced to pay inflated prices and sued under the Cartwright Act and the UCL. *Id.* The Supreme Court held the plaintiffs had standing to bring a UCL claim, finding they suffered an economic injury as a result of unfair competition. *Id.* at 1087 (the UCL "requires only that a party have 'lost money or property,' and [plaintiffs] indisputably lost money when they paid an allegedly illegal overcharge"). The court did not hold plaintiffs were required to plead reliance—it was sufficient that the plaintiffs paid overcharges as a result of the defendant's unlawful business practices. *Id.*

In *Svenson v. Google, Inc.*, the court correctly rejected the same characterization of the plaintiffs' UCL claims that the lower court here adopted. No. 13-cv-04080-BLF, 2015 U.S. Dist. LEXIS 43902 (N.D. Cal. April 1, 2015). The plaintiffs in *Svenson* alleged that Google violated its own privacy policies by disclosing app purchasers' personal information despite a California statute prohibiting an online service from failing to comply with its own privacy policies. *Id.* at 30. That statutory violation was the basis of the plaintiffs' UCL unlawful-prong claim. *See id.* Google, nonetheless, argued that the "thrust" of the plaintiff's UCL claim was that Google misrepresented its practices. Because, per Google, the plaintiff was alleging deception, the plaintiff's UCL claim had a reliance requirement that the plaintiff failed to satisfy. *Id.* at *33. The court flatly rejected

18

Google's attempt to impose a reliance requirement: "[The plaintiff's] unlawful prong claim alleges in a straightforward manner that Google violated its own privacy policies in violation of California Business and Professions Code § 22576. No reliance is required for a violation of § 22576." *Id.*

Similarly, in *Kissel*, the court declined to impose a reliance requirement where the plaintiff's unlawful- and unfair-prong claims were based on the failure of the defendant, an operator of an online subscription marketing service, to comply with the requirements of California's Automatic Renewal Law. 2016 U.S. Dist. LEXIS 184368, at *23 ("Given that [the plaintiff's] claims do not sound in fraud, we…decline to require reliance as to her allegations of causation.").[9]

The sound reasoning of *Svenson* and *Kissel* applies because Defendant's misconduct is akin to the statutory violations in those cases. Here, the predicate unlawfulness is Defendant's straightforward violation of the MMWA's anti-tying provisions. Contrary to the District Court's characterization, *see* 1-ER-5, the crux of the SAC is not that Defendant's warranty statements misled and deceived Plaintiff and other consumers, it is that those representations are proscribed by the MMWA and its implementing regulations. The "as a result of" language in the UCL, therefore, does not impart a reliance requirement here. And Plaintiff need not

---

[9] In *Kissel*, the court described this as a "relaxed causation standard". *See id.* at *22-*23.

plead with particularity how she was deceived, nor allege that she relied on any misrepresentation.

**C.   The lower court's reliance analysis is rooted in a line of inapposite false advertising cases.**

The District Court employed precisely the type of erroneous reframing of Plaintiff's UCL claims that the court in *Svenson* rightly rejected. In so doing, the District Court rooted its reliance analysis in inapposite case law. In each case the Court cited, the plaintiff's theory of liability was that the defendant engaged in misrepresentations and deceived consumers. 1-ER-4; *see In re Tobacco II Case*, 207 P.3d 20, 27 (Cal. 2009) (challenging the defendants' "public disinformation strategy... concerning the health effects of cigarette smoking"); *Kwikset*, 246 P.3d at 883, 888 n. 9 (where the plaintiffs challenged the "Made in the U.S.A." label on the defendants' locksets, "[t]he theory of the case [was] that [the defendants] engaged in misrepresentations and deceived consumers"); *In re iPhone*, 6 F. Supp. 3d at 1008, 1013 (defendant made misrepresentations about its data collection and privacy practices); *Durell*, 108 Cal. Rptr. 3d at 692 (alleging various misrepresentations, including that the defendant's website made false promises of affordable care and that the defendant's patient services agreement misrepresented how patients are charged for services). As explained, and as the District Court

20

failed to acknowledge, Plaintiff's theory of liability here, in contrast, is not misrepresentation and deception.

The types of claims brought by the plaintiffs in the cases cited by the District Court further underscore the fraud-based nature of the allegations in those cases. *In re Tobacco II* involved a claim under the fraudulent prong of the UCL. *See In re Tobacco II*, 207 P.3d at 29 ("We are here concerned with the third prong of the statute—an allegation of a fraudulent business act or practice, specifically claims of deceptive advertisements and misrepresentations by the tobacco industry about its products."). While *Kwikset* and *Durell* involved unlawful-prong claims, in both cases, those UCL claims were rooted in false advertising statutes. *See Kwikset*, 246 P.3d at 881 ("The UCL count for unlawful business practices alleged [the defendant's] marketing violated both specific state and federal statutes regulating country of origin labeling…and general statutes governing false advertising."); *Durell*, 108 Cal. Rptr. 3d at 692 (predicate unlawfulness was the defendants' alleged violation of three subdivisions of the Consumer Legal Remedies Act ("CLRA")) (citing Cal. Civ. Code § 1770(a)(5), (9), (16)).[10] Similarly, *In re iPhone* involved both CLRA and UCL claims—all rooted in allegations of the defendant's misrepresentations. *See In re iPhone*, 6 F. Supp. 3d at 1012-13

---

[10] *Kwikset* also involved alleged CLRA violations, *see Kwikset*, 246 P.3d at 881 (citing Cal. Civ. Code §§ 1770 (a)(4), (5), (7), (9), (16)), as well as violations of other state and federal statutes.

(gravamen of the plaintiffs' claims under all three prongs of the UCL was that the defendant "misrepresented its data collection and privacy practices").

Unlike in *In re Tobacco II*, Plaintiff does not assert a claim under the UCL's fraudulent prong. And unlike in *Kwikset*, *Durell*, and *In re iPhone*, the predicate unlawfulness for Plaintiff's unlawful-prong claim is not a violation of the CLRA or any other false advertising statute. As explained, this is because Defendant's warranty representations are not unlawful because they are deceptive. Rather, those representations are unlawful because tying a warranty to exclusive repair by the manufacturer is expressly prohibited by the MMWA and Defendant's representations lead consumers to believe that third-party repair will void the warranty. *See* 4-ER-601, 4-ER-606-07, 4-ER-608, 4-ER-616.

### D.    The reasonable consumer standard in the false advertising context is inapplicable here.

The District Court's reliance analysis may have gone astray because the complaint alludes to a reasonable consumer. *See* 4-ER-604, 4-ER-607, 4-ER-616.[11] The reasonable consumer standard, of course, is prevalent in the deceptive advertising context. *See, e.g., Jacobs v. La-Z-Boy Inc.,* No. 2:24-cv-04446-JLS-AS, 2024 U.S. Dist. LEXIS 208219, at *12 (C.D. Cal. Nov. 14, 2024) ("For claims

---

[11] The district court cited Paragraph 67(v) of the SAC in its reliance analysis. *See* 1-ER-5.

made under the UCL, FAL, and CLRA, courts apply the 'reasonable consumer' test, which requires a plaintiff to show that 'members of the public are likely to be deceived.'" (citing *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008)). The standard referenced in the complaint, however, is not the reasonable consumer standard in false advertising cases but instead concerns the FTC's standard for determining if the warranty language results in unlawful tying.

Plaintiff does not allege that Defendant's representations are likely to deceive members of the public. Consistent with FTC guidance clarifying that a manufacturer's disclaimer of liability need not be explicit for it to be prohibited by the MMWA, Plaintiff alleges that Defendant's representations lead reasonable consumers to believe that third-party repair will void Defendant's warranty. This is not an allegation of deception; it is the opposite. This is an allegation that Defendant's representations in the warranty text are precisely what consumers understand them to be—prohibited warranty restrictions against third-party repair. While allegations of what a reasonable consumer would understand a representation to mean in the false advertising context usually relate to allegations of misrepresentations and deception, that is not the case here. Should these allegations have caused the District Court to misconstrue Plaintiff's allegations and UCL claims, Plaintiff respectfully asks the Court to right the ship.

**E.**    **Even Assuming Reliance is Required, Plaintiff Relied on the Product Webpage and Expected the Product Was Subject to a Warranty that Complied with the Law.**

To the extent the Court holds reliance is nevertheless required, despite the lack of fraud allegations, the District Court erred in finding that the Plaintiff failed to plead it. As alleged in the SAC, at the time Plaintiff purchased the Product on Amazon.com, Plaintiff saw a notice on the webpage that the Product had a warranty—however, the terms of the Warranty were not available on the webpage, via link or otherwise. 4-ER-612. In reliance on that notice, Plaintiff reasonably expected that the Product was subject to a warranty that complied with the law. *Id.* Following her purchase, Plaintiff learned she is unable to repair her Product via a third party, independent repair service without purportedly voiding her Warranty. *Id.* However, this condition of the Warranty is unlawful, and has caused Plaintiff injury. *Id.*; *see also Steroid Hormone Product Cases*, 104 Cal. Rptr. 3d 329, 339 (Cal. Ct. App. 2010) ("The 'damage' [plaintiff] alleged in this case is that, in reliance on GNC's deceptive conduct, he bought an illegal product he would not have bought had he known it was illegal. . . .  "[T]he question that must be answered in this case is whether a reasonable person would find it important when determining whether to purchase a product that it is unlawful to sell or possess that product. It requires no stretch to conclude that the proper answer is 'yes' . . . .").

24

The District Court erred in finding Plaintiff's allegations fell short of the UCL's reliance requirement in cases sounding in fraud. Although Plaintiff did not allege having read the specific unlawful tying provision before purchasing the Product, she has alleged sufficient information about the specific information on which she relied (i.e., the existence of a warranty which she reasonably presumed to be lawful), such that Defendant had notice of her claims. *See Rasmussen v. Apple Inc.,* 27 F. Supp. 3d 1027, 1045 (N.D. Cal. 2014) ("While Plaintiff has not expressly alleged the precise statements or advertisements upon which he has relied, he has alleged sufficient information about the information on which he relied, as well as examples of similar specific statements from the same sources, to give [Defendant] notice of the nature of the alleged misrepresentations at issue.") (emphasis omitted).

## II.    Plaintiff Plausibly Alleged Claims Under the 'Unlawful' and 'Unfair' Prongs of the Unfair Competition Law.

In its Motion to Dismiss the SAC, Defendant argued (1) Plaintiff lacked statutory standing to pursue her UCL Claims because she did not adequately allege she suffered an economic injury, (2) Plaintiff failed to allege damages under the MMWA, (3) Plaintiff did not adequately allege unlawful conduct violative of the MMWA, (4) assuming Plaintiff alleged unlawful tying conduct, such conduct is not violative of the MMWA because Defendant provided repairs without charge, and (5) Plaintiff failed to assert a viable claim under the 'unfair' prong of the UCL. The

District Court did not reach a determination on these issues, however, to the extent this Court were to address these issues, each of these arguments are without merit. Additionally, to the extent this Court determines the SAC should have been dismissed on any of these grounds, Plaintiff respectfully requests leave to amend. *See* Fed. R. Civ. P. 15(a)(2) ("[t]he court should freely give leave [to amend] when justice so requires.").

### A.  Plaintiff Has Standing to Pursue Her UCL Claims.

### 1.  Plaintiff Has Suffered an Economic Injury.

Standing under the UCL is limited to those who have "suffered injury in fact and [have] lost money or property as a result of . . . unfair competition." <u>Cal. Bus. & Prof. Code</u> § 17204. Accordingly, to bring a UCL action, a private plaintiff must be able to show economic injury caused by unfair competition. *Kwikset*, 246 P.3d at 885. The "quantum of lost money or property necessary to show standing is only so much as would suffice to establish injury in fact . . . [ and] federal courts have reiterated that injury in fact is not a substantial or insurmountable hurdle; as then-Judge Alito put it: 'Injury-in-fact is not Mount Everest.' . . . Rather, it suffices for federal standing purposes to "'allege[] some specific, 'identifiable trifle' of injury."'" *Id*. at 886 (*quoting Danvers Motor Co., Inc. v. Ford Motor Co*., 432 F.3d 286, 294 (3d Cir. 2005) (*quoting Bowman v. Wilson*, 672 F.2d 1145, 1151 (3d Cir. 1982)) (emphasis added).

26

"There are innumerable ways in which economic injury from unfair competition may be shown. A plaintiff may (1) surrender in a transaction more, or acquire in a transaction less, than he or she otherwise would have; (2) have a present or future property interest diminished; (3) be deprived of money or property to which he or she has a cognizable claim; or (4) be required to enter into a transaction, costing money or property, that would otherwise have been unnecessary." *Id.* at 885-86. Plaintiff here has suffered an economic injury because "the unlawful tying provisions in the Warranty diminished the value of the Product." 4-ER-612.

Indeed, Plaintiff has adequately alleged Defendant diminished her property interests with respect to the Product she purchased. Plaintiff is unable to repair her Product via a third party, independent repair service without purportedly voiding her Warranty. 4-ER-612. Indeed, that property interest is diminished where, as here, customers reasonably believe that they cannot obtain third-party repair without voiding their warranty. As has been long recognized by California courts, "[t]he right of property consists in the free use, enjoyment, and disposal of all a person's acquisitions, without any control or diminution, save only by the laws of the land." *Adams v. Hackett*, 7 Cal. 187, 198 (1857) (*citing* Vide Bouvier's Law Dictionary, Tit. "Property," "Things"); *John R. Sand & Gravel Co. v. United States*, 60 Fed. Cl. 230, 237 (2004) (same). Indeed, "[a]ccess to one's personal

27

property and the free use of it is normally considered a property right," *Parker v. DeTella*, No. 98 C 0644, 1998 U.S. Dist. LEXIS 4523, at *8 (N.D. Ill. Apr. 6, 1998). By limiting Plaintiff's right to her free use of her coffee maker in a way that is guaranteed by the MMWA, Defendant is diminishing Plaintiff's "future property interest[s]," which is a sound basis for Plaintiff's standing under the UCL.

## 2. Plaintiff Need Not Demonstrate Damages Under the MMWA for her UCL Claims, But Has Nevertheless Satisfied This Element.

Plaintiff does not dispute Section 2310(d), which authorizes a private right of action to consumers to enforce the MMWA, has a standing requirement such that the consumer must be "damaged by the failure of a warrantor . . . to comply with any obligation under [the MMWA] . . . ." 15 U.S.C. § 2310(d)(1). However, Plaintiff is not bringing a claim under Section 2310(d), nor does Section 2310(d) serve as the predicate for Plaintiff's UCL "unlawful" or "unfair" prong claims. Rather, Plaintiff's UCL claims are predicated on 15 U.S.C. § 2302(c) and 16 C.F.R. § 700.10(c), *neither of which has a damages element*. The only standing requirement Plaintiff must satisfy is that she "suffered injury in fact and has lost money or property as a result of . . . unfair competition," Cal. Bus. & Prof. Code § 17204, which she has adequately alleged for the reasons set forth hereinabove. As neither 15 U.S.C. § 2302(c) nor 16 C.F.R. § 700.10(c) requires Plaintiff to

28

demonstrate actual damages, Plaintiff need not make that showing here, even though she can.

Plaintiff is aware the UCL's "safe harbor doctrine" precludes a plaintiff from pleading around "an absolute bar to relief simply by recasting the cause of action as one for unfair competition." *Chabner v. United of Omaha Life Ins. Co.*, 225 F.3d 1042, 1048 (9th Cir. 2000) (citations and quotations omitted). However, the "absolute bar" provision only applies when the "Legislature has . . . considered a situation and concluded no action should lie." *Davis*, 691 F.3d at 1164. There is nothing in the MMWA's statutory scheme or the legislative history indicating Congress has concluded that a plaintiff is barred from bringing a non-MMWA cause of action that seeks to enforce a provision in the MMWA. Defendant is likely to argue that because Congress created a private right of action for individuals who have been damaged as a result of a violation of MMWA, that necessarily means Congress has concluded that a plaintiff is foreclosed from bringing any other cause of action concerning a violation of the MMWA. This logical leap is unsupported by the case law. Indeed, the "absolute bar" provision "does not [] prohibit an action under the [UCL] merely because some other statute on the subject does not, itself, provide for the action . . . ." *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co*., 973 P.2d 527, 541 (Cal. 1999).

29

Thus, courts routinely decline to dismiss "unlawful" prong claims that are predicated on statutes where no private right of action exists. *See, e.g., Chabner v. United of Omaha Life Ins. Co.*, 225 F.3d 1042, 1048 (9th Cir. 2000) ("It does not matter whether the underlying statute also provides for a private cause of action; section 17200 can form the basis for a private cause of action even if the predicate statute does not."); *Matoff v. Brinker Rest. Corp.*, 439 F. Supp. 2d 1035, 1038 (C.D. Cal. 2006) ("Although section 351 [of the <u>California Labor Code</u>] does not create a private right of action, the California Supreme Court has expressly rejected the notion that 'a private plaintiff lacks UCL standing whenever the conduct alleged to constitute unfair competition violates a statute for the direct enforcement of which there is no private right of action.'") (citation omitted)); *Ingalls v. Spotify USA, Inc.*, No. C 16-03533 WHA, 2017 U.S. Dist. LEXIS 110817, *6 (N.D. Cal. July 17, 2017) (although California's Automatic Renewal Law, Cal. Bus. & Prof. Code § 17602 ("ARL") "does not provide a civil remedy, . . . Plaintiff may . . . sue for violations of the ARL under Section 17200")."'Virtually any law or regulation—federal or state, statutory or common law—can serve as [a] predicate for a [Business and Professions Code section] 17200 "unlawful" violation.'" *Paulus v. Bob Lynch Ford, Inc.*, 43 Cal. Rptr. 3d 148, 166 (Cal. Ct. App. 2006) (*citing* Stern, Bus. & Prof. Code, § 17200 Practice (The Rutter Group 2006) ¶ 3:56, p. 3-13).

30

Defendant will likely rely on *Asencio v. Miller Brewing Co*, No. CV 02-7317 SJO (CTx), 2006 U.S. Dist. LEXIS 103716 (C.D. Cal. Aug. 11, 2006) and *In re Vaccine Cases*, 36 Cal. Rptr. 3d 80, 94-95 (Cal. Ct. App. 2005) for the proposition that, where the legislature has imposed a prerequisite for a claim under a particular statute, it follows that no UCL claim predicated on that statute can lie unless the prerequisite is satisfied. However, "the rule argued by the defendant is implicated when the borrowed law [goes] to UCL and impos[es] a *procedural requirement*." 2-ER-107 (emphasis added). Both *Asencio* and *In re Vaccine Cases* concerned procedural defects, namely, failure to serve pre-suit notice under the California Fair Employment and Housing Act and The Safe Drinking Water and Toxic Enforcement Act, respectively. Substantive requirements concerning the "rights and remedies" underpinning the underlying law, like Section 2301(d)'s damages requirement, are not germane to whether a UCL claim has been properly pled—particularly where the UCL has its own standing requirement. That alone renders these cases distinguishable.

However, to the extent the Court finds that Plaintiff is required to plead damages under the MMWA, Plaintiff's allegations demonstrate she was indeed damaged by Defendant's anti-tying conduct. Plaintiff paid money for an expensive coffee maker, which is subject to a Warranty that illegally infringes on the full, lawful use of her property by prohibiting third-party repair or parts. "Access to

31

one's personal property and the free use of it is normally considered a property right," *Parker v. DeTella*, No. 98 C 0644, 1998 U.S. Dist. LEXIS 4523, at *8 (N.D. Ill. Apr. 6, 1998), and "[t]he invasion of [one's] right to peaceful enjoyment of [his or her] property is a sufficient basis for damages." *Altvater v. Breckenridge*, 345 P.2d 358, 361-62 (Cal. Ct. App. 1959). Indeed, California law recognizes that infringement upon a plaintiff's legally protected use or possession of her property results in damage. The most apposite example is trespass to chattels, which applies "where an intentional interference with the possession of personal property has caused injury." *Thrifty-Tel, Inc. v. Bezenek*, 54 Cal. Rptr. 2d 468, 473 (Cal. Ct. App. 1996). To be actionable, the interference must have "caused some injury to the chattel **or to the plaintiff's rights in it**." *Intel Corp. v. Hamidi*, 71 P.3d 296, 302 (Cal. 2003) (emphasis added). The California Supreme Court has made clear, "one who intentionally intermeddles with another's chattel is subject to liability only if his intermeddling is harmful to the possessor's materially valuable interest in the physical condition, quality, or value of the chattel, or if the possessor is deprived of the use of the chattel for a substantial time, **or some other legally protected interest of the possessor is affected[.]**" *Id.* at 302-303 (emphasis added).

Directly on point is *Schaer v. Newell Brands Inc.*, No. 3:22cv30004, 2023 U.S. Dist. LEXIS 28028 (D. Mass. Feb. 15, 2023). There, the plaintiff alleged Defendants' warranty on a Mr. Coffee product violated the MMWA and other state

32

consumer protection laws by unlawfully voiding the warranty if unauthorized repairs are made. *Id.* at *2. The plaintiff claimed she was damaged by these restrictions, which reduced the value of the product, constituting overpayment. *Id.* at *3. The court allowed MMWA claim to proceed, finding, "a product that contains an unlawful warranty -- that is voided by any attempt to repair or adjust any electrical or mechanical functions -- is worth less than a product that does not contain such a restriction. . . .  This, is and of itself, would be an injury in fact." *Id.* at *4 (citations and quotations omitted).

Defendant will likely cite to other cases, which pre-date *Schaer*, for the position that the damages requirement is not satisfied where the plaintiff alleges only a technical violation of the MMWA. *See, e.g. McGarvey v. Penske Auto. Grp., Inc.*, 639 F. Supp. 2d 450, 456 (D.N.J. 2009); *Sasso v. Tesla, Inc.*, 584 F. Supp. 3d 60 (E.D.N.C. Feb. 7, 2022), *Atchole v. Silver Spring Imps., Inc.*, 379 F. Supp. 2d 797, 802 (D. Md. 2005). However, none of these cases grappled with the undisputed notion that a warranty which limits third-party repair is necessarily worth less than one that does not.

In any event, "the text and legislative history of the [Magnuson-Moss] Act indicate that 'courts [should] look to state law to determine the applicable measure of damages[.]" *Pyskaty v. Wide World of Cars, LLC*, 856 F.3d 216, 223–24 (2d Cir. 2017) (collecting cases). So, to the extent that the plaintiffs in the cases cited

33

by Defendant failed to allege actual damages, those holdings are immaterial because Plaintiff here has sufficiently pled actual damages under California law. *Altvater v. Breckenridge*, 345 P.2d at 361-62; *Intel Corp. v. Hamidi*, 71 P.3d at 302; *Kwikset Corp.*, 246 P.3d at 892.

### B.   Plaintiff Adequately Alleges Unlawful Conduct.

#### 1.   Keurig Engages in Tying Behavior, in Violation of 15 U.S.C. § 2302(c) and 16 C.F.R. § 700.10(c).

As discussed herein, Defendant's Warranty provides that "[o]nly the use of Keurig® K-Cup® brand pods and accessories will guarantee the proper functioning and lifetime of your Keurig® brewer." 4-ER-606-07. Additionally, it provides: "Nor does this warranty cover damages caused by use of non-Keurig® pods or accessories, services performed by anyone other than Keurig® or its authorized service providers, use of parts other than genuine Keurig® parts, or external causes such as abuse, misuse, inappropriate power supply, or acts of God." 4-ER-607.

Defendant will likely argue the Warranty's plain language does not violate the MMWA because it does not specifically state it is "void" upon the use of third-party repair or parts. But that is not the standard under 15 U.S.C. § 2302(c) or 16 C.F.R. § 700.10(c). Section 2302(c) provides "[n]o warrantor of a consumer product may condition his written or implied warranty of such product on the consumer's using, in connection with such product, any article or service . . . which

34

is identified by brand, trade, or corporate name." Similarly, 16 C.F.R. § 700.10(c)

provides "[n]o warrantor may condition the continued validity of a warranty on the

use of only authorized repair service and/or authorized replacement parts for non-

warranty service and maintenance . . . ." The word "void" is not critical to asserting

a violation of the MMWA's anti-tying provisions—rather, Plaintiff may simply

demonstrate Defendant has conditioned the Warranty on the use of only authorized

repair service and/or authorized replacement parts. Here, the express language

conveys that the Warranty will not apply where "services [are] performed by

anyone other than Keurig® or its authorized service providers [or] use of parts

other than genuine Keurig® parts . . . ." 4-ER-606-07.

Defendant will also likely argue the so-called the Warranty does not cover

*damages caused by* third-party repair, under the series-qualifier canon. *United*

*States v. Lucero*, 989 F.3d 1088, 1093 n.3 (9th Cir. 2021) ("when there is a

straightforward, parallel construction that involves all nouns or verbs in a series, a

[prepositive or] postpositive modifier normally applies to the entire series"). But in

the eyes of a reasonable consumer, the word "damages" could be reasonably

construed to modify only "use of non-Keurig® pods or accessories," rather than all

subsequent clauses in the sentence. Indeed, under 16 C.F.R. § 700.10(c), "*warranty*

*language that implies to a consumer acting reasonably in the circumstances* that

warranty coverage requires the consumer's purchase of an article or service

identified by brand, trade or corporate name" is similarly unlawful. (emphasis

added). Moreover, as alleged in the SAC, consumers routinely understood the

Warranty language to exclude the use of third-party repairs and parts. 4-ER-607-

09.

     At this stage it cannot be decided as a matter of law that the only reasonable

interpretation of the Warranty is that it excludes only damage resulting from third-

party repair. While Plaintiff's position is that the representations identified in the

SAC indicate third-party repair or parts will void the Warranty, at minimum the

challenged representations—and their import—is disputed by the parties.

"Ambiguities arise when contractual language reasonably may be susceptible to

more than one interpretation based upon the offered evidence regarding the

material facts." *Abers v. Rounsavell*, 116 Cal. Rptr. 3d 860, 865 (Cal. Ct. App.

2010) (*citing Dore v. Arnold Worldwide, Inc.*, 139 P.3d 56, 60(Cal. 2006)). Where

the Court finds there is ambiguity in the contract, the issue is properly submitted to

a jury and should not be decided at the pleadings stage. *See Morey v. Vannucci*, 75

Cal. Rptr. 2d 573, 579 (Cal. Ct. App. 1998) ("Where the interpretation of

contractual language turns on a question of the credibility of conflicting extrinsic

evidence, interpretation of the language is not solely a judicial function. As a trier

of fact, it is the jury's responsibility to resolve any conflict in the extrinsic

evidence properly admitted to interpret the language of a contract.") (citation

omitted). Plaintiff alleges the exclusions of coverage in Defendant's Warranty create an implication that the Warranty is conditioned upon the prohibition of third-party repair or parts. *See, e.g.,* 4-ER-606-09. At a minimum, the fact that Plaintiff and Defendant have advanced competing interpretations of the import of Keurig's Warranty sufficiently demonstrates an ambiguity exists in the Warranty, and that a fact issue has arisen that should preclude dismissal at the pleadings stage.

### 2. The "Without Charge" Exception is Inapplicable.

Defendant will likely argue it may prohibit the use of third-party repair and parts, in light of a narrow carveout in MMWA's anti-tying provision. The carveout at issue allows the conditioning of a warranty on specific repair services or parts if said "article or service [is] provided without charge under the terms of the warranty." 15 U.S.C. § 2302(c); 16 C.F.R. § 700.10(c). Defendant's argument should fail for two reasons.

First, Defendant still misinterprets the scope of MMWA's carveout to its anti-tying provision. If a warrantor wished to (1) preclude the use of third-party repair or parts for (2) warranty coverage that the warrantor would provide to the consumer without charge, it does not follow that the warrantor may also prohibit third-party repair or parts for repairs outside the scope of the warranty. The MMWA states that a manufacturer cannot "require the use of specific repair services for non-warranty

37

maintenance as a condition of redeeming warranty repairs." *McGarvey v. Penske Auto Grp., Inc.*, 486 F. App'x 276, 281, n.6 (3d Cir. 2012) (citing 16 C.F.R. § 700.10(c)); *Dickerson v. NWAN Inc.*, No. CV-17-01899-PHX-DGC, 2018 U.S. Dist. LEXIS 19842, at *11-12 (D. Ariz. Feb. 7, 2018) (Requirement to "purchase a brand-name service…for all non-covered repairs and maintenance performed on [plaintiffs'] vehicle. …[appears to be] a prohibited tying arrangement under the MMWA."). As the FTC stated in the wake of three recent enforcement actions addressing identical fact patterns:

> to be clear, a manufacturer can't avoid liability by providing free parts or services to repair or replace defective parts if its warranty conveys that customers must use a specific brand of parts or specific service providers in other situations. Put another way, if a company will replace certain parts for free – but will still void a consumer's warranty for using another maker's parts for other purposes – the company has violated the law.[12]

Yet this is precisely what Defendant does. Defendant's Warranty fails to cover a litany of conditions that would nonetheless require repair, including, *inter alia*, repairs required for "external causes such as . . . [undefined] misuse, inappropriate power supply, or acts of God." 4-ER-606-07. Although these are not covered repairs under Defendant's warranty, any of these conditions would necessitate repair and/or replacement parts—a fact explicitly acknowledged in the above-excerpted language.

---

[12] *FTC announces three right-to-repair cases: Do your warranties comply with the law?* (July 7, 2022) (available at https://www.ftc.gov/business-guidance/blog/2022/07/ftc-announces-three-right-repair-cases-do-your-warranties-comply-law).

Defendant's Warranty prohibits the use of third-party repair and parts in all circumstances, including those not covered under the Warranty. Put differently, if a consumer uses third-party parts or a third-party service to perform repairs required for inappropriate power supply or acts of God, Defendant will no longer honor its Warranty even if a covered part fails for an unrelated reason. This is prohibited by MMWA. *McGarvey*, 486 F. App'x, at 281, n.6; *Dickerson*, 2018 U.S. Dist. LEXIS 19842, at *11-12.

Second, Defendant does not provide parts free of charge in all circumstances. Its K-Cup® brand pods and accessories *must* be used with its coffee makers to keep the warranty intact. 4-ER-606 ("Only the use of Keurig® K-Cup® brand pods and accessories will guarantee the proper functioning and lifetime of your Keurig® brewer."). Under the MMWA, "the term 'without charge' means that the warrantor may not assess the consumer for any costs the warrantor or his representatives incur in connection with the required remedy of a warranted consumer product." 15 U.S.C. § 2304(d). Yet the K-Cup® brand pods and accessories are not free—the Warranty provides that only the coffee maker itself would be repaired or replaced without charge (and at its discretion). There are a host of circumstances in which someone would have a K-Cup® brand pod or accessory that was compromised, but not replaceable under the Warranty. For example, if a "genuine" K-Cup® brand pod failed for any of the reasons under which Warranty coverage is excluded (*see above*),

a consumer would have to pay for new "genuine" pods or else void her Warranty by buying cheaper "non-genuine" pods. Similarly, if a customer lost a K-Cup® brand pod, or wished to have an extra pod, she would be required to buy the pod from Defendant or else void her Warranty. 4-ER-606. Whatever the context, it is indisputable that Defendant conditions its Warranty on the use of its own pods, but does not provide them "without charge" to consumers. MMWA's anti-tying carveout does not apply.

### C.   Plaintiff Adequately Alleges Unfair Conduct.

Plaintiff's allegations concerning Defendant's anti-tying conduct satisfies both the *Cel-Tech* test and the *South Bay* test for "unfairness" under the UCL. Under the *Cel-Tech* test, Plaintiff alleges Defendant's conduct significantly threatens or harms competition in a way that is tethered to some legislatively declared policy, namely the MMWA. *See* 4-ER-617-18 ("Defendant's business practices are also unfair because they undermine public policy, which is tethered to specific statutory provisions, including the MMWA."). The inherent threat and harm to competition stems from Defendant's "attempts to monopolize the device repair market." 4-ER-601. Additionally, this conduct threatens an incipient violation of antitrust law. *See, e.g., Pacific Exp., Inc. v. United Airlines, Inc*., 959 F.2d 814, 817 (9th Cir. 1992) ("The following facts must be proved to establish an attempt to monopolize claim: (1) specific intent to control prices or destroy

40

competition; (2) predatory or anticompetitive conduct to accomplish the monopolization; (3) dangerous probability of success; and (4) causal antitrust injury.").

Under the *South Bay* test, Plaintiff has alleged Defendant's business practices are "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." 4-ER-617. In *Burks v. HP Inc.*, No. 22STCV20806 (Cal. Super Ct., Cnty of L.A.), the court found substantially similar allegations to be adequate. *See* 2-ER-109 ("In this case, Plaintiff alleges that the Defendant's business practice[s] are unfair by selling products with warranties that unlawfully prohibit third party repair. Indeed, selling products with the warranties as alleged can be considered unethical or unscrupulous."). Of course, "[t]he gravity of the harm to consumers is not outweighed by the utility of Defendant's conduct." 4-ER-617. Thus, Plaintiff has adequately alleged Defendant's conduct is "unfair" as understood under the UCL.

### D. Plaintiff Has Standing to Seek Injunctive Relief

Lastly, Defendant will likely argue Plaintiff lacks standing to seek injunctive relief under the UCL because she hasn't alleged an actual or imminent future harm. According to Defendant, Plaintiff's allegations concerning a future purchase don't have the requisite level of certainty. But Defendant's contention is wrong, and does not fully grapple with Ninth Circuit case law, even in the false advertising context.

41

Though this is not a false advertising case, the line of "presently deterred" cases in that context are instructive. "[A]llegations regarding the plaintiffs['] inability to trust a label on the front of a product that a plaintiff desires to purchase is sufficient for a plaintiff to establish standing to seek injunctive relief." *Gunaratna*, 2023 U.S. Dist. LEXIS 60796, at *33; *see id.* at *33-*34 (collecting caes); *see also Davidson v. Kimberly-Clark Corp.,* 889 F.3d 956, 969-970 (9th Cir. 2018) ("Knowledge that the advertisement or label was false in the past does not equate to knowledge that it will remain false in the future. In some cases, the threat of future harm may be the consumer's plausible allegations that she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to.").

Here, Plaintiff purchased a Keurig coffee maker aware of the fact that it had a warranty, but unaware of the fact that the warranty contained an unlawful tying provision. 4-ER-612. Plaintiff desires to purchase a Keurig product in the future. *See* 4-ER-612-13 ("Plaintiff anticipates buying a new Product in the future and would consider purchasing a Product from Defendant."). But Plaintiff does not wish to have her rights thwarted by Keurig's unlawful tying provisions. 4-ER-612-13. Stated differently, Plaintiff would like to purchase another Keurig coffee maker, but will only make that purchase if she can do so without the possibility of that coffee maker having a warranty that violates the MMWA's anti-tying

42

provision. She cannot presently trust that a Keurig coffee maker would come with a warranty that complies with federal law, including because she cannot know whether Keurig is engaging in anti-tying practices without purchasing a product and attempting to obtain repair or replacement under the warranty. Under the reasoning of *Gunaratna*, *Davidson*, and similar cases, Plaintiff has standing to seek injunctive relief.

Further, the onus is not on Plaintiff to review Defendant's consumer warranties in the future to determine whether those warranties violate the MMWA's anti-tying provision. *See generally Tucker v. Post Consumer Brands, LLC,* 2020 U.S. Dist. LEXIS 71090, *15 (N.D. Cal. Apr. 21, 2020) ("Absent injunctive relief, plaintiff would not know whether honey is in fact a significant sweetener in defendant's product based on the front of the cereal box. Nor is the onus on plaintiff to consult the ingredient list to try to discern this fact."). The purchase of a Keurig product should not require legal training to ensure the product warranty complies with federal law.

Indeed, there is no case authority suggesting that it is a consumer's responsibility to review a product warranty for compliance with the MMWA and avoid injury by not purchasing a product with a warranty that violates federal law. *Accord Prescott v. Bayer Healthcare LLC*, No. 20-cv-00102-NC, 2020 U.S. Dist. LEXIS 136651, at *17 (N.D. Cal. July 31, 2020) ("it is not clear why the burden to

43

avoid future misunderstanding lies with Plaintiffs and not Defendants when it is Defendants' actions that are allegedly unlawful"). Under the UCL, it is Defendant's responsibility to refrain from engaging in unlawful business practices. And Defendant is liable to consumers, like Plaintiff, who suffer economic injuries as a result of such practices.

### III.   The District Court Abused its Discretion in Granting Keurig's Motion to Dismiss *With* Prejudice.

"When a party requests to amend a pleading, the court should freely give leave when justice so requires." *Hall v. City of Los Angeles*, 697 F.3d 1059, 1073 (9th Cir. 2012) (citing Fed. R. Civ. P. 15(a)). "[T]his mandate is to be heeded." *Foman v. Davis*, 371 U.S. 178, 182 (1962). "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Id*. Dismissal without leave to amend is proper only when the complaint cannot be saved by any amendment. *See Doc's Dream, LLC v. Dolores Press, Inc.,* 678 F. App'x 541, 542 (9th Cir. 2017). Further, a court's refusal to grant leave to amend without justifying reason is an abuse of discretion. *See id.*

Despite Rule 15's mandate, the District Court denied Plaintiff's request for leave to amend, reasoning that Plaintiff could not allege facts that could cure the deficiency in the SAC. *See* 1-ER-6. In addition to the District Court's erroneous

44

ruling on the merits, the "with prejudice" aspect of the District Court's dismissal was an abuse of discretion.

To start, the District Court abused its discretion in denying Plaintiff the opportunity to amend because the SAC is, at the very least, a good faith attempt to respond to the District Court's previous dismissal on reliance grounds. Where an amended complaint demonstrates an attempt to comply with the court's previous guidance, even if the amended complaint remains deficient, it is an abuse of discretion to deny the plaintiff another opportunity to amend. *See Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1053 (9th Cir. 2003) (reversing denial of leave to amend and finding that "it is not accurate to imply that plaintiffs had filed multiple pleadings in an attempt to cure pre-existing deficiencies" where their amended complaint "included additional theories not previously alleged"). To the extent the FAC alluded to deception by Defendant, the SAC was a good-faith effort to excise allegations that could be construed as a misrepresentation theory. Though the District Court failed to recognize that Plaintiff is not bringing any fraud-based allegations against Defendant, there can be no doubt that Plaintiff was attempting to allege that more clearly in the SAC. Plaintiff, therefore, should have been granted further leave to amend to assert her chosen theory of the case.

Further, the District Court's single-sentence explanation for denying Plaintiff's request for leave to amend is not a justifying reason. This alone is an abuse

45

of discretion under Ninth Circuit precedent. *Tracht Gut, LLC*, 836 F.3d at 1150 ("A dismissal granted without leave to amend and with prejudice is reviewed for abuse of discretion."). Even assuming *arguendo* the District Court correctly ruled that Plaintiff's allegations in the SAC still sound in fraud, the Court gave no explanation as to why the SAC could not be amended to remove any remaining allegations that sound in fraud. The District Court did not reckon with the fact that even if the SAC did not go far enough in excising any misrepresentation theory, amendment along those lines would be possible, for example, to elucidate the nature and extent of Plaintiff's reliance prior to purchase of the Product. The Court offered no explanation as to why that would be an impossibility. *See, e.g., Brown v. Stored Value Cards, Inc.*, 953 F.3d 567, 575 (9th Cir. 2020) ("We hold that the district court abused its discretion when, without written explanation or opinion, it denied Brown leave to file a third amended complaint, and Defendants suffer no significant prejudice from amendment."). This is particularly true where, as here, Plaintiff alleges a violation of anti-tying provisions of the MMWA, which has nothing to do with misrepresentation or deception.

Even if this Court affirms the District Court's dismissal of the operative complaint, Plaintiff respectfully requests that this Court reverse that portion of the District Court's order dismissing Plaintiff's claim with prejudice so that Plaintiff may have an opportunity to amend to make clear this action does not sound in fraud.

## CONCLUSION

For the foregoing reasons, the Court should reverse the District Court's order granting Keurig's Motion to Dismiss and remand for further proceedings.

Dated: December 6, 2024                    Respectfully submitted,


*/s/ Gillian L. Wade*
Gillian L. Wade
Sara D. Avila
Marc A. Castaneda
**MILSTEIN JACKSON FAIRCHILD &
WADE, LLP**

*Attorneys for Appellant Christina Groff*

47

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Statement of Related Cases Pursuant to Circuit Rule 28-2.6

**9th Cir. Case Number 24-5905**

The undersigned attorney or self-represented party states the following:

[X] I am unaware of any related cases currently pending in this court.

[ ] I am unaware of any related cases currently pending in this court other than the case(s) identified in the initial brief(s) filed by the other party or parties.

[ ] I am aware of one or more related cases currently pending in this court. The case number and name of each related case and its relationship to this case are:

**Signature**: _s/ Gillian L. Wade_____   **Date:** _December 6, 2024_____

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

### Certificate of Compliance for Briefs

**This brief contains 10,408 words,** excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[ x ] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties;
    [ ] a party or parties are filing a single brief in response to multiple briefs; or
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).


**Signature**: *s/ Gillian L. Wade*_____     **Date:**  December 6, 2024_____
*(use "s/[typed name]" to sign electronically filed documents)*

49

## CERTIFICATE OF SERVICE

I hereby certify that on December 6, 2024, I electronically filed the foregoing with the Clerk of the Court of the United States Court of Appeals for the Ninth Circuit using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

**Signature**: *s/ Gillian L. Wade*      **Date:**   December 6, 2024

No. 24-5905

In the

# United States Court of Appeals
## For the Ninth Circuit

_____

CHRISTINA GROFF,

*Plaintiff-Appellant,*

v.

KEURIG GREEN MOUNTAIN, INC.,

*Defendant-Appellee.*

_____

On Appeal from the United States District Court
for the Central District of California
The Honorable Sunshine S. Sykes
Case No. 5:23-cv-01492-SSS-SP

_____

**ANSWERING BRIEF OF
APPELLEE KEURIG GREEN MOUNTAIN, INC.**

_____

Travis C. Gunn
MCGUIREWOODS LLP
800 East Canal Street
Richmond, VA 23219
T: (804) 775-7622
tgunn@mcguirewoods.com

Nicholas J. Hoffman
MCGUIREWOODS LLP
355 S. Grand Ave., Suite 4200
Los Angeles, CA 90071
T: (213) 627-2268
nhoffman@mcguirewoods.com

*Counsel for Defendant-Appellee Keurig Green Mountain, Inc.*

## CORPORATE DISCLOSURE STATEMENT

Under Federal Rule of Appellate Procedure 26.1(a), Keurig Green Mountain, Inc. states that:

1.  Keurig Green Mountain, Inc., a Delaware corporation, is a wholly owned subsidiary of Maple Parent Holdings Corp.

2.  Maple Parent Holding Corp. is a wholly owned subsidiary of Keurig Dr Pepper Inc.

3.  Keurig Dr Pepper Inc. is a publicly traded company, traded on the Nasdaq stock market under the ticker symbol "KDP".

4.  JAB BevCo B.V. owns more than 10% of KDP.

5.  No other entity owns 10% or more of KDP, Maple Parent Holding Corp., or Keurig Green Mountain, Inc.


Dated:  February 5, 2025          */s/ Nicholas J. Hoffman*
                                  Nicholas J. Hoffman

                                  *Counsel for Appellee*
                                  *Keurig Green Mountain, Inc.*

i

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT...............................................i

TABLE OF AUTHORITIES ...................................................................v

INTRODUCTION ................................................................................ 1

JURISDICTIONAL STATEMENT ....................................................... 5

ISSUES PRESENTED ......................................................................... 6

STATUTES AND REGULATIONS ...................................................... 7

STATEMENT OF THE CASE .............................................................. 14

I.    Keurig's warranty guarantees only that a Keurig brewer is free of materials and workmanship defects.......................... 14

II.    Groff sued Keurig based on alleged misrepresentations relating to Keurig's warranty. ................................................. 17

III.    The district court properly dismissed the first amended complaint for lack of adequately pleaded actual reliance.... 18

IV.    In the second amended complaint, Groff still pleaded her UCL claims based on alleged misrepresentations................ 21

V.    The district court properly dismissed the second amended complaint for lack of adequately pleaded actual reliance.... 21

SUMMARY OF ARGUMENT .................................................................23

ARGUMENT .......................................................................................25

I.    The district court properly dismissed Groff's UCL claims for failure to plead particular facts of actual reliance.......... 27

    A.    Groff conflates her UCL claims with those that rely on unlawful conduct independent of any representations. ................................................... 28

    B.    Groff's UCL claims rely on alleged misrepresentations and thus sound in fraud to require actual reliance................................................. 30

        1.    Groff's prior complaints were grounded in fraud. ................................................................. 30

# TABLE OF CONTENTS
## (cont'd.)

**Page**

2.   Groff's second amended complaint continued to base liability on alleged misrepresentations. ...... 31

C.   Groff failed to plead actual reliance with particularity. ............................................... 35

    1.   Groff waived this argument and thus forfeited the ability to raise it on appeal. ......................... 35

    2.   Groff failed to plead actual reliance ................... 36

D.   Dismissal with prejudice was proper. ......................... 40

    1.   Groff waived any argument for reversal. .......... 40

    2.   The district court properly denied leave to amend. ............................................... 41

    3.   Groff's new argument on appeal is waived and, in any event, is not a basis to find error. ........... 44

II.   Keurig's warranty has no tying arrangement and thus cannot violate the MMWA's tying prohibition. ..................... 46

A.   Keurig's warranty does not condition coverage. .......... 48

B.   Groff misreads the warranty to try to argue an impermissible tying arrangement. .............................. 53

C.   The warranty has no impermissible tying arrangement even under Groff's misreading. .............. 56

D.   Groff failed to plead facts that reasonable consumers believe using third-party replacement parts or repair voids the warranty. ...................................... 58

E.   The Court should affirm on this alternative ground. ... 61

III.   The absolute bar safe harbor precludes Groff's UCL claims. ............................................... 62

A.   Congress expressly considered and limited private enforcement of the MMWA's substantive provisions. .. 63

iii

## TABLE OF CONTENTS
## (cont'd.)

**Page**

B.    MMWA statutory standing requires damages more than buying a product with an alleged illegal warranty. ...................................................................... 66

    1.    A price premium theory of damages is not actual damages under the MMWA. .................... 66

    2.    Groff failed to plead facts of a price premium. .... 70

C.    The Court should affirm on this alternative ground ... 72

CONCLUSION ..................................................................... 73

STATEMENT OF RELATED CASES ..................................... 74

CERTIFICATE OF COMPLIANCE ....................................... 75

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alaska Airlines, Inc. v. City of Long Beach,*
 951 F.2d 977 (9th Cir. 1991)................................................................70

*Alaska Ctr. for Environment v. U.S. Forest Serv.,*
 189 F.3d 851 (9th Cir. 1999)................................................................50

*Am. Title Ins. v. Lacelaw Corp.,*
 861 F.2d 224 (9th Cir. 1988)................................................................30

*Asencio v. Miller Brewing Co.,*
 2006 WL 8446875 (C.D. Cal. Aug. 11, 2006) .....................................64

*Beverly Oaks Physicians Surgical Ctr., LLC v. Blue Cross &
 Blue Shield of Illinois,*
 983 F.3d 435 (9th Cir. 2020)................................................................14

*Beyer v. Symantec Corp.,*
 333 F. Supp. 3d 966 (N.D. Cal. 2018)..................................................38

*Bishop v. 7-Eleven, Inc.,*
 651 F. App'x 657 (9th Cir. 2016) .........................................................38

*Bracht v. Deckers Outdoor Corp.,*
 2012 WL 13013417 (C.D. Cal. Oct. 2, 2012) ......................................42

*Brooks v. Barnhart,*
 118 F. App'x 167 (9th Cir. 2004) .........................................................44

*Cahen v. Toyota Motor Corp.,*
 717 F. App'x 720 (9th Cir. 2017) .........................................................71

*Castiel v. Dyson, Inc.,*
 717 F. Supp. 3d 698 (N.D. Ill. 2024)........................................51, 52, 56

*Chabner v. United of Omaha Life Ins.,*
 225 F.3d 1042 (9th Cir. 2000)..............................................................62

*City of Sausalito v. O'Neill*,
  386 F.3d 1186 (9th Cir. 2004) .............................................................. 64

*Clayworth v. Pfizer, Inc.*,
  233 P.3d 1066 (Cal. 2010) ............................................................. 28, 31

*Cohen v. ConAgra Brands, Inc.*,
  16 F.4th 1283 (9th Cir. 2021) ............................................................ 25

*Corn v. Target Corp.*,
  2023 WL 3389027 (N.D. Ill. May 11, 2023) ...................................... 52

*Crain v. Nevada*,
  724 F. App'x 591 (9th Cir. 2018) ....................................................... 14

*Davis v. Combined Ins.*,
  2018 WL 10701406 (N.D. Cal. Mar. 7, 2018) ................................... 30

*Davis v. HSBC Bank Nevada, N.A.*,
  691 F.3d 1152 (9th Cir. 2012) ............................................... 62, 63, 64

*Diaz v. Macys W. Stores, Inc.*,
  101 F.4th 697 (9th Cir. 2024) ............................................................ 25

*Dickerson v. NWAN Inc.*,
  2018 WL 740999 (D. Ariz. Feb. 7, 2018) ........................................... 49

*Foman v. Davis*,
  371 U.S. 178 (1962) ........................................................................... 41

*Gabourel v. Luxottica of Am., Inc.*,
  2024 WL 260963 (9th Cir. Jan. 24, 2024) ......................................... 40

*Ghaznavi v. De Longhi Am., Inc.*,
  2023 WL 4931610 (S.D.N.Y. Aug. 2, 2023) ....................................... 69

*Gonzales v. Nat. Factors Nutritional Products Inc.*,
  2024 WL 4609853 (C.D. Cal. June 28, 2024) .................................... 37

*Hiradate v. Ralphs Grocery Co.*,
  2022 WL 19299128 (C.D. Cal. Nov. 28, 2022) .................................. 33

vi

*Holley-Gallegly v. TA Operating, LLC*,
  74 F.4th 997 (9th Cir. 2023) ............................................................ 40

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009) .................................................... 29, 33

*Kissel v. Code 42 Software, Inc.*,
  2016 WL 7647691 (C.D. Cal. Apr. 14, 2016) ................................ 28, 31

*Klamath Water Users Protective Ass'n v. Patterson*,
  204 F.3d 1206 (9th Cir. 1999) ......................................................... 55

*Knievel v. ESPN*,
  393 F.3d 1068 (9th Cir. 2005) ......................................................... 61

*Kohler v. Inter-Tel Technologies*,
  244 F.3d 1167 (9th Cir. 2001) ......................................................... 50

*Kroessler v. CVS Health Corp.*,
  977 F.3d 803 (9th Cir. 2020) ........................................... 42, 44, 45, 46

*Kwikset Corp. v. Superior Court*,
  246 P.3d 877 (Cal. 2011) ........................................................ *passim*

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
  572 U.S. 118 (2014) ....................................................................... 63

*Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*,
  416 F.3d 940 (9th Cir. 2005) ..................................................... 46, 62

*May v. United States*,
  691 F. App'x 334 (9th Cir. 2017) .................................................... 66

*McGarvey v. Penske Auto. Grp., Inc.*,
  2010 WL 1379967 (D.N.J. Mar. 29, 2010) ......................................... 47

*McGarvey v. Penske Auto. Grp., Inc.*,
  639 F. Supp. 2d 450 (D.N.J. 2009) ............................................. 67, 68

*In re Mercury Interactive Corp. Sec. Litig.*,
  618 F.3d 988 (9th Cir. 2010) ........................................................... 40

*Minden Pictures, Inc. v. John Wiley & Sons, Inc.*,
  795 F.3d 997 (9th Cir. 2015) ............................................................ 69

*Moroz v. Alexico Corp.*,
  2008 WL 109090 (E.D. Pa. Jan. 8, 2008) ........................................ 67

*Naimi v. Starbucks Corp.*,
  798 F. App'x 67 (9th Cir. 2019) ...................................................... 71

*National Conference of Pers. Mangers, Inc. v. Brown*,
  599 F. App'x 275 (9th Cir. 2015) .................................................... 61

*Pacific Gas & elec. Co. v. F.E.R.C.*,
  746 F.2d 1383 (9th Cir. 1984) ......................................................... 54

*Rasmussen v. Apple Inc.*,
  27 F. Supp. 3d 1027 (N.D. Cal. 2014) ............................................. 39

*Rodriguez v. Sony Comput. Ent. Am., LLC*,
  801 F.3d 1045 (9th Cir. 2015) ......................................................... 30

*Salameh v. Tarsadia Hotel*,
  726 F.3d 1124 (9th Cir. 2013) ......................................................... 41

*Sandgathe v. Chater*,
  108 F.3d 978 (9th Cir. 1997) ............................................................ 44

*Sasso v. Tesla, Inc.*,
  584 F. Supp. 3d 60 (E.D.N.C. 2022) ............................................... 68

*Sateriale v. R.J. Reynolds Tobacco Co.*,
  697 F.3d 777 (9th Cir. 2012) ..................................................... 27, 36

*Schaer v. Newell Brands Inc.*,
  2023 WL 2033765 (D. Mass. Feb. 16, 2023) ................................. 69

*Smith v. Arthur Andersen LLP*,
  421 F.3d 989 (9th Cir. 2005) ........................................................... 70

*Stan Lee Media Inc. v. Lee*,
  2012 WL 4048871 (C.D. Cal. Aug. 23, 2012) ................................ 69

*Stross v. Zillow, Inc.*,
2023 WL 8518904 (9th Cir. Dec. 8, 2023) ..................................... 42, 45

*Svenson v. Google, Inc.*,
2015 WL 1503429 (N.D. Cal. Apr. 1, 2015).................................. 28, 31

*Telesaurus VPC, LLC v. Power*,
623 F.3d 998 (9th Cir. 2010)......................................................... 43, 45

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
637 F. App'x 981 (9th Cir. 2016) ...................................................... 70

*United States v. Lucero*,
989 F.3d 1088 (9th Cir. 2021)............................................................ 54

*United States v. Real Prop.*,
787 F.3d 968 (9th Cir. 2015)............................................................... 64

*United States v. Ritchie*,
342 F.3d 903 (9th Cir. 2003)............................................................... 14

*United States v. Univ. of S. California*,
217 F.3d 1141 (9th Cir. 2000)............................................................ 55

*In re Vaccine Cases*,
134 Cal. App. 4th 438 (2005) ............................................................ 64

*Velasquez v. Chase Home Fin. LLC*,
2011 WL 89592 (N.D. Cal. Jan. 10, 2011)........................................ 43

*Vien-Phuong Thi Ho v. Reconstruct Co.*,
669 F. App'x 857 (9th Cir. 2016) ...................................................... 35

*Wall v. Hewlett-Packard Co.*,
2011 WL 6325972 (S.D. Cal. Dec. 16, 2011) ........................ 29, 33, 46

*Walsh v. Nevada Dep't of Hum. Res.*,
471 F.3d 1033 (9th Cir. 2006)............................................................ 35

*Wasjutin v. Bank of Am., N.A.*,
732 F. App'x 513 (9th Cir. 2018) ...................................................... 46

*Watkins v. MGA Ent., Inc.*,
  550 F. Supp. 3d 815 (N.D. Cal. 2021)................................................. 27

*Zhang v. Superior Court*,
  57 Cal. 4th 364 (2013)...................................................................... 65

**Statutes**

15 U.S.C. § 2301(6)(A) .................................................... 48, 56

15 U.S.C. § 2301(10) ........................................................ 48, 57

15 U.S.C. § 2301(11) ............................................................... 58

15 U.S.C. § 2301, *et seq.* ........................................................ 63

15 U.S.C. § 2302(6) ..................................................................... 8

15 U.S.C. § 2302(10) ................................................................... 8

15 U.S.C. § 2302(11) ................................................................... 8

15 U.S.C. § 2302(a)(4) ............................................................... 48

15 U.S.C. § 2302(a)(6) ............................................................... 51

15 U.S.C. § 2302(a)(7)................................................................ 57

15 U.S.C. § 2302(a)(10) ............................................................. 51

15 U.S.C. § 2302(a) ............................................................. 10, 63

15 U.S.C. § 2302(b)(1)(A) .......................................................... 63

15 U.S.C. § 2302(c)................................... 2, 10, 14, 34, 47, 63

15 U.S.C. § 2302(d) .................................................................... 63

15 U.S.C. § 2307......................................................................... 57

15 U.S.C. § 2310(c)(1) ................................................................ 63

15 U.S.C. § 2310(d)(1)......................................................... 63, 66

28 U.S.C. § 1291...................................................................5

California Automatic Renewal Law.............................28, 29

California Unfair Competition Law...................................2

California Unfair Insurance Practices Act.......................65

Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) and (5) ......5

Fair Employment and Housing Act.................................64

Magnuson-Moss Warranty Act.......................................7

Safe Drinking Water and Toxic Enforcement Act ...........64

UCL ............................................................... *passim*

**Other Authorities**

16 C.F.R. § 700.1 *et seq.*...........................................63

16 C.F.R. § 701.1 *et seq.*...........................................63

16 C.F.R. § 702.1 *et seq.*...........................................63

16 C.F.R. § 703.1 *et seq.*...........................................63

16 C.F.R. § 700.10....................................................34

16 C.F.R. § 700.10(a) .................................2, 11, 14, 15, 47

16 C.F.R. § 700.10(c) ...........................................*passim*

16 C.F.R. § 701.3(a) ............................................13, 48

16 C.F.R. § 701.3(a)(2) ..............................................52

16 C.F.R. § 701.3(a)(3) ..............................................48

16 C.F.R. § 701.3(a)(5) ..............................................57

Circuit Rule 28-2.2...................................................5

Circuit Rule 28-2.6 ................................................................. 7

Fed. R. App. Proc. 28(b)(1) ................................................... 5

Fed. R. App. Proc. 28(f) ........................................................ 7

Fed. R. App. 10(a)(1) ........................................................... 14

Fed. R. Civ. Proc. 9(b) .................................................... 19, 23

U.S. Constitution, Article III ............................................... 69

U.S. Constitution, Article VI, cl. 2 ....................................... 70

## INTRODUCTION

Christina Groff bought a Keurig brewer which came with a one-year warranty issued by Keurig Green Mountain, Inc.  Keurig's warranty guarantees that Keurig will repair or replace a brewer that has a materials or workmanship defect.  The warranty makes explicit that Keurig will not provide repair or replacement for damages to the brewer caused by non-Keurig sources, including damages caused by third-party replacement parts and repair.

Before buying the brewer, Groff did not see or rely on the warranty terms as part of her purchasing decision.  After purchase, Groff came to believe that her warranty would be voided if she used third-party replacement parts or repair.  Groff never used or needed to use third-party replacement parts or repair, never sought a warranty replacement or repair, and was never told her warranty was invalid.  Groff apparently used her brewer without issue for the entire one-year warranty period.

Groff ultimately sued Keurig on the theory that its warranty violates the Magnuson-Moss Warranty Act's (**MMWA**) tying prohibition. The MMWA prohibits tying arrangements in which the warranty's validity is conditioned on the consumer using a brand-, trade-, or

1

corporate-named article or service.  15 U.S.C. § 2302(c); 16 C.F.R. § 700.10(a).  Groff contends that this MMWA violation is an unlawful and unfair practice under California's Unfair Competition Law (**UCL**).

The district court properly dismissed Groff's UCL claims for failure to plead actual reliance.  Groff's unlawful-prong and unfair-prong UCL claims turned on an alleged MMWA violation: that Keurig misleads consumers about their rights under the warranty terms and the law.  Specifically, Groff alleged that Keurig misrepresents that using third-party replacement parts or repair voids the warranty.  These allegations trigger the UCL's actual reliance requirement because they sound in fraud.  The district court thus correctly held that Groff must allege actual reliance facts to state a UCL claim, and properly dismissed those claims with prejudice when she repeatedly failed to do so.

While the district court was correct to dismiss Groff's claims for failure to plead actual reliance, additional grounds support that dismissal.  Looking past Groff's failure to plead actual reliance, this Court should affirm dismissal on any of these alternative bases.

To start, although Groff based her UCL claims on the theory that Keurig's warranty violates the MMWA's tying prohibition, she did not

2

allege facts of that violation. Groff theorizes that using third-party replacement parts or repair would impermissibly void Keurig's warranty, relying on the warranty's provision under "WHAT IS NOT COVERED BY THE LIMITED WARRANTY?" that excludes coverage for damages caused by third-party replacement parts and repair. Groff misunderstands Keurig's warranty and this coverage provision. Keurig's warranty simply guarantees against materials and workmanship defects in the brewer. It has no tying arrangement that conditions the validity of that guarantee on using only Keurig-approved products or services. In short, even if a consumer uses third-party replacement parts and repair services, Keurig will still honor its guarantee against materials and workmanship defects in the brewer itself.

Both courts and the Federal Trade Commission (**FTC**), which administers the MMWA, agree that the coverage provision targeted by Groff's lawsuit is not an impermissible tying arrangement. Under both the plain language and reasonable interpretation of the warranty, using third-party products and services does not void the warranty. The district court properly dismissed Groff's UCL claims because she failed to allege facts of a violation of the MMWA's tying prohibition.

3

Another basis supporting dismissal of Groff's UCL claims is the absolute bar safe harbor, which precludes a UCL claim based on a statutory violation when the legislature has specifically foreclosed private enforcement of that statutory scheme. Groff tried to enforce the MMWA's tying prohibition through her UCL claims. Yet Congress affirmatively restricted private enforcement of the MMWA to only consumers who can satisfy the MMWA's statutory standing requirement. And Congress determined that Groff's alleged price premium injury— which asserts damages simply from having bought a product associated with an allegedly illegal warranty—cannot satisfy MMWA statutory standing. Because Congress specifically decided that consumers like Groff cannot enforce the MMWA, the absolute bar safe harbor prevents her from circumventing that legislative determination through a UCL claim. The district court therefore properly dismissed Groff's UCL claims given that she lacks statutory standing to enforce the MMWA's tying prohibition that undergirds her UCL claims.

For all these reasons, the Court should affirm the district court's dismissal of Groff's claims without leave to amend.

## JURISDICTIONAL STATEMENT

Keurig agrees with Groff's jurisdictional statement.  Br. 4; FRAP 28(b)(1).  Under Circuit Rule 28-2.2, Keurig states the following.

Keurig timely removed this case from the California Superior Court for the County of San Bernardino to the Central District of California.  *See* 7-ER-1695.  The Central District had subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) and (5), because the putative class includes at least 100 members; there is minimal diversity between the putative class and the defendant; and the amount in controversy exceeds $5,000,000.00.  *See* 7-ER-2698-2707 (identifying facts establishing this jurisdiction).

The district court granted Keurig's motion to dismiss the second amended complaint on September 25, 2024, and dismissed with prejudice all claims.  *See* 1-ER-2.  Groff filed her notice of appeal from that order on September 26, 2024.  7-ER-1709.  This Court has subject matter jurisdiction over this appeal under 28 U.S.C. § 1291.

5

## ISSUES PRESENTED

Did the district court properly dismiss Groff's UCL claims because Groff failed to plead with particularity facts of actual reliance to support these claims sounding in fraud?

Did the district court exercise its sound discretion when it denied Groff's requested leave to file a third amended complaint given that Groff had attempted, but failed, to plead actual reliance even after being informed of what facts she needed to plead?

Is the district court's dismissal of Groff's UCL claims proper on the alternative bases that (1) Keurig's warranty does not violate the MMWA's prohibition on tying arrangements and (2) the absolute bar safe harbor forecloses Groff's UCL claims based on the MMWA's tying prohibition?

## STATUTES AND REGULATIONS

Under FRAP 28(f) and the Circuit Advisory Committee to Circuit Rule 28-2.6, Keurig identifies the following relevant portions of the Magnuson-Moss Warranty Act and related regulations:

**(6)** The term "written warranty" means--

> **(A)** any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time, or

> **(B)** any undertaking in writing in connection with the sale by a supplier of a consumer product to refund, repair, replace, or take other remedial action with respect to such product in the event that such product fails to meet the specifications set forth in the undertaking,

> which written affirmation, promise, or undertaking becomes part of the basis of the bargain between a supplier and a buyer for purposes other than resale of such product.

. . . .

**(10)** The term "remedy" means whichever of the following actions the warrantor elects:

> **(A)** repair,

> **(B)** replacement, or

7

**(C)** refund;

except that the warrantor may not elect refund unless (i) the warrantor is unable to provide replacement and repair is not commercially practicable or cannot be timely made, or (ii) the consumer is willing to accept such refund.

**(11)** The term "replacement" means furnishing a new consumer product which is identical or reasonably equivalent to the warranted consumer product.

15 U.S.C. § 2302(6), (10), (11).

### (a) Full and conspicuous disclosure of terms and conditions; additional requirements for contents

In order to improve the adequacy of information available to consumers, prevent deception, and improve competition in the marketing of consumer products, any warrantor warranting a consumer product to a consumer by means of a written warranty shall, to the extent required by rules of the Commission, fully and conspicuously disclose in simple and readily understood language the terms and conditions of such warranty. Such rules may require inclusion in the written warranty of any of the following items among others:

**(1)** The clear identification of the names and addresses of the warrantors.

**(2)** The identity of the party or parties to whom the warranty is extended.

**(3)** The products or parts covered.

**(4)** A statement of what the warrantor will do in the event of a defect, malfunction, or failure to conform with such written warranty--at whose expense--and for what period of time.

8

**(5)** A statement of what the consumer must do and expenses he must bear.

**(6)** Exceptions and exclusions from the terms of the warranty.

**(7)** The step-by-step procedure which the consumer should take in order to obtain performance of any obligation under the warranty, including the identification of any person or class of persons authorized to perform the obligations set forth in the warranty.

**(8)** Information respecting the availability of any informal dispute settlement procedure offered by the warrantor and a recital, where the warranty so provides, that the purchaser may be required to resort to such procedure before pursuing any legal remedies in the courts.

**(9)** A brief, general description of the legal remedies available to the consumer.

**(10)** The time at which the warrantor will perform any obligations under the warranty.

**(11)** The period of time within which, after notice of a defect, malfunction, or failure to conform with the warranty, the warrantor will perform any obligations under the warranty.

**(12)** The characteristics or properties of the products, or parts thereof, that are not covered by the warranty.

**(13)** The elements of the warranty in words or phrases which would not mislead a reasonable, average consumer as to the nature or scope of the warranty.

. . . .

9

**(c) Prohibition on conditions for written or implied warranty; waiver by Commission**

No warrantor of a consumer product may condition his written or implied warranty of such product on the consumer's using, in connection with such product, any article or service (other than article or service provided without charge under the terms of the warranty) which is identified by brand, trade, or corporate name; except that the prohibition of this subsection may be waived by the Commission if--

> **(1)** the warrantor satisfies the Commission that the warranted product will function properly only if the article or service so identified is used in connection with the warranted product, and

> **(2)** the Commission finds that such a waiver is in the public interest.

The Commission shall identify in the Federal Register, and permit public comment on, all applications for waiver of the prohibition of this subsection, and shall publish in the Federal Register its disposition of any such application, including the reasons therefor.

15 U.S.C. § 2302(a), (c).

(a) Section 102(c), 15 U.S.C. 2302(c), prohibits tying arrangements that condition coverage under a written warranty on the consumer's use of an article or service identified by brand, trade, or corporate name unless that article or service is provided without charge to the consumer.

. . . .

(c) No warrantor may condition the continued validity of a warranty on the use of only authorized repair service and/or

10

authorized replacement parts for non-warranty service and maintenance (other than an article of service provided without charge under the warranty or unless the warrantor has obtained a waiver pursuant to section 102(c) of the Act, 15 U.S.C. 2302(c)). For example, provisions such as, "This warranty is void if service is performed by anyone other than an authorized 'ABC' dealer and all replacement parts must be genuine 'ABC' parts," and the like, are prohibited where the service or parts are not covered by the warranty. These provisions violate the Act in two ways. First, they violate the section 102(c), 15 U.S.C. 2302(c), ban against tying arrangements. Second, such provisions are deceptive under section 110 of the Act, 15 U.S.C. 2310, because a warrantor cannot, as a matter of law, avoid liability under a written warranty where a defect is unrelated to the use by a consumer of "unauthorized" articles or service. In addition, warranty language that implies to a consumer acting reasonably in the circumstances that warranty coverage requires the consumer's purchase of an article or service identified by brand, trade or corporate name is similarly deceptive. For example, a provision in the warranty such as, "use only an authorized 'ABC' dealer" or "use only 'ABC' replacement parts," is prohibited where the service or parts are not provided free of charge pursuant to the warranty. This does not preclude a warrantor from expressly excluding liability for defects or damage caused by "unauthorized" articles or service; nor does it preclude the warrantor from denying liability where the warrantor can demonstrate that the defect or damage was so caused.

16 C.F.R. § 700.10(a), (c).

(a) Any warrantor warranting to a consumer by means of a written warranty a consumer product actually costing the consumer more than $15.00 shall clearly and conspicuously disclose in a single document in simple and readily understood language, the following items of information:

(1) The identity of the party or parties to whom the written warranty is extended, if the enforceability of the written warranty is limited to the original consumer purchaser or is otherwise limited to persons other than every consumer owner during the term of the warranty;

(2) A clear description and identification of products, or parts, or characteristics, or components or properties covered by and where necessary for clarification, excluded from the warranty;

(3) A statement of what the warrantor will do in the event of a defect, malfunction or failure to conform with the written warranty, including the items or services the warrantor will pay for or provide, and, where necessary for clarification, those which the warrantor will not pay for or provide;

(4) The point in time or event on which the warranty term commences, if different from the purchase date, and the time period or other measurement of warranty duration;

(5) A step-by-step explanation of the procedure which the consumer should follow in order to obtain performance of any warranty obligation, including the persons or class of persons authorized to perform warranty obligations. This includes the name(s) of the warrantor(s), together with: The mailing address(es) of the warrantor(s), and/or the name or title and the address of any employee or department of the warrantor responsible for the performance of warranty obligations, and/or a telephone number which consumers may use without charge to obtain information on warranty performance;

(6) Information respecting the availability of any informal dispute settlement mechanism elected by the

warrantor in compliance with part 703 of this subchapter;

(7) Any limitations on the duration of implied warranties, disclosed on the face of the warranty as provided in section 108 of the Act, 15 U.S.C. 2308, accompanied by the following statement:

Some States do not allow limitations on how long an implied warranty lasts, so the above limitation may not apply to you.

(8) Any exclusions of or limitations on relief such as incidental or consequential damages, accompanied by the following statement, which may be combined with the statement required in paragraph (a)(7) of this section:

Some States do not allow the exclusion or limitation of incidental or consequential damages, so the above limitation or exclusion may not apply to you.

(9) A statement in the following language:

This warranty gives you specific legal rights, and you may also have other rights which vary from State to State.

16 C.F.R. § 701.3(a).

## STATEMENT OF THE CASE

### I. Keurig's warranty guarantees only that a Keurig brewer is free of materials and workmanship defects.

The MMWA prohibits tying behavior associated with warranties. *See* 15 U.S.C. § 2302(c). Prohibited "tying arrangements" are those that "condition coverage under a written warranty on the consumer's use of an article or service identified by brand, trade, or corporate name unless that article or service is provided without charge to the consumer." 16 C.F.R. § 700.10(a).

Keurig's limited warranty has no tying provision. *See* 2-ER-186-90.[1] The warranty's guarantee is limited: that the "brewer will be free of defects in materials or workmanship under normal home use for one year from the date of purchase." 2-ER-187. Keurig then promises that it "will, at its option, repair or replace a defective brewer without charge." *Id.*

---

[1] Groff never objected to the entire warranty document being considered alongside Keurig's motions to dismiss. Keurig's warranty falls within this Court's review because it is in the record. *See* Fed. R. App. 10(a)(1). And that document can supply a basis to affirm the district court because it is subject to judicial notice and its incorporation by reference. *See Beverly Oaks Physicians Surgical Ctr., LLC v. Blue Cross & Blue Shield of Illinois*, 983 F.3d 435, 439 (9th Cir. 2020); *Crain v. Nevada*, 724 F. App'x 591, 592 (9th Cir. 2018); *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

Keurig cautions that "[o]nly the use of Keurig® K-Cup® brand pods and accessories will guarantee the proper functioning and lifetime of your Keurig® brewer." *Id*. This provision does not impact warranty coverage, however, noting only that Keurig cannot guarantee that the brewer will properly function for its intended lifetime when using non-Keurig pods and accessories.

Keurig's warranty continues: "[a]ny damage to or malfunction of your brewer resulting from the use of non-Keurig® pods and accessories may not be covered by this warranty or may result in a service fee if the damage or malfunction is determined to be caused by such use." *Id*. This provision does not *condition* warranty coverage on using a Keurig-brand product by *voiding* the warranty if non-Keurig products are used. Instead, this provision simply confirms the *scope* of what the warranty guarantees: that the brewer is free from materials and workmanship defects. And it does so by clarifying that Keurig is not going to pay for damages to the brewer caused by other reasons, such as use of a non-Keurig product (like pods and accessories). But even if third-party products damage the brewer, Keurig's warranty against materials and workmanship defects remains effective. *See id*.

15

Finally, the warranty specifies "WHAT IS NOT COVERED BY THE LIMITED WARRANTY," including "damages caused by use of non-Keurig® pods or accessories, services performed by anyone other than Keurig® or its authorized service providers, use of parts other than genuine Keurig® parts, or external causes such as abuse, misuse, inappropriate power supply, or acts of God." 2-ER-187-88. This is another provision confirming that the warranty's scope guarantees only that the brewer is free of materials and workmanship defects. Again, nothing in this language *conditions* warranty coverage by *voiding* the warranty. Instead, this language reiterates that the *scope* of the warranty's guarantee does not cover damages caused by non-Keurig sources, including third-party products (pods, accessories, replacement parts), third-party services, and non-Keurig events (abuse, misuse, inappropriate power supply, acts of God).

All told, Keurig's warranty has a specific and limited scope: it guarantees only that the brewer is free from defects that originate from the manufacturer, Keurig. When *those* defects occur, Keurig commits to repairing or replacing the brewer. By its own terms, this guarantee impliedly excludes any guarantee against damage caused by non-Keurig

16

products, services, or sources. Rather than leaving this limitation implicit, Keurig's warranty makes it explicit by stating that its guarantee does not cover damages caused by non-Keurig sources. But even if a brewer suffers damage from a non-Keurig source, Keurig's warranty against materials and workmanship defects remains intact. There is no tying condition here.

## II. Groff sued Keurig based on alleged misrepresentations relating to Keurig's warranty.

Groff began this litigation with a putative class claim under the MMWA. *See* 7-ER-1644. The focus of Groff's complaint was the warranty accompanying her Keurig brewer. 7-ER-1655 (¶¶ 49-50). Groff alleged that Keurig's warranty "will be void if the consumers use third-party repair services to fix their products." 7-ER-1645 (¶ 4). She also alleged that Keurig's "[w]arranty, and additional representations related thereto, lead consumers to believe that third-party repair will void the warranty." 7-ER-1650 (¶ 30). To that end, Groff alleged that Keurig made "intentional misrepresentations of law and fact," and "material misrepresentations and omissions." 7-ER-1645-46 (¶¶ 7-8). Groff believed these facts violated the MMWA's tying prohibition, theorizing

17

that "the warranty is 'tied' to exclusive repair by the manufacturer." 7-ER-1645 (¶ 5); *see* 7-ER-1658-59 (¶¶ 70-72).

After the parties conferred over Keurig's anticipated demurrer, Groff filed a first amended class action complaint. *See* 7-ER-1678. In her amended pleading, Groff dropped the MMWA claim and instead brought unlawful-prong and unfair-prong claims under the UCL. *See id.* But the basic gist of Groff's lawsuit stayed the same by focusing on Keurig's warranty. 7-ER-1688 (¶¶ 43-44). Groff continued to allege that Keurig made "intentional misrepresentations of law and fact" and "material misrepresentations and omissions," adding allegations of such fraudulent behavior. 7-ER-1678-79, 1692-93 (¶¶ 7-8, 70, 79). And she still claimed the alleged misconduct was Keurig's "multiple representations to consumers," both within and outside the warranty text. 7-ER-1679, 1683-86 (¶¶ 3, 24-35). Groff tied both of her UCL claims to this conduct that allegedly violated the MMWA's tying prohibition. 7-ER-1692-93 (¶¶ 66-68, 74-76).

## III. The district court properly dismissed the first amended complaint for lack of adequately pleaded actual reliance.

After timely removing the action, Keurig moved to dismiss Groff's first amended complaint. *See* 7-ER-1209. The district court granted that

18

motion because Groff's UCL claims lacked adequately pleaded facts of actual reliance to establish UCL statutory standing. *See* 4-ER-632-41.

Under California law, when UCL claims are based on "allegations that sound in fraud," "a plaintiff [must] show that she actually relied on the misrepresentation" to establish statutory standing. 4-ER-639. "Moreover, UCL claims that sound in fraud are subject to the heightened pleading standard under Federal Rule of Civil Procedure 9(b)." *Id.* And "Groff's UCL claims sound in fraud." *Id.* The court explained:

> The crux of both her UCL claims is that Keurig intentionally misrepresented to her that the warranty's validity is conditioned on her using an authorized service provider to perform any repairs to her coffee [brewer]. . . . According to Groff, this representation is false and misleading because she was led to believe that by using a third-party repair service, Keurig subsequently will refuse to honor the warranty.

*Id.*

Given that her UCL claims were based on allegations sounding in fraud, Groff needed to "allege with particularly that she actually relied on Keurig's alleged unlawful tying provision when she decided to pay more (i.e., overpaid) for her coffee [brewer]." *Id.* Yet "Groff fail[ed] to do so." *Id.* The court held that her allegation that the "alleged unlawful tying provision 'caused Plaintiff injury' [was] insufficient to state with

particularly that she actually relied on Keurig's [alleged] misrepresentation." 4-ER-640.

The district court then laid out the types of missing facts that would adequately plead actual reliance:

> Notably, Groff does not even allege *when* she saw, read, or discovered the unlawful tying provision. For example, Groff does not allege that before she purchased her coffee maker, she saw and read a representation about the warranty on the box, believed it to be lawful, and decided to pay a premium for the coffee maker because it was covered by a one-year, lawful warranty. Nor does she allege that after the purchase, she discovered that the tying provision was unlawful and would not have paid this premium had she known of the falsity or misleading nature of the warranty's language at the time of purchase.

*Id*.

Without these types of "facts to show she actually relied on the warranty's alleged unlawful tying provision," the district court concluded, Groff "in turn fail[ed] to demonstrate she has standing under the UCL." *Id*. The district court thus dismissed Groff's first amended complaint. *Id*. And while the court was "skeptical" that these "deficiencies . . . [could] be remedied, it [could not] conclude that amendment would be futile" and so granted Groff leave to amend the complaint. *Id*.

20

## IV. In the second amended complaint, Groff still pleaded her UCL claims based on alleged misrepresentations.

Groff filed a second amended complaint with allegations that were largely unchanged from her prior complaint. *See* 4-ER-600. The lawsuit was still about Keurig's warranty associated with Groff's coffee brewer. 4-ER-612 (¶¶ 44-45). She still alleged that the misconduct was Keurig's "multiple representations to consumers," both within and outside the warranty text. 4-ER-601, 606-10 (¶¶ 3, 25-36). And her UCL claims were still based on these representations, alleging that they violated the MMWA's tying prohibition. 4-ER-616-18, (¶¶ 68-70, 76-79).

The primary difference was that Groff scrubbed the words "misrepresentations" and "omissions" from her complaint. *Compare, e.g.*, 4-ER-602, 617-18 (¶¶ 7-8, 72, 82), *with, e.g.*, 7-ER-1679-80, 1692-93 (¶¶ 7-8, 70, 79). Groff also tried to plead reliance with a new allegation that, when buying the Keurig brewer from Amazon.com, she saw a notice about a warranty. 4-ER-612 (¶¶ 45-46).

## V. The district court properly dismissed the second amended complaint for lack of adequately pleaded actual reliance.

Keurig again moved to dismiss. *See* 3-ER-587. The district court again granted Keurig's motion because Groff failed to adequately plead facts of actual reliance to establish UCL statutory standing. 1-ER-2-6.

21

Although Groff insisted that her claims did not sound in fraud, the court disagreed, reasoning that "[w]hile Groff deleted the word 'misrepresentation' from the entirety of the" second amended complaint, that superficial modification did not change "the crux of her allegations." 1-ER-4-5. That is, Groff's UCL claims still alleged that "Keurig made misrepresentations to [Groff] and similarly situated consumers that the warranty's validity is conditioned on her using an authorized provider to perform repairs to her coffee [brewers] in violation of the [MMWA's] anti-tying provisions." 1-ER-5. "No matter how Groff reframe[d] her allegations, her UCL claims still sound in fraud." 1-ER-4.

Given that her UCL claims were still based on allegations sounding in fraud, Groff still needed to plead actual reliance. 1-ER-5. She again failed to do so. Her new allegations of seeing a webpage reference to a warranty associated with her Keurig brewer failed to bridge this pleading gap. *Id.* The court explained:

> She still does not allege that she read the most important term of the warranty at issue in this case—i.e., the unlawful tying provision. She does not allege she read this provision before she purchased the coffeemaker. She does not allege she relied on this alleged unlawful tying provision when she decided to pay premium for the coffee maker. Groff does not even allege that after she received her product, she received the warranty, discovered the unlawful tying provision, and

22

> would not have paid this premium had she known of the falsity or misleading nature of the warranty's language at the time of purchase.

*Id.*

Without these or similar allegations, Groff failed to allege facts of actual reliance that would satisfy Rule 9(b)'s requirements. *See id.* The district court thus dismissed Groff's second amended complaint. 1-ER-6. "Moreover, based on the scant allegations Groff added to the" second amended complaint, the court held it "clear . . . that Groff cannot allege facts that could cure this deficiency." *Id.* The district court therefore denied Groff leave to amend and directed the clerk to close the action. *Id.*

## SUMMARY OF ARGUMENT

The district court correctly dismissed Groff's UCL claims without leave to amend for three reasons.

First, Groff failed to plead actual reliance. The district court rightly determined that Groff's unlawful-prong and unfair-prong UCL claims required pleading actual reliance. After all, those UCL claims depended on allegations sounding in fraud: that Keurig made misrepresentations within and outside the warranty that deceived consumers about their rights under Keurig's warranty and the law. In turn, the district court also correctly held that Groff failed to allege facts to plead actual reliance

23

because none of her allegations established Groff's awareness of, let alone reliance on, Keurig's allegedly wrongful representations before buying her brewer. Finally, the district court's dismissal without leave to amend was correct because Groff repeatedly failed to allege facts necessary to plead actual reliance, and Groff has not otherwise proffered any new facts to avoid dismissal. The Court should thus affirm the district court's dismissal with prejudice.

Second, Groff failed to plead a violation of the MMWA's tying prohibition. Keurig's warranty guarantees that Keurig will repair or replace a brewer that has a materials or workmanship defect. The validity of that guarantee is not conditioned on the consumer *not* using third-party replacement parts or repair. Instead, the warranty simply clarifies that it *does not cover damages* caused by third-party products and services. Keurig's warranty therefore has no tying arrangement that could violate the MMWA's tying prohibition. The Court should affirm the district court's dismissal with prejudice on this alternative ground.

Third, Groff cannot base her UCL claims on an MMWA violation under the absolute bar safe harbor. Congress determined that only consumers who can satisfy the MMWA's statutory standing provision can

enforce the MMWA. Groff's alleged injury, price premium damages, is not a type of injury that satisfies MMWA statutory standing so that she qualifies as the type of consumer who can enforce the MMWA. In turn, the absolute bar safe harbor prevents Groff from pleading around MMWA statutory standing by trying to enforce the MMWA's provisions through a UCL claim. The Court should affirm the district court's dismissal with prejudice on this alternative ground.

## ARGUMENT

This Court "review[s] de novo a district court's dismissal for failure to state a claim upon which relief can be granted." *Cohen v. ConAgra Brands, Inc.*, 16 F.4th 1283, 1287 (9th Cir. 2021). "Questions of . . . statutory interpretation are also reviewed de novo." *Id*. Similarly, "[t]he interpretation and meaning of contract provisions are questions of law and are also reviewed de novo." *Diaz v. Macys W. Stores, Inc.*, 101 F.4th 697, 700 (9th Cir. 2024). Finally, the Court "review[s] the denial of leave to amend for an abuse of discretion," but will "review the futility of amendment de novo." *Cohen*, 16 F.4th at 1287.[2]

---

[2] Groff argues that an abuse of discretion standard applies to the futility analysis. *See, e.g.*, Br. 5, 12, 14, 44-46. Keurig will accept that standard of review.

The district court correctly dismissed Groff's UCL claims because she failed to plead facts stating a claim for relief.  As the district court held, Groff's UCL claims sound in fraud yet she failed to plead with particularity facts of actual reliance to establish statutory standing.  In turn, the district court properly denied Groff's requested leave to amend given that she can plead no facts of actual reliance.

Looking past Groff's failure to plead facts of actual reliance, additional reasons support dismissal of her meritless lawsuit.  At bottom, this lawsuit tries to fit a square peg into a round hole: trying to force a "tying" theory of liability—a recently popularized litigation trend—onto Keurig's warranty that has no tying condition.  Because Keurig's warranty does not violate the MMWA's prohibition against tying arrangements, Groff's claims are meritless and were properly dismissed.

Another reason supports the district court's dismissal: the UCL's absolute bar safe harbor.  This safe harbor forecloses her claims because Congress contemplated "no injury" consumers like Groff and decided that they cannot enforce the MMWA's technical requirements.  Groff cannot use the UCL to avoid this legislative decision.

For all these reasons, the Court should affirm the district court.

26

## I. The district court properly dismissed Groff's UCL claims for failure to plead particular facts of actual reliance.

Everyone agrees: any UCL claim (fraud-prong, unlawful-prong, or unfair-prong) relying on allegations sounding in fraud requires actual reliance. *See Kwikset Corp. v. Superior Court*, 246 P.3d 877, 888 (Cal. 2011); *see also Watkins v. MGA Ent., Inc.*, 550 F. Supp. 3d 815, 834 (N.D. Cal. 2021) ("The reliance requirement applies not only to UCL claims asserted under the fraud prong of section 17200 but also to claims asserted under the unlawful and unfair prongs where those claims are predicated on misrepresentation and deception."). Under this requirement, the plaintiff must "prove actual reliance on the allegedly deceptive or misleading statements." *Sateriale v. R.J. Reynolds Tobacco Co.*, 697 F.3d 777, 793 (9th Cir. 2012).

The central thrust of this appeal is Groff's attack on the district court's holdings that, first, Groff's UCL claims are based on allegations sounding in fraud and, second, Groff failed to plead with particularity actual reliance. Groff is wrong on the law and the alleged facts.

27

**A.  Groff conflates her UCL claims with those that rely on unlawful conduct independent of any representations.**

Groff muddles the distinction between when a UCL claim sounds in fraud and when it does not.  Br. 17-22.  But that distinction is essential to the district court's dismissal.

A UCL claim does not sound in fraud when a defendant allegedly commits unlawful conduct independent of any misrepresentations to consumers.  Groff's cited cases all fall within this category.  For example, in *Clayworth v. Pfizer, Inc.*, 233 P.3d 1066, 1070-71, 1087 (Cal. 2010), the defendants' illegal price-fixing conspiracy involved no representations to their customer pharmacies, who were plaintiffs.  And in *Svenson v. Google, Inc.*, 2015 WL 1503429, *1-2, *9 (N.D. Cal. Apr. 1, 2015), the defendants' unlawful disclosure of personal information, in violation of their policies, involved no representations to its app purchasers like the plaintiff.  In fact, the plaintiff *did not* base her UCL claims on the defendants' representations about its disclosure practices—just the disclosure practices themselves.  *Id.* at *9-10.  Finally, in *Kissel v. Code 42 Software, Inc.*, 2016 WL 7647691, *1-2, *8 (C.D. Cal. Apr. 14, 2016), the defendant's computer service subscriptions violated California's Automatic Renewal Law independent of the truthfulness of any

28

representations to subscribers like the plaintiff. As in all these cases, the defendant's alleged conduct was unlawful separate from the truthfulness of representations to consumers. *See id.*

Those circumstances, however, are different in kind from when the alleged misconduct—whether supposedly unlawful or unfair, or both—is intertwined with purported misrepresentations. In *these* situations, the allegations sound in fraud. For example, if UCL claims are based on "statutory provisions [that] simply codify prohibitions against specific types of misrepresentations," then the claims sound in fraud. *Kwikset Corp.*, 51 Cal. 4th at 888 n.9. Similarly, UCL claims sound in fraud by relying on allegations about "a unified course of fraudulent conduct." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). In short, alleged misconduct giving rise to a UCL claim sounds in fraud when it coincides with alleged misrepresentations. *See Wall v. Hewlett-Packard Co.*, 2011 WL 6325972, *3 (S.D. Cal. Dec. 16, 2011) (UCL claim sounds in fraud when "based on representations that deceive").

29

**B.    Groff's UCL claims rely on alleged misrepresentations and thus sound in fraud to require actual reliance.**

**1.    Groff's prior complaints were grounded in fraud.**

Groff's UCL claims in her second amended complaint should be considered in the context of her allegations in prior complaints.  *See Rodriguez v. Sony Comput. Ent. Am., LLC*, 801 F.3d 1045, 1054 (9th Cir. 2015) ("an amended complaint should aver additional allegations that are consistent with the challenged pleading and that do not contradict the allegations in the original complaint"); *Am. Title Ins. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988) ("admissions in the pleadings are generally binding on the parties and the Court"); *Davis v. Combined Ins.*, 2018 WL 10701406, *1 (N.D. Cal. Mar. 7, 2018) ("plaintiff cannot omit prior factual allegations in an attempt to state a claim in amended pleading").

In her original and first amended complaints, Groff based her theory of liability on Keurig's alleged "misrepresentations of law and fact," and "material misrepresentations and omissions." 7-ER-1645-46 (¶¶ 7- 8); 7-ER-1678-79 (¶¶ 7-8).  In her first amended complaint, she explicitly based her UCL claims on those alleged misrepresentations.  7-

ER-1692-93 (¶¶ 70, 79). Groff's lawsuit has always alleged that Keurig's liability is based on misrepresentations—allegations that sound in fraud.

### 2. Groff's second amended complaint continued to base liability on alleged misrepresentations.

This theory of Groff's lawsuit did not meaningfully change in her second amended complaint. To be sure, Groff "deleted the word 'misrepresentation' from the entirety of the" second amended complaint. 1-ER-4-5. The district court, however, correctly held that this superficial change did not alter the substance of Groff's claims. *See id.*

In her second amended complaint, Groff alleged that the MMWA prohibits "voiding [a] warranty" if the consumer uses third-party replacement parts and repair. 4-ER-601 (¶¶ 5-6). But Groff never alleged that her warranty—or *anyone's* warranty with Keurig, for that matter—was voided after using a third-party product or service. *See* 4-ER-612 (¶ 47). Groff's cases (*Clayworth*, *Svenson*, *Kissel*) are incomparable: they each involved allegations that conduct, separate from misrepresentations, violated the law.

Rather than alleging unlawful and unfair conduct separate from misrepresentations, Groff alleged that Keurig falsely represented that using third-party replacement parts and repair "will void" the warranty.

31

4-ER-608-09 (¶ 33). Groff also framed the statements in Keurig's warranties as misrepresentations that "[l]ea[d] a [r]easonable [c]onsumer *to [b]elieve* [t]hat [t]hird-[p]arty [r]epair is [p]rohibited." 4-ER-606 (heading and ¶¶ 25-26) (emphasis added); *see also* 4-ER-610 (¶ 36) (alleging that Keurig's representations "lead consumers to believe that their warranties are voided by third party repairs"). To emphasize her focus on consumer interpretation of representations, Groff pleaded that third-party website statements exemplify the "common understanding" that Keurig threatens to void a warranty in the event of using third-party products or services. 4-ER-607-08 (¶¶ 27-32). Groff also alleged that these misrepresentations further Keurig's supposed "monopoly on repairing the devices [it] sell[s], and on manufacturing, marketing, and selling after-market parts and accessories." 4-ER-602 (¶ 7).

In sum, Groff's UCL claims are based on Keurig allegedly misleading consumers about their warranty rights (by representing that third-party replacement parts and repair will void the warranty)—not Keurig violating the MMWA by voiding any warranty because a consumer used third-party products or service. Groff's UCL claims thus sound in fraud by alleging that, through Keurig's misrepresentations,

32

consumers misunderstood their rights under Keurig's warranty.  *See Wall*, 2011 WL 6325972, at *3.

Groff concedes as much on appeal given her argument that, even if Keurig's warranty is not *actually* voided by using third-party replacement parts and repair, liability still arises from misleading consumers into believing that to be so.  Br. 7.  Groff's theory of UCL liability, then, is still intertwined with alleged misrepresentations under this strained interpretation of Keurig's warranty.  In short, Groff's UCL claims sound in fraud.

Nor does Groff avoid relying on misrepresentations by arguing that the "presentations in the warranty text" are *themselves* "prohibited warranty restrictions against third-party repair."  Br. 24.[3]  This theory of UCL liability sounds in fraud for two reasons.  First, this theory amounts to alleging that Keurig engaged in "a unified course of fraudulent conduct" by knowingly selling an illegal warranty.  *Kearns*, 567 F.3d at 1125; *see also, e.g., Hiradate v. Ralphs Grocery Co.*, 2022 WL 19299128, *4 (C.D. Cal. Nov. 28, 2022) (UCL claims sounded in fraud by

---

[3]     This legal conclusion is erroneous.  *See infra* Argument § II.

33

alleging that the defendants knowingly "engaged in the unified fraudulent conduct of selling worthless gift cards to consumers").

Second, this theory of UCL liability sounds in fraud because the FTC has said as much. Groff's UCL claims are based on the MMWA anti-tying statutory provision, *see* 15 U.S.C. 2302(c), as administered by FTC regulation, *see* 16 C.F.R. § 700.10. *See, e.g.*, Br. 6-7. The FTC states that warranty "provisions" "condition[ing] the continued validity of a warranty on" not using third-party products or services—as Groff alleges here—"*are deceptive* . . . because a warrantor cannot, as a matter of law, avoid liability under a written warranty where a defect is unrelated to the use" of those third-party products or services. 16 C.F.R. § 700.10(c) (emphasis added). Contrary to Groff's assertion that this alleged MMWA violation "is not an allegation of deception," Br. 23, the very law undergirding Groff's UCL claims characterizes such alleged conduct as "deceptive." 16 C.F.R. § 700.10(c). Groff's theory of an MMWA violation is a theory of deception, and thus sounds in fraud. *See Kwikset Corp.*, 51 Cal. 4th at 888 n.9.

For all these reasons, the district court correctly held that "the crux of [Groff's] allegations" in the operative complaint "remain[ed] the same"

34

as in earlier pleadings. 1-ER-5. That is, Groff's claims were still based on Keurig's alleged "misrepresentations . . . that the warranty's validity is conditioned on [consumers] using an unauthorized provider to perform repairs." *Id*. The district court therefore correctly determined that Groff's "UCL claims still sound in fraud" and required pleading actual reliance. 1-ER-4-5.

### C. Groff failed to plead actual reliance with particularity.

#### 1. Groff waived this argument and thus forfeited the ability to raise it on appeal.

Keurig moved to dismiss the second amended complaint because Groff's UCL claims sounded in fraud *and* she failed to plead actual reliance. 3-ER-567-70. In opposition, Groff recognized both points but argued *only* that her UCL claims did not sound in fraud. 2-ER-126-27. Groff thus waived the argument that she alleged facts establishing actual reliance "by failing to raise [it] in an opposition to [the] motion to dismiss." *Vien-Phuong Thi Ho v. Reconstruct Co.*, 669 F. App'x 857, 859 (9th Cir. 2016). This waived argument "cannot be heard on appeal." *Walsh v. Nevada Dep't of Hum. Res.*, 471 F.3d 1033, 1037 (9th Cir. 2006) (plaintiff's failure to raise issue in response to motion to dismiss waived that issue and "forfeited the right to raise [it] on appeal"). Without

further analysis, the Court should affirm the district court's holding that Groff failed to "adequately allege she actually relied on the unlawful tying provision" to "demonstrate she has statutory standing to bring [her] two UCL claims." 1-ER-5-6.

### 2. Groff failed to plead actual reliance.

Even if the Court considers the merits of this waived issue, Groff did not plead actual reliance. When a UCL claim relies on allegations sounding in fraud, a plaintiff must plead "actual reliance on the allegedly deceptive or misleading statements." *Sateriale*, 697 F.3d at 793. Groff thus needed to allege facts that the alleged misrepresentations were "an immediate cause of [her alleged] injury-producing conduct," that is, they were a reason she bought the brewer. *Kwikset Corp.*, 246 P.3d at 888.

Yet Groff did not plead that she relied on Keurig's alleged misrepresentations, either outside or within her warranty, to buy her brewer. *See* 4-ER-606-09 (¶¶ 25-33). In fact, Groff's carefully worded allegations do not claim that she *has ever* read her warranty. 4-ER-612 (¶ 47). Instead, Groff alleged that, when she "purchased [her brewer] on Amazon.com, [she] saw a notice on the webpage that the [brewer] had a warranty—however, the terms of the [w]arranty were not available on

the webpage, via link or otherwise." *Id.* (¶ 45). Groff then alleged that she relied "on that notice" to "reasonably expec[t] that the [brewer] was subject to a warranty that complied with the law." *Id.* (¶ 46).

These alleged facts fail to plead actual reliance for three reasons. First, Groff supposedly relied on only a notice that a warranty existed, not on any of the allegedly misleading statements underlying her UCL claims against Keurig. *See* 1-ER-5 ("She still does not allege that she read the most important term of the warranty at issue in this case—i.e., the unlawful tying provision."). "To adequately allege reliance," however, "a plaintiff must, at a minimum, allege that he saw the representation at issue." *Gonzales v. Nat. Factors Nutritional Products Inc.*, 2024 WL 4609853, *6 (C.D. Cal. June 28, 2024); *see also, e.g.*, *Kwikset Corp.*, 246 P.3d at 888-89 (actual reliance when the plaintiff "saw and relied on the labels" that contained the misrepresentations). Groff did not allege these facts.

Second, Groff relied on the notice of a warranty only to presume that the warranty complied with the law, not as a reason to buy her brewer. Even if actual reliance required only that Groff *knew of* a warranty (not requiring that she viewed the alleged misrepresentations),

37

Groff did not allege that she bought the brewer *because* there was a warranty. *See* 1-ER-5 ("She does not allege she relied on this alleged unlawful tying provision when she decided to pay premium for the [brewer]."). And actual reliance requires "alleging . . . that [the consumer] would not have bought the product but for the misrepresentation." *Kwikset Corp.*, 246 P.3d at 890; *see also, e.g.*, *Bishop v. 7-Eleven, Inc.*, 651 F. App'x 657, 658 (9th Cir. 2016) (plaintiff pleaded actual reliance by alleging "he would not have had purchased the [product] had" there been no misrepresentations). Groff did not allege these facts.

Third, Groff tied her allegations of reliance to a notice of a warranty provided by a third party: whatever entity runs Amazon.com. Groff did not allege that the warranty notice on the Amazon.com webpage was attributable to Keurig. Because Keurig cannot be liable for a third-party's alleged misrepresentations, representations on Amazon.com cannot serve as the basis for actual reliance to support UCL claims against Keurig. *See, e.g.*, *Beyer v. Symantec Corp.*, 333 F. Supp. 3d 966, 975 (N.D. Cal. 2018) (statements on a third-party website, "not allege[d] . . . attributable to" the defendant, could not support a UCL claim).

38

Considering all these infirmities with Groff's pleading, the district court got it right: Groff's "allegations fall short" of pleading actual reliance by "showing she actually relied on the unlawful tying provision when she decided to purchase her [brewer]." 1-ER-5. The court properly dismissed Groff's UCL claims for failing to plead with particularity facts establishing actual reliance and UCL statutory standing. 1-ER-5-6.

On appeal, Groff does not argue that she pleaded facts establishing actual reliance. She only contends that her pleading adequately gives notice of what alleged misrepresentations are at issue. Br. 24-25. Groff misses the point. Her cited case, *Rasmussen v. Apple Inc.*, 27 F. Supp. 3d 1027, 1043-45 (N.D. Cal. 2014), addressed whether the plaintiff's allegations of actual reliance were specific enough to identify the misrepresentations. *Rasmussen* is irrelevant. Unlike *Rasmussen*, Groff adequately specified the alleged misrepresentations underlying her UCL claims. Unlike *Rasmussen*, Groff failed to allege facts of actual reliance on misrepresentations (regardless of specificity) attributable to Keurig. *Rasmussen* neither challenges the correctness of the district court's holding, nor changes that Groff failed to allege facts of actual reliance.

39

### D. Dismissal with prejudice was proper.

#### 1. Groff waived any argument for reversal.

In the district court, Groff's entire argument to seek leave to amend was the following sentence at the end of her opposition brief: "In the alternative, Plaintiff respectfully seeks leave to cure any pleading deficiencies." 2-ER-139. "[A]rguments not raised before the district court with sufficient specificity and vigor are generally considered waived on appeal." *Gabourel v. Luxottica of Am., Inc.*, 2024 WL 260963, *1 (9th Cir. Jan. 24, 2024). Groff's one-sentence request for leave to amend was not made with specificity and vigor. *See Holley-Gallegly v. TA Operating, LLC*, 74 F.4th 997, 1000-01 (9th Cir. 2023) (argument made with "sufficient specificity and vigor" when not made "in passing"). Any argument that challenges the district court denying leave to amend is thus waived. *See In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 992 (9th Cir. 2010) ("an issue will generally be deemed waived on appeal if the argument was not raised sufficiently for the trial court to rule on it"). The Court should affirm the denied leave to amend without further analysis.[4]

---

[4]     Similarly, if the Court affirms on alternative grounds, Groff's cursory request seeking leave to amend cannot secure such leave. Br. 26.

### 2. The district court properly denied leave to amend.

The district court denied leave to amend because, given Groff's "scant allegations" attempting to plead actual reliance in the second amended complaint, it was "clear" that Groff could not "allege facts that could cure" her failure to plead actual reliance. 1-ER-6. This Court should affirm the district court's sound exercise of discretion.

"A district court's discretion to deny leave to amend is particularly broad where the plaintiff has previously amended." *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962) (leave to amend improper where there has been "repeated failure to cure deficiencies by amendments previously allowed"). When the district court dismissed the first amended complaint, it informed Groff that her allegations failed to plead actual reliance. 4-ER-639. The district court also instructed Groff precisely what types of facts she needed to allege to plead actual reliance. *Id*. When Groff failed to allege those types of facts, the district court's denial of leave to amend was thus firmly within its "broad" discretion to do so. *Salameh*, 726 F.3d at 1133.

41

The district court's denial of leave to amend was proper also because amendment was futile. Two reasons establish futility of amendment, and each reason also justifies the district court's denial of leave to amend. *See Kroessler v. CVS Health Corp.*, 977 F.3d 803, 815 (9th Cir. 2020) ("Futility of amendment can, by itself, justify the denial of a motion for leave to amend.").

First, Groff has never explained what facts any proposed amended complaint would contain and how those new facts would avoid dismissal. *See* Br. 44-46; 2-ER-139. "[A]mendment would be futile" because Groff "has failed to proffer, either before this [C]ourt or the district court, any additional facts [she] would plead if given the opportunity to amend." *Stross v. Zillow, Inc.*, 2023 WL 8518904, *2 n.2 (9th Cir. Dec. 8, 2023); *see also Bracht v. Deckers Outdoor Corp.*, 2012 WL 13013417, *2 (C.D. Cal. Oct. 2, 2012) ("The courts of appeals regularly affirm denials of leave to amend where, as here, a plaintiff has failed to proffer any facts it claims it could add."). The Court can affirm the denial of leave to amend on this basis without further analysis. *See id.*

Second, amendment would be futile because there are no new "facts consistent with the challenged pleading [that] could . . . possibly cure the

deficiency." *Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010). In dismissing the first amended complaint, the district court explicitly told Groff the type of facts needed to plead actual reliance. 4-ER-640. Groff's subsequent failure to plead any facts resembling actual reliance made it "clear" that those facts do not exist and cannot be pleaded. 1-ER-6.

On appeal, Groff contends that the district court's "single-sentence explanation . . . is not a justifying reason." Br. 45. To the contrary, Groff's failure to plead the type of facts that the district court told her were necessary to state a claim justifies the common-sense conclusion that Groff cannot plead those facts. *See, e.g.*, *Velasquez v. Chase Home Fin. LLC*, 2011 WL 89592, *1 (N.D. Cal. Jan. 10, 2011) (dismissing claims with prejudice after the plaintiff failed to plead "the types of facts" the court had "identified" as "need[ing] to be alleged in order to state claims for relief"). Indeed, nowhere has Groff argued that she *can* plead other facts to establish actual reliance, at most suggesting (without specifics) that she can further develop facts about her "reliance" on a third-party's notice of a warranty. Br. 46. Groff's inability to specify new facts showing actual reliance underscores that the district court was right.

Amendment would be futile. The district court properly denied Groff leave to file an amended complaint. *See Kroessler*, 977 F.3d at 815.

### 3. Groff's new argument on appeal is waived and, in any event, is not a basis to find error.

In the district court, Groff asked for leave to amend to "cure any pleading deficiencies." 2-ER-139. In response, the district court held that Groff failed to plead facts of actual reliance and, as to amendment, "that Groff cannot allege facts that could cure this deficiency." 1-ER-6. On appeal, however, Groff does not want an amendment to cure her pleading deficiency, but wants the opportunity to bring a new "theory of the case" divorced of alleged misrepresentations. Br. 45-46.

The Court should reject this basis for reversal on waiver grounds. An appellant waives an argument they "failed to raise . . . before the district court." *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997). Groff did not seek leave from the district court for the reason argued on appeal: to file another amended complaint with a new theory of liability untethered from misrepresentations. Groff "did not raise this argument before the district court and it is therefore waived." *Brooks v. Barnhart*, 118 F. App'x 167, 169 (9th Cir. 2004).

In any event, this proposed reason to reverse and grant leave to amend fails on futility grounds. To begin, "amendment would be futile" because Groff still does not specify what new facts she would plead to state a new theory of the case and avoid dismissal. *Stross*, 2023 WL 8518904, at *2 n.2. Her broad generalities that another amendment would establish that her claims are not based on misrepresentations, and thus need not plead actual reliance, cannot secure reversal. *See id.*; *Kroessler*, 977 F.3d at 815.

Separately, amendment would be futile because Groff cannot allege any new facts to distance her UCL claims from allegations of misrepresentation, thereby avoiding the actual reliance requirement. *See Telesaurus*, 623 F.3d at 1003. Groff's unlawful-prong and unfair-prong UCL claims use "the same root misconduct" of alleged MMWA violations. Br. 11 n.5. In turn, the alleged MMWA violations are inherently "deceptive." 16 C.F.R. § 700.10(c). That the "root misconduct" constituting alleged MMWA violations is deceptive means that Groff's UCL claims will always sound in fraud. *See Kwikset Corp.*, 51 Cal. 4th at 888 n.9. Additionally, Groff's warranty was never voided—and never could be voided under the actual warranty terms. *See infra* Argument

45

§ II. Her UCL claims, premised on an MMWA anti-tying violation, must therefore rely on allegations of misleading consumers about their rights under the warranty and the law. *See Wall*, 2011 WL 6325972, at *3.

Because Groff's proposed amendment about a new theory of the case cannot escape an actual reliance requirement, it is futile and cannot secure reversal. *See Kroessler*, 977 F.3d at 815.

## II. Keurig's warranty has no tying arrangement and thus cannot violate the MMWA's tying prohibition.

"This [C]ourt can affirm the district court's dismissal on any ground supported by the record, even if the district court did not rely on the ground." *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 950 (9th Cir. 2005). Groff's unlawful-prong and unfair-prong UCL claims depend on an alleged violation of the MMWA's tying prohibition. 4-ER-601-02, 609-10, 616-19 (¶¶ 3-8, 34-36, 67-68, 70, 76-79). On appeal, Groff confirms that both UCL claims rely on the premise that Keurig's warranty violated the MMWA. Br. 10-11 & n.5, 19, 34-41. Consequently, if Groff failed to plead an MMWA violation, then she failed to plead her UCL claims, and dismissal was proper. *See Wasjutin v. Bank of Am., N.A.*, 732 F. App'x 513, 517 (9th Cir. 2018) ("Absent any predicate

46

violation of statute or common law, there is no basis for invoking the UCL's unlawful prong.").

The MMWA's tying prohibition prohibits a "warrantor" from "condition[ing]" its written warranty "on the consumer's using, in connection with such product, any article or service (other than article or service provided without charge under the terms of the warranty) which is identified by brand, trade, or corporate name." 15 U.S.C. § 2302(c). The key feature of a tying arrangement is that the validity of the warranty is "condition[ed]" on the consumer using a brand-, trade-, or corporate-named article or service. *Id.*; *see also* 16 C.F.R. § 700.10(a), (c). To that end, a tying arrangement is one "that requires the consumer to purchase some product or service identified by brand, trade, or corporate name in order to gain the benefit of the warranty." *McGarvey v. Penske Auto. Grp., Inc.*, 2010 WL 1379967, *7 (D.N.J. Mar. 29, 2010).

Groff's lawsuit hangs on her insistence that Keurig *limiting the scope* of its warranty guarantee (which is not a tying arrangement) is the same as *conditioning the warranty's validity* (which is a tying arrangement). Groff is wrong. Keurig's warranty has no tying arrangement and thus cannot violate the MMWA's tying prohibition.

47

## A. Keurig's warranty does not condition coverage.

Keurig's limited warranty guarantees that a "brewer will be free of defects in materials and workmanship under normal home use for one year from the date of purchase." 2-ER-187. The MMWA specifically permits this "written warranty" to be limited to "the nature of the material or workmanship and affirms or promises that such material or workmanship is defect free." 15 U.S.C. § 2301(6)(A); *see also* 16 C.F.R. § 701.3(a) (explaining a written warranty under the MMWA).

To back up this guarantee, Keurig promises, "at its option, [to] repair or replace a defective brewer without charge." 2-ER-187. These are appropriate "remed[ies]" in the event of a material or workmanship defect. 15 U.S.C. § 2301(10); *see also* 15 U.S.C. § 2302(a)(4) (requiring such an explanation of remedies); 16 C.F.R. § 701.3(a)(3) (same).

Nothing in Keurig's warranty conditions the warranty's validity on a consumer not using third-party replacement parts or repair. No provision requires a consumer to buy Keurig-brand articles or services to secure a repair or replacement in the event of a materials or workmanship defect. Nor is there any "void" or similar provision that invalidates the guarantee against materials and workmanship defects if

48

the consumer uses third-party replacement parts or repair with their brewer. *Contra, e.g.*, *Dickerson v. NWAN Inc.*, 2018 WL 740999, *1, *4 (D. Ariz. Feb. 7, 2018) (tying condition when, under the warranty's express terms, using an unauthorized service "will void" the warranty); 16 C.F.R. § 700.10(c) (providing a similar example).

Instead, Groff focuses on the limits of the warranted guarantee's scope. Groff's second amended complaint targeted three provisions:

- "Only the use of Keurig® K-Cup® brand pods and accessories will guarantee the proper functioning and lifetime of your Keurig® brewer."

- "Any damage to or malfunction of your brewer resulting from the use of non-Keurig® pods and accessories may not be covered by this warranty or may result in a service fee if the damage or malfunction is determined to be caused by such use."

- "Nor does this warranty cover damages caused by use of non-Keurig® pods or accessories, services performed by anyone other than Keurig® or its authorized service providers, use of parts other than genuine Keurig® parts, or external causes such as abuse, misuse, inappropriate power supply, or acts of God."

4-ER-606-07 (¶ 26); *see also* 2-ER-187-88.

On appeal, Groff references the first bullet point as evidence of "[t]ying [b]ehavior," but makes no argument about how this provision violates the MMWA. Br. 34-37. Any such argument is thus waived and

abandoned.[5] *Kohler v. Inter-Tel Technologies*, 244 F.3d 1167, 1182 (9th Cir. 2001). Also on appeal, Groff does not invoke the second bullet point to argue that there is "[t]ying [b]ehavior." Br. 34-37. Any such argument is therefore also waived and abandoned.[6] *Alaska Ctr. for Environment v. U.S. Forest Serv.*, 189 F.3d 851, 858 n.4 (9th Cir. 1999).

Groff thus stakes her theory of an impermissible tying arrangement on the third bullet point provision. Br. 35 (arguing that *this* language shows that Keurig "has conditioned the [w]arranty"). Groff insists that this provision means that Keurig "will no longer honor its [w]arranty" if a consumer uses third-party replacement parts or repair. Br. 38-39.

---

[5] In any event, this provision does not condition the warranty's validity. Nor is it an *unqualified* statement that the consumer should use only Keurig-brand pods and accessories to imply that not using those products voids the warranty. *See* 16 C.F.R. § 700.10(c). Instead, the statement implies what it explicitly states: Keurig cannot guarantee that the brewer will retain its proper function and lifetime when using non-Keurig pods and accessories. Thus, this provision is not a tying arrangement. Finally, even if there were some sort of tying implication about using non-Keurig *pods and accessories* (again, there is not), that implication does not extend to the premise of Groff's claims: a tying arrangement related to non-Keurig *replacement parts* or *repair services*.

[6] In any event, for the reasons expressed in this section, this provision limiting the scope of the warranty's guarantee to exclude damages from non-Keurig sources is not a tying arrangement.

Groff's argument is "flatly contradicted by the text of the warranty." *Castiel v. Dyson, Inc.*, 717 F. Supp. 3d 698, 701 (N.D. Ill. 2024). This provision makes explicit what is implied by the warranty's limited guarantee: Keurig's warranty as to materials and workmanship defects does not cover damages caused by or resulting from non-Keurig sources, including third-party replacement parts and repairs. These types of "[w]hat's not covered" provisions "simply set forth issues that are excluded from coverage under the warranty; they do not describe conditions affecting the validity of the warranty." *Id.* This provision, clarifying that Keurig's warranty does not guarantee against damages caused by non-Keurig sources, is not a tying arrangement that could violate the MMWA. *See, e.g.*, *id.*; 3-ER-253 (no tying violation when a warranty "excludes coverage" of "installation, set-up, or repairs attempted by anyone other than a [manufacturer] authorized service center" because "[t]he warranty is not voided in the event that unauthorized repairs or services are performed"). Instead, the MMWA permits these "[e]xceptions and exclusions from the terms of the warranty." 15 U.S.C. § 2302(a)(6); *see also id.* § 2302(a)(10) (warranty

51

may exclude "characteristics or properties of the [warranted] products"); 16 C.F.R. § 701.3(a)(2) (same).

Groff says that this provision is a tying arrangement because it identifies when "the [w]arranty will not apply." Br. 35. But that reason is why the warranty *is not* a tying arrangement. Clarifying when the warranty does not apply (*e.g.*, damages from non-Keurig sources) is not a tying arrangement because it does not condition that warranty's validity when its guarantee applies (*e.g.*, when a materials or workmanship defect occurs). *See Castiel*, 717 F. Supp. 3d at 701.

The FTC has explained this point. The MMWA's tying prohibition "does not preclude a warrantor from expressly excluding liability for defects or damage caused by 'unauthorized'"—that is, third-party— "articles or service." 16 C.F.R. § 700.10(c). Thus, Keurig's warranty provisions that "disclai[m] liability for [damages] caused by" non-Keurig sources "are in full compliance with the regulation." *Corn v. Target Corp.*, 2023 WL 3389027, *6 (N.D. Ill. May 11, 2023).

All told, no provision in Keurig's warranty conditions the validity of that warranty on not using third-party replacement parts or repairs. Instead, the warranty's guarantee against materials and workmanship

52

defects remains intact even if a consumer uses third-party replacement parts and repair. Keurig simply does not guarantee to cover damages caused by non-Keurig sources, including third-party replacement parts and repair. Keurig's warranty has no tying arrangement that could violate the MMWA.

### B. Groff misreads the warranty to try to argue an impermissible tying arrangement.

Focusing solely on the third bullet point provision identified above, Groff contends that there is a tying arrangement because she misreads this provision's plain language. Br. 35-36. Referring to this provision, which falls under the heading "WHAT IS NOT COVERED BY THE LIMITED WARRANTY?", Groff argues that Keurig's warranty excludes *the actual* "services performed by anyone other than Keurig® or its authorized service providers, [or] use of parts other the genuine Keurig® parts," and not the "*damages caused by*" those third-party products or services. 2-ER-187-88 (emphasis added); *see* Br. 35-36.

The Court should reject this misreading. The plain language of this provision excludes *damages caused by* third-party products and services, not the third-party replacement parts and repairs *themselves*. The sentence begins "Nor does this warranty cover damages caused by . . ."

53

and then lists a series of non-Keurig causes of damages, including third-party pods and accessories, third-party services, third-party replacement parts, and other non-Keurig sources like acts of God. Under the series-qualifier canon, the phrase "damages caused by" modifies all items in the following series, including the items of third-party products and services. *See United States v. Lucero*, 989 F.3d 1088, 1093 n.3 (9th Cir. 2021) (explaining the series-qualifier canon). Thus, contrary to Groff's view, this provision excludes damages caused by third-party replacement parts and repairs, not third-party replacement parts and repairs themselves.

Groff's only argument for why the series-qualifier canon does not apply is because, she says, this provision is ambiguous. Br. 35-36. But language "is not ambiguous merely because the parties disagree on its interpretation." *Pacific Gas & elec. Co. v. F.E.R.C.*, 746 F.2d 1383, 1387 (9th Cir. 1984). Other than mere say-so, Groff does not explain why it is reasonable to read this provision without understanding "damages caused by" to modify the entire list. In fact, by removing "damages caused by" from applying to the entire list, Groff reads this provision to say: "Nor does this warranty cover . . . external causes such as abuse, misuse, inappropriate power supply, or acts of God." 2-ER-182. This

54

reading is nonsensical without the series-qualifier cannon. Groff's reading that "damages caused by" does not apply to the entire list is unreasonable and cannot establish ambiguity. *See Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1210 (9th Cir. 1999).

Even if this provision were ambiguous, Groff's reading cannot carry the day. "[A]mbiguously worded contracts should not be interpreted to render them illegal if a legal construction is plausible." *United States v. Univ. of S. California*, 217 F.3d 1141, 1145 (9th Cir. 2000). Because the MMWA permits the warranty to exclude *damages caused by* third-party replacement parts and repair, and this provision can be reasonably read to mean just that, Groff cannot use ambiguity to interpret the warranty in a different way that supposedly violates the MMWA. *See id.*

Ultimately, the targeted warranty provision simply excludes coverage for damages caused by third-party products and services, including replacement parts and repair, from the scope of the guarantee against materials and workmanship defects. Groff's unreasonable, alternative interpretation does not change that plain language. Keurig's warranty has no tying arrangement.

55

### C.    The warranty has no impermissible tying arrangement even under Groff's misreading.

Groff's reading of this provision, even if correct, does not state an MMWA violation for two reasons.  First, even under Groff's reading, this provision *is still not a tying arrangement*.  Accepting Groff's reading just means that this provision limits the scope of Keurig's warranty; it still does not condition the validity of the warranty.  *See Castiel*, 717 F. Supp. 3d at 701.  No matter whether this provision excludes use of third-party products and services itself, or just excludes coverage for damages caused by third-party replacement products and services, no reading transforms this provision into a tying arrangement.  *See id.*

Second, the MMWA permits this provision even if Groff correctly characterizes it as excluding the use of third-party replacement parts and repair from the warranty's scope.  Contrary to Groff's view, the MMWA does not require Keurig to cover and pay for third-party products and services.

Keurig can extend a warranty guarantee that "relates [only] to the nature of the material or workmanship and affirms or promises that such material or workmanship is defect free."  23 U.S.C. § 2301(6)(A).  And Keurig can "elec[t]" to repair, replace, or refund if there is a materials or

56

workmanship defect. *Id.* § 2301(10). To that end, Keurig's warranty provides that it will elect to provide a repair or replacement in the event of a materials or workmanship defect. 2-ER-187.

When Keurig elects to provide a repair, Keurig is within its rights under the MMWA to clarify that it will not pay just anyone—including third parties—who attempts repair. Keurig's warranty can "includ[e] the identification of any person or class of persons authorized to perform the obligations set forth in the warranty," such as who will perform the warranted repair. *Id.* § 2302(a)(7); *see also* 16 C.F.R. § 701.3(a)(5). Even if Groff correctly reads this warranty provision to mean that Keurig excludes third-party repair services from the warranty, that type of provision is permitted under the MMWA. *See id.* In fact, the MMWA prohibits Groff's attempt to hold Keurig liable for refusing to cover third-party repair. *See* 15 U.S.C. § 2307 ("[n]othing in this chapter shall be construed to prevent any warrantor from designating representatives to perform duties under the written . . . warranty").

Similarly, when Keurig elects to provide a replacement, Keurig need not pay for just any product—including third-party replacement parts—to serve as that replacement. Keurig only needs to provide "a

new" product "identical or reasonably equivalent" to the warranted product, not a third-party product. 15 U.S.C. § 2301(11). Even if Groff correctly reads this warranty provision to mean that Keurig excludes third-party replacement parts from the warranty, nothing in the MMWA requires Keurig to supply Groff with, or reimburse Groff for, third-party products.

In short, Groff's misreading of this provision does not transform it into a tying arrangement. And even if Groff correctly reads this provision to exclude third-party replacement parts and repair from the warranty (and not just damages caused by those non-Keurig sources), the MMWA permits that type of warranty provision. Because the MMWA does not require Keurig to pay for third-party products or services, Groff's misreading cannot establish a violation of the MMWA's tying prohibition.

### D. Groff failed to plead facts that reasonable consumers believe using third-party replacement parts or repair voids the warranty.

Groff also argues that, even if the warranty is not *actually* voided on use of third-party replacement parts or repair under its terms, the impermissible tying condition arises from reasonable consumers being

misled into *believing* that to be the case. Br. 7, 23, 36-37. This argument also fails to support Groff's theory of an MMWA violation.

On appeal, Groff argues that "consumers routinely understood the [w]arranty language to exclude the use of third-party repairs and parts." Br. 36. As explained in Argument § II.C, excluding third-party products and services from the warranty's guarantee is not a tying condition and does not otherwise violate the MMWA. Even if reasonable consumers believed that Keurig's warranty does not cover third-party replacement parts or repair itself, that belief is not tantamount to an MMWA violation. Moreover, as explained in Argument § II.B, this is an unreasonable interpretation of the warranty and MMWA liability cannot be based on unreasonable interpretations. *See* 16 C.F.R. § 700.10(c). This appellate argument cannot establish an MMWA violation.

Groff's pleadings alleged a different argument. Rather than focusing on the warranty's scope, Groff instead alleged that "the common understanding among consumers is that . . . third-party repai[r] *will void* the [w]arranty." 4-ER-607 (¶ 27) (emphasis added). As addressed in Argument § II.A, this supposed view is unreasonable given that the warranty has no void clause and does not condition its validity on not

59

using third-party replacement parts and repair. Again, MMWA liability cannot be based on an unreasonable interpretation of the warranty. *See* 16 C.F.R. § 700.10(c). These allegations cannot establish an MMWA violation.

Nor does Groff support her conclusory assertion about reasonable consumers' "routin[e]" belief by citing to third-party websites that claim consumer repair will void the Keurig warranty. Br. 36; *see also* Br. 7-8; 4-ER-607-08 (¶¶ 28-32). This handful of web articles is not evidence of a reasonable consumer's interpretation of Keurig's warranty. Nor do these articles explain their view that a warranty might be voided based on the issue in this case: the warranty's language found in Groff's warranty. To that end, Groff's warranty was published in July 2021. *See* 2-ER-187. None of Groff's cited webpages relate to Groff's warranty given that these web articles either (1) were created before—some more than a decade— her warranty was published ("Coffee Grump," "Lucky Belly," and "Hunker"), (2) discuss and display a purported Keurig warranty with language different from Groff's warranty ("My Virtual Coffee House"), or (3) have no date or textual reference to correlate to Groff's particular

warranty ("Fixing the K").[7]  These web articles cannot support Groff's conclusory assertion about reasonable consumer belief about the warranty underlying her claims.[8]

### E.  The Court should affirm on this alternative ground.

Groff's UCL claims all rely on an alleged violation of the MMWA's tying prohibition.  But Keurig's warranty does not have a void clause or otherwise condition its validity on a consumer not using third-party products or services.  Groff's contrary interpretation of the warranty's plain language is unreasonable and does not establish a violation of the MMWA's tying prohibition.  Groff thus failed to plead the MMWA

---

[7]  If the Court even considers these cherry-picked webpages in evaluating whether Groff stated an MMWA violation, Keurig moves the Court to take judicial notice of the content of these webpages that Groff linked in her second amended complaint and opening brief.  *See, e.g.*, *National Conference of Pers. Mangers, Inc. v. Brown*, 599 F. App'x 275, 276 (9th Cir. 2015).  If the Court considers Groff's characterizations of these webpages, it can also consider their substance to determine whether Groff stated a claim.  *Knievel v. ESPN*, 393 F.3d 1068, 1076-77 (9th Cir. 2005).

[8]  For similar reasons, Groff cannot rely on supposed conversations with Keurig representatives that predate her warranty.  Such an alleged conversation, posted to Twitter in 2018, is unrelated to the warranty underlying this litigation published in 2021.  *See* 4-ER-608-09 (¶ 33 & n.17).  In any event, this alleged interaction relates to "dismantl[ing]" a brewer, not third-party repair.  *Id.*

61

violation underlying her UCL claims. The Court should affirm the dismissal of Groff's UCL claims on this alternative basis.

## III. The absolute bar safe harbor precludes Groff's UCL claims.

Another alternative ground supports affirming the district court's dismissal: the UCL's absolute bar safe harbor. *See Livid Holdings*, 416 F.3d at 950. "There are limits on" when a plaintiff can maintain a UCL claim. *Chabner v. United of Omaha Life Ins.*, 225 F.3d 1042, 1048 (9th Cir. 2000). Under the UCL's absolute bar safe harbor, "a plaintiff [cannot] plead around an absolute bar to relief simply by recasting the cause of action as one for unfair competition." *Id.* To "forestall" a UCL claim, "another [statute] must actually bar the action." *Id.* Under this "safe harbor," "[i]f the Legislature has . . . considered a situation and concluded no action should lie, courts may not override that determination." *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1164 (9th Cir. 2012).

Groff's UCL claims require a violation of the MMWA's tying prohibition. *See* Br. 10-11 & n.5, 19, 34-41. If Congress considered and rejected private enforcement of that MMWA provision in the circumstances presented by Groff's lawsuit, then the absolute bar

prevents Groff from using a UCL claim to circumvent that legislative decision. *See Davis*, 691 F.3d at 1164.

## A. Congress expressly considered and limited private enforcement of the MMWA's substantive provisions.

The MMWA creates requirements for written warranties. *See* 15 U.S.C. § 2301, *et seq.* Congress gave the FTC the power to establish "the extent" of such requirements, to "prescribe" additional requirements, to create exceptions to those requirements, and craft warranty provisions that satisfy the law. *See, e.g.*, *id.* § 2302(a), (b)(1)(A), (c), (d). The FTC has taken on that power, promulgating dozens of rules under the MMWA. *See* 16 C.F.R. §§ 700.1 *et seq.*, 701.1 *et seq.*, 702.1 *et seq.*, 703.1 *et seq.* And Congress made the Attorney General and the FTC the main enforcers of the technical requirements of the MMWA. *See* 15 U.S.C. § 2310(c)(1).

Within this legislative context, Congress created a private action under the MMWA that allows private enforcement of the MMWA if statutory standing is satisfied. *Id.* § 2310(d)(1). That statutory standing requirement establishes whether a particular consumer falls "within the class of plaintiffs whom Congress has authorized to sue" under the MMWA. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 (2014). MMWA statutory standing is therefore a type of

absolute bar under the UCL's safe harbor. *See, e.g.*, *Asencio v. Miller Brewing Co.*, 2006 WL 8446875, *1, *4 (C.D. Cal. Aug. 11, 2006) (no UCL claim based on violations of Fair Employment and Housing Act because the plaintiff failed to obtain a prerequisite right-to-sue letter under that Act); *In re Vaccine Cases*, 134 Cal. App. 4th 438, 457-59 (2005) (no UCL claim based on violation of Safe Drinking Water and Toxic Enforcement Act because plaintiffs failed to serve prerequisite notices under that Act).

Groff argues that statutory standing cannot be a type of absolute bar because it is not a procedural requirement to suit. Br. 31. But Groff does not explain why statutory standing is not procedural. *See United States v. Real Prop.*, 787 F.3d 968, 973-74 (9th Cir. 2015) (some courts characterize "jurisdictional procedural requirements" as "statutory standing"). In any event, a legislative "conclu[sion that] no action should lie" can come in the form of statutory standing, no matter whether characterized as a procedural or substantive prerequisite to suit. *See Davis*, 691 F.3d at 1164; *see also City of Sausalito v. O'Neill*, 386 F.3d 1186, 1199 (9th Cir. 2004) (a statutory standing prerequisite establishes "whether a particular plaintiff has been granted a right to sue"). The district court agreed, holding that the MMWA's statutory standing

64

requirement shows that "Congress undoubtedly sought to limit the class of plaintiffs who could sue for a violation of the MMWA." 4-ER-636. To that end, Congress's creation of a private right of action with a statutory standing requirement in the MMWA distinguishes Groff's cases cited on brief when a legislature was silent by not creating a private right of action in the statutory scheme on which the UCL claim relies. Br. 30.

Groff also argues that MMWA statutory standing is not an absolute bar because she did not file suit directly under the MMWA, and the MMWA's statutory standing requirement does not mean that "Congress has concluded that a plaintiff is foreclosed from bringing any other cause of action concerning a violation of the MMWA." Br. 28-29. To the contrary, the statutory scheme shows that Congress explicitly "contemplated only administrative enforcement" of the MMWA's substantive requirements *unless* a private individual could satisfy the statutory standing prerequisite. *Zhang v. Superior Court*, 57 Cal. 4th 364, 384 (2013) (when the legislature "contemplated only administrative enforcement" of California's Unfair Insurance Practices Act, "a litigant may not rely on the proscriptions of [that Act] as a basis for a UCL claim"). Given that Congress decided that there should not be private

65

enforcement *directly* under the MMWA without satisfying MMWA's statutory standing requirement, that decision applies equally to private enforcement of the MMWA *indirectly* through another claim. *See id.*; *see also May v. United States*, 691 F. App'x 334, 336 (9th Cir. 2017) (courts avoid construing statutes from being "not coherent and consistent with the overall statutory scheme").

### B. MMWA statutory standing requires damages more than buying a product with an alleged illegal warranty.

The MMWA provides a right of action for "a consumer who is damaged by the failure . . . to comply with [the MMWA]." 15 U.S.C. § 2310(d)(1). As the district court observed, "[c]ourts have interpreted the language 'damaged by' to require that a consumer show that she suffered *actual damage* resulting from the MMWA violation." 4-ER-634-35 (collecting cases). Groff failed to plead facts of having satisfied this actual damage requirement for two reasons.

### 1. A price premium theory of damages is not actual damages under the MMWA.

Based on the MMWA's plain language, "[i]t is readily apparent that by restricting the class of MMWA plaintiffs to consumers 'damaged' by a defendant's MMWA violation, Congress did not intend to afford a right of action to a consumer who merely paid for a warranty that was technically

illegal under the statute." *McGarvey v. Penske Auto. Grp., Inc.*, 639 F. Supp. 2d 450, 456 (D.N.J. 2009). By authorizing suit only by "a consumer who is damaged," the MMWA "stands in contrast with federal statutes that provide a private right of action based upon a defendant's unlawful conduct, irrespective of whether such unlawful conduct has caused the plaintiff to incur actual damages." *Id.* at 456.

"Th[is] holdin[g] [is] consistent with the MMWA's legislative history." *Moroz v. Alexico Corp.*, 2008 WL 109090, *5 (E.D. Pa. Jan. 8, 2008). Congress originally considered giving a private action to, simply, "[t]he holder of a valid warranty." 2-ER-204 (§ 14). Yet after Congressional hearings on the bill that questioned the broadness of this right of action, the current "damage" language was added to legislation that would eventually become the MMWA. *See, e.g.*, 3-ER-308, 3-ER-417 (§ 110(e)). Congress thus intended the "damage" requirement to be actual damages beyond merely buying a product (and thus becoming a holder of a warranty) associated with a technical violation of the MMWA. *See, e.g.*, *Moroz*, 2008 WL 109090, at *5 (using text and legislative history, as well as collecting cases, to hold that the MMWA did not give consumers a right to sue over the MMWA's technical requirements).

"To bring a suit, then, a plaintiff must plausibly allege [s]he has sustained actual damage, proximately caused by the defendant's alleged failures." *Sasso v. Tesla, Inc.*, 584 F. Supp. 3d 60, 77 (E.D.N.C. 2022). In fact, "[t]he majority of the federal courts that have addressed the matter . . . have held that a plaintiff is required to show that [s]he has sustained *actual damage*"—that is, something more than the mere purchase of a product—"proximately caused by the defendant's failure to comply with the MMWA, in order to state an actionable MMWA claim." *McGarvey*, 639 F. Supp. 2d at 456 (collecting cases)

Groff only alleges price premium damages. *See* 4-ER-612 (¶¶ 48-49). This theory of damages is just an attempted end-run around congressional intent. Price premium damages allege harm only because the consumer supposedly "paid more for a product than she otherwise would have" absent the alleged misrepresentation. 4-ER-636. A price premium theory of damage is indistinguishable from the circumstances Congress rejected as allowing a private MMWA claim to enforce the MMWA's technical requirements. *See McGarvey*, 639 F. Supp. 2d at 456 ("Congress did not intend to afford a right of action to a consumer who merely paid for a warranty that was technically illegal under the

68

statute."); *Ghaznavi v. De Longhi Am., Inc.*, 2023 WL 4931610, *6 (S.D.N.Y. Aug. 2, 2023) (expressing "reservations about extending" the price premium theory to the MMWA context). Groff's alleged price premium theory of damages cannot satisfy MMWA statutory standing.

In response, Groff argues that all these cases are wrongly decided, and instead *Schaer v. Newell Brands Inc.*, 2023 WL 2033765 (D. Mass. Feb. 16, 2023), establishes that she has standing under her price premium theory. Br. 32-33. *Schaer* held that price premium damages constitute an injury in fact for Article III standing. 2023 WL 2033765, at *1. *Schaer* is irrelevant, however, because Groff fails to satisfy *statutory* standing, not *constitutional* standing. Groff wrongly conflates these two doctrines that have their own separate analyses. *See Minden Pictures, Inc. v. John Wiley & Sons, Inc.*, 795 F.3d 997, 1001 (9th Cir. 2015); *Stan Lee Media Inc. v. Lee*, 2012 WL 4048871, *3 (C.D. Cal. Aug. 23, 2012).

Finally, Groff contends that, under the MMWA, state law defines the measure of damages, and California law defines "actual damages" to include price premium damages. Br. 32-33. Groff wrongly conflates statutory standing and measure of damages. "Whether [particular] damages to [a party] is a proper measure of damages to [that party] is a

separate question from whether [a party] has standing to assert claims that the defendant harmed [a party]." *Smith v. Arthur Andersen LLP*, 421 F.3d 989, 1005 (9th Cir. 2005); *see also, e.g.*, *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 637 F. App'x 981, 985 (9th Cir. 2016) (cases about "standing rather than the measure of damages" are "distinguishable"). While state law might determine the measure of damages for a breach of warranty claim (which is not the type of MMWA violation Groff alleges), state law cannot override congressional intent that merely buying a product with an allegedly illegal warranty does not satisfy MMWA statutory standing to enforce the MMWA's technical requirements. *See* U.S. Const. art. VI, cl. 2; *Alaska Airlines, Inc. v. City of Long Beach*, 951 F.2d 977, 982 (9th Cir. 1991).

### 2. Groff failed to plead facts of a price premium.[9]

Even if a price premium theory of damages qualifies as actual damages for MMWA statutory standing, Groff failed to adequately plead a price premium caused by her allegedly illegal warranty. Groff alleged only that she "suffered an economic injury" because her brewer had a

---

[9] This argument means that Groff failed to establish *both* MMWA statutory standing to avoid the absolute bar safe harbor, *and* an economic injury to state a UCL claim. 2-ER-53-54, 56-57; 3-ER-573.

"diminished . . . value" and she "[over]paid . . . for the" brewer. 4-ER-612 (¶¶ 48-49). Standing alone, these "economic loss" allegations are "not credible" because they are "conclusory and unsupported by any facts." *Cahen v. Toyota Motor Corp.*, 717 F. App'x 720, 723 (9th Cir. 2017) (failure to plead an "economic loss" based on conclusory allegations of "overpaying" and that the product is "worth less"); *see also, e.g., Naimi v. Starbucks Corp.*, 798 F. App'x 67, 70 (9th Cir. 2019) (price premium allegations failed to "adequately allege a cognizable injury" because no facts "regarding the price premium" were alleged).

On appeal, Groff argues that the diminished value was *caused by* her inability to use third-party replacement parts of repair without voiding her warranty. Br. 26-28. This argument addresses causation and does not save Groff's inadequately pleaded facts of damages.

In any event, Groff's argument underscores that lack of adequately pleaded facts establishing a causative link between the allegedly illegal warranty and the conclusorily-alleged price premium. Groff's one-year warranty has expired. 2-ER-187; 4-ER-612 (¶ 44). During that one-year warranty period Groff never: (1) used a third-party replacement part or repair during that one-year warranty period, (2) sought any repair or

replacement under Keurig's warranty, or (3) was told by Keurig that her warranty rights were void and unenforceable during the warranty period. *See* 4-ER-612-13 (¶¶ 44-50). Groff thus failed to plead *not only* facts of a price premium, *but also* that the allegedly illegal nature of Keurig's warranty caused any purported loss in her brewer's value.

## C. The Court should affirm on this alternative ground.

In enacting the MMWA, Congress decided that a consumer could enforce the MMWA's substantive requirements only if the consumer satisfies MMWA statutory standing. MMWA statutory standing is thus an absolute bar that Groff cannot use the UCL to plead around. In turn, Groff's alleged price premium damages cannot satisfy MMWA statutory standing because it is indistinguishable from simply buying a product with an allegedly illegal warranty. Groff therefore falls into the class of individuals who Congress determined cannot enforce the MMWA. In turn, the absolute bar safe harbor prevents Groff from basing her UCL claims on alleged violations of the MMWA. The Court should affirm the dismissal of Groff's UCL claims on this alternative basis.

72

## CONCLUSION

The Court should affirm the district court and award Keurig all other appropriate and just relief.

Dated: February 5, 2025          _/s/ Nicholas J. Hoffman_
                                 Nicholas J. Hoffman

                                 *Counsel for Appellee*
                                 *Keurig Green Mountain, Inc.*

## STATEMENT OF RELATED CASES

Counsel is unaware of any related case under Circuit Rule 28-2.6.


Dated:  February 5, 2025          */s/ Nicholas J. Hoffman*
                                  Nicholas J. Hoffman

                                  *Counsel for Appellee*
                                  *Keurig Green Mountain, Inc.*

## CERTIFICATE OF COMPLIANCE

I, Nicholas J. Hoffman, am the attorney for appellee Keurig Green Mountain, Inc. I certify the following statements.

1. This brief complies with the length limitations in 9th Cir. R. 32-1(a) and Fed. R. App. P. 32(a)(7) because it contains 11,907 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface and type-style requirements of Fed. R. App. P. 32(a)(5) and Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word, in 14-point size Century Schoolbook font.


Dated: February 5, 2025          */s/ DRAFT*
                                 Nicholas J. Hoffman

                                 *Counsel for Appellee*
                                 *Keurig Green Mountain, Inc.*

No. 24-5905

---

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

---

CHRISTINA GROFF,
PLAINTIFF/APPELLANT,

v.

KEURIG GREEN MOUNTAIN, INC.,
DEFENDANT/APPELLEE

---

On Appeal from the
United States District Court for the Central District of California
The Hon. Sunshine S. Sykes, District Judge
No. 5:23-cv-01492-SSS-SP

---

**APPELLANT CHRISTINA GROFF'S REPLY BRIEF**

---

Dated: March 28, 2025

WADE KILPELA SLADE LLP
Gillian L. Wade
Sara D. Avila
Marc A. Castaneda
Kristy Graham
2450 Colorado Ave., Suite 100E
Santa Monica, CA 90404
Telephone: (310) 667-7273

*Attorneys for Appellant Christina Groff*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ....................................................................... iv

INTRODUCTION .....................................................................................1

ARGUMENT .............................................................................................4

    I.    Plaintiff's SAC Does Not Sound in Fraud ............................................4

        A.    Plaintiff Adequately Pleads Each Element of Her UCL
            Claims ..........................................................................................4

            1.    Plaintiff alleges a business practice that violates the UCL
                under the "unlawful" and "unfair" prongs........................5

            2.    Plaintiff meets the UCL's causation requirement ...........8

            3.    Plaintiff alleges an economic injury ...............................11

        B.    The Operative Complaint is Proper, Stands on its Own, and
            Does Not Omit or Contradict Prior Factual Allegations ..........13

    II.    Whether Keurig's Warranty Violates the MMWA Should Be
        Determined at Trial. Even if it Were Considered Here, Keurig's
        Warranty Amounts to Unlawful Tying in Support of Plaintiff's
        "Unlawful" and "Unfair" UCL Claims ..............................................15

    III.    Defendant Misapplies the UCL's Safe Harbor Doctrine ....................21

    IV.    The District Court Abused its Discretion in Granting Keurig's Motion
        to Dismiss *With* Prejudice ................................................................26

        A.    Plaintiff Did Not Waive Her Right to Seek Leave to
            Amend .......................................................................................27

        B.    The District Court Abused its Discretion in Denying Leave to
            Amend Because Amendment Was Not Futile ..........................29

ii

CONCLUSION ................................................................................31

CERTIFICATE OF COMPLIANCE FOR BRIEFS .............................................32

CERTIFICATE OF SERVICE ................................................................33

# TABLE OF AUTHORITIES

**Cases**                                                                          **Page(s)**

*Abers v. Rounsavell*
    116 Cal. Rptr. 3d 860 (Cal. Ct. App. 2010)...................................................20

*Altvater v. Breckenridge*
    345 P.2d 358 (Cal. Ct. App. 1959) ................................................................25

*Asencio v. Miller Brewing Co*
    2006 U.S. Dist. LEXIS 103716 (C.D. Cal. Aug. 11, 2006) .........................22

*Atchole v. Silver Spring Imps., Inc.*
    379 F. Supp. 2d 797 (D. Md. 2005)...............................................................26

*Aviara Residence Club Owners Ass'n v. Sec. Nat'l Ins. Co.*
    2020 U.S. Dist. LEXIS 193193 (S.D. Cal. June 23, 2020) ..........................15

*Backus v. General Mills*
    122 F. Supp. 3d 909 (N.D. Cal. 2015)...........................................................6

*Barrack v. Kolea*
    651 A.2d 149 (Pa. Super. Ct. 1994) .............................................................24

*Bracht v. Deckers Outdoor Corp.*
    2012 U.S. Dist. LEXIS 199720 (C.D. Cal. Oct. 2, 2012) ............................30

*Burton Way Hotels, Ltd. v. Four Seasons Hotels Ltd.*
    663 Fed. Appx. 567 (9th Cir. 2016) .............................................................15

*Cahen v. Toyota Motor Corp.*
    717 F. App'x 720 (9th Cir. 2017) .................................................................12

*Castiel v. Dyson, Inc.*
    717 F. Supp. 3d 698 (N.D. Ill. 2024)............................................................19

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*
    973 P.2d 527 (Cal. 1999)....................................................................5, 8, 21

iv

*Clayworth v. Pfizer, Inc.*
  233 P.3d 1066 (Cal. 2010)...............................................................13

*Davidson v. Kimberly-Clark Corp.*
  889 F.3d 956 (9th Cir. 2018) ........................................................12

*Davis v. Combined Ins.*
  2018 LEXIS 38464 (N.D. Cal. Mar. 7, 2018) ...............................14

*Diaz v. Macy's West Stores, Inc.*
  830 Fed. Appx. 213 (9th Cir. 2020) .............................................16

*Durell v. Sharp Healthcare*
  183 Cal. App. 4th 1350 (2010) .......................................................8

*Eminence Capital, LLC v. Aspeon, Inc.*
  316 F.3d 1048 (9th Cir. 2003) ..............................................28, 29

*FAA v. Cooper*
  566 U.S. 284 (2012)......................................................................23

*Foman v. Davis*
  371 U.S. 178 (1962).......................................................................26

*Gabourel v. Luxottica of Am., Inc.*
  2024 U.S. App. LEXIS 1628 (9th Cir. Jan. 24, 2024) ..................27

*Get Oil Out! Inc. v. Exxon Corp.*
  586 F.2d 726 (9th Cir. 1978) ........................................................20

*Hinojos v. Kohl's Corp.*
  718 F.3d 1098 (9th Cir. 2013) ......................................................11

*Hiradate v. Ralphs Grocery Co.*
  2022 U.S. Dist. LEXIS 214040 (C.D. Cal. Nov. 28, 2022) ..........10

*Holley-Gallegly v. TA Operating, LLC*
  74 F.4th 997 (9th Cir. 2023) .........................................................27

v

*In re Mercury Interactive Corp. Sec. Litig.*
　　618 F.3d 988 (9th Cir. 2010) ........................................................27

*In re Tobacco II Cases*
　　207 P.3d 20 (Cal. 2009)...............................................................9

*In re Vaccine Cases*
　　36 Cal. Rptr. 3d 80 (Cal. Ct. App. 2005)....................................22

*Ingalls v. Spotify USA, Inc.*
　　2017 U.S. Dist. LEXIS 110817 (N.D. Cal. July 17, 2017) ...........21

*Intel Corp. v. Hamidi*
　　71 P.3d 296 (Cal. 2003).................................................................24

*Kearns v. Ford Motor Co.*
　　567 F.3d 1120 (9th Cir. 2009) ...............................................9, 10

*Kissel v. Code 42 Software, Inc.*
　　2016 U.S. Dist. LEXIS 184368 (C.D. Cal. Apr. 14, 2016)........8, 9

*Kroessler v. CVS Health Corporation*
　　977 F.3d 803 (9th Cir. 2020) ........................................................30

*Kwikset Corp. v. Superior Court*
　　246 P.3d 877 (Cal. 2011)..........................................................8, 11

*Matoff v. Brinker Rest. Corp.*
　　439 F. Supp. 2d 1035 (C.D. Cal. 2006)........................................21

*Maya v. Centex Corp.*
　　658 F.3d 1060 (9th Cir. 2011) ......................................................23

*McGarvey v. Penske Auto. Grp., Inc.*
　　639 F. Supp. 2d 450 (D.N.J. 2009)...............................................25

*Morey v. Vannucci*
　　75 Cal. Rptr. 2d 573 (Cal. Ct. App. 1998)...................................18

vi

*Moroz v. Alexico Corp.*
    2008 U.S. Dist. LEXIS 1166 (E.D. Pa. 2008) ................................................26

*Naimi v. Starbucks Corp.*
    798 F. App'x 67 (9th Cir. 2019) ...................................................................12

*Naranjo v. CRGTS, Inc.*
    2022 U.S. Dist. LEXIS 71915 (E.D. Wa. Apr. 19, 2022) ............................23

*Pyskaty v. Wide World of Cars, LLC*
    856 F.3d 216 (2d Cir. 2017) ...........................................................................24

*Rodriguez v. Sony Comput. Entm't Am., Ltd. Liab. Co.*
    801 F.3d 1045 (9th Cir. 2015) .......................................................................13

*Salameh v. Tarsadia Hotel*
    726 F.3d 1124 (9th Cir. 2013) .......................................................................29

*Sasso v. Tesla, Inc.*
    584 F. Supp. 3d 60 (E.D.N.C. Feb. 7, 2022) ................................................25

*Schaer v. Newell Brands Inc.*
    2023 U.S. Dist. LEXIS 28028 (D. Mass. Feb. 15, 2023) ..............................24

*Smart v. NCAA*
    2023 U.S. Dist. LEXIS 130570 (E.D. Cal. July 27, 2023) ..............................8

*Stross v. Zillow, Inc.*
    2023 U.S. App. LEXIS 32505 (9th Cir. Dec. 8, 2023) ..................................30

*Svenson v. Google, Inc.*,
    2015 U.S. Dist. LEXIS 43902 (N.D. Cal. April 1, 2015) ........................9, 13

*Telesaurus VPC, LLC v. Power*
    623 F.3d 998 (9th Cir. 2010) .........................................................................30

*Thrifty-Tel, Inc. v. Bezenek*
    46 Cal. App. 4th 1559 (1996) ........................................................................25

*Velasquez v. Chase Home Fin. LLC*
    2011 U.S. Dist. LEXIS 4097 (N.D. Cal. Jan. 10, 2011)................................30

*Waller v. Hewlett-Packard Co.*
    2011 U.S. Dist. LEXIS 145276 (S.D. Cal. Dec. 14, 2011) ..........................10

*Yamada v. Nobel Biocare Holding AG*
    825 F.3d 536 (9th Cir. 2016) ......................................................................28

*Zhang v. Superior Court*
    304 P.3d 163 (Cal. 2013) ............................................................................22

**Statutes**

15 U.S.C. § 2302(a)(6)................................................................................20

15 U.S.C. § 2302(a)(7)................................................................................20

15 U.S.C. § 2302(a)(10)..............................................................................20

15 U.S.C. § 2302(c) ..........................................................................6, 16, 21

15 U.S.C. § 2307..........................................................................................20

15 U.S.C. § 2310(10) ..........................................................................6, 20

15 U.S.C. § 2310(c)(2)..................................................................................7

15 U.S.C. § 2310(d)(1)..........................................................................22, 23

16 C.F.R. § 700.10(c)..........................................6, 7, 16, 19, 20, 21

16 C.F.R. § 701.3(a)(5) ..............................................................................20

23 U.S.C. § 2301(6)(A)..............................................................................20

Fed. R. Civ. Proc., Rule 15(a)..............................................................26, 29

## INTRODUCTION

This appeal presents a straightforward yet critical issue: Whether the District Court erred in dismissing Plaintiff's Unfair Competition Law ("UCL") claims on grounds she failed to plead reliance, despite the absence of any fraud-based allegations in the Second Amended Complaint ("SAC"). In the SAC, Plaintiff alleges Defendant's warranty unlawfully restricts the use of third-party repair services and parts in violation of the Magnuson-Moss Warranty Act's ("MMWA") express prohibition on tying arrangements. Plaintiff's Opening Brief explains how her claims rest solely on that statutory violation—not on misrepresentation or consumer confusion—because the violation itself caused her harm, and that the harm she suffered is the impairment of her property interests.  Thus, the District Court erred in treating Plaintiff's "unlawful" and "unfair" UCL claims as fraud-based to conclude Plaintiff's economic injury is only redressable if she relied on some misrepresentation made by Defendant.

In its Answering Brief, Defendant, like the District Court, seeks to recast Plaintiff's allegations as sounding in fraud, imposing a reliance requirement that does not apply. Thus, it focuses almost entirely on the concept that Plaintiff must allege her reasonable expectations about the warranty. The UCL, however, allows recovery for unlawful acts that cause economic harm when the theory is not based on deceptive practices. In particular, in cases like Plaintiff's, injured parties may

1

state a claim based on allegations that a defendant's unlawful and unfair practices caused economic harm.

Here, Defendant's unlawful and unfair tying conditions restrict Plaintiff's use of her property in ways that the MMWA is designed to prevent. This is a classic economic injury under California law, and one that does not depend on whether the consumer relied on or even read the unlawful provision. Indeed, Plaintiff alleges she purchased a coffee maker with a warranty containing illegal tying conditions, which in turn diminished the product's value because it proscribed the full and lawful use of Plaintiff's property. Under the MMWA, Plaintiff *may* elect to have her product repaired by a third party, or with third-party parts, and Defendant cannot forbid her from doing so.  It is axiomatic that a person's home value is diminished if an unlawful restrictive covenant is placed upon it—and no further inquiry as to the homeowner's reliance would be necessary to make that determination.  The same is true here: Defendant's act of placing an unlawful condition on the unfettered use of Plaintiff's property diminishes the value of that property for Plaintiff.  No further inquiry is required. Plaintiff is therefore injured *whether or not she expected* at the time of purchase that the product would not be subject to illegal tying conditions. For this reason, the District Court's dismissal of Plaintiff's SAC should be reversed.

Defendant is also wrong in arguing that the District Court appropriately dismissed Plaintiff's SAC with prejudice. The District Court's one-sentence denial did not explain why further amendment would be futile, which warrants reversal under controlling Ninth Circuit and Supreme Court precedent. The District Court's refusal to grant leave to amend deprived Plaintiff of the opportunity to test her claims on the merits.

For the foregoing reasons and as discussed more fully herein, the Court should reverse the District Court's order granting Keurig's Motion to Dismiss and remand for further proceedings.

## ARGUMENT

### I.   Plaintiff's SAC Does Not Sound in Fraud.

#### A. Plaintiff Adequately Pleads Each Element of Her UCL Claims.

Defendant misconstrues or challenges each element of Plaintiff's UCL claims, starting with the gravamen of her UCL claims—the business practice itself. Defendant contends that Plaintiff's allegations concerning Defendant's unlawful and unfair business practices are fraud-based. Def.'s Br. at 29, 33-36. Specifically, Defendant erroneously claims Plaintiff's theory is that Keurig misled consumers about their rights under the MMWA's anti-tying provisions. Def.'s Br. at 22; 1-ER-5. This argument is defied by the plain language in the SAC which contains no such allegation. Rather, the SAC asserts Defendant's restrictions on the use of third-party repair and parts constitutes "unlawful" and "unfair" business practices proscribed by the MMWA and the UCL. 4-ER-602. Plaintiff's theory is neither predicated on, nor reliant on, any fraud-based theory.

Defendant's rewriting of Plaintiff's UCL claims as rooted in fraud sets up Defendant's next, equally misguided argument relating to the causation element of Plaintiff's UCL claim. According to Defendant, Plaintiff's UCL claims fail because she does not allege that she relied on the purported misrepresentations. But because this case does not sound in fraud in the first instance, Plaintiff need not allege reliance. Indeed, outside the misrepresentation context, the UCL's relaxed

4

causation standard applies. Defendant does not argue Plaintiff failed to meet this standard.

Lastly, Defendant contends Plaintiff failed to allege an economic injury for purposes of the UCL, arguing that the only way anti-tying language can injure a purchaser is if the purchaser has expectations about the warranty. But the UCL's "unlawful" and "unfair" prongs also permit recovery where the unlawful conduct harms a plaintiff's economic interests notwithstanding any consumer expectations. This is such a case because Keurig's illegal tying practices restrict Plaintiff's use of her property and diminish the value of the product.

### 1. Plaintiff alleges a business practice that violates the UCL under the "unlawful" and "unfair" prongs.

Contrary to Defendant's assertions, Plaintiff's allegations Defendant violated the UCL's "unlawful" and "unfair" prongs are neither based on nor dependent upon misrepresentations or fraud. This is clear from the challenged conduct supporting both claims.

"Unlawful" prong claim:

Plaintiff's "unlawful" prong claim rests on Defendant's violation of the MMWA's ban on tying arrangements, not on deception. *See Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 973 P.2d 527, 539-40 (Cal. 1999) (the UCL borrows violations of other laws and makes them independently actionable). Plaintiff identified the tying language in Defendant's warranty and cited the relevant statute

and regulation. *See* 4-ER-616 (*citing* 15 U.S.C. § 2302(c) and 16 C.F.R. § 700.10). The regulation is explicit: such provisions violate the MMWA in **two**, distinct ways—because they are <u>banned</u> **and** because they are <u>deceptive</u>. *See* 16 C.F.R. § 700.10(c) ("These provisions violate the Act in two ways. First, they violate the section 102(c), 15 U.S.C. 2302(c), ban against tying arrangements. Second, such provisions are deceptive under section 110 of the Act, 15 U.S.C. 2310…."). Plaintiff's SAC, however, proceeds **solely under the first theory**—the anti-tying theory—not the deception theory that Defendant mistakenly attributes to her claims. As the regulations make clear, it is the *tying behavior* that renders the warranty provision banned under the MMWA, full stop. Concepts of misrepresentation, deception, and the reasonable consumer, therefore, do not come into play. *See e.g., Backus v. General Mills*, 122 F. Supp. 3d 909, 925-26 (N.D. Cal. 2015) ("[T]his is simply not a misrepresentation case; the allegedly unfair business conduct here was the distribution of baking mixes with trans fats.").

Ignoring Plaintiff's well-pled theory of unlawfulness—that conditioning warranty coverage on the consumer's use of warrantor's articles or services is banned by the MMWA—Defendant focuses on a phantom theory of deception that supposedly drives Plaintiff's UCL claims. On page 34 of its brief, Defendant omitted from its quotation the portion of the MMWA that support's Plaintiff's theory. The regulations make clear that the second way a warranty with tying

6

language may violate the MMWA is if it is "deceptive ***under section 110 of the Act, 15 U.S.C. 2310***, because a warrantor cannot, as a matter of law, avoid liability under a written warranty where a defect is unrelated to the use by a consumer of 'unauthorized' articles or service." 16 C.F.R. § 700.10(c) (emphasis added). Defendant deceptively uses an ellipsis (Def.'s Br. at 34) to gloss over the regulation's critical reference to this section of the MMWA, which deals with deceptive warranties. *See* 15 U.S.C. § 2310(c)(2) (defining "deceptive warranty"). Though Defendant points to this language, *Plaintiff does not cite Section 2310 anywhere in her complaint*. Although deception *may be* the crux of a deceptive warranty claim under Section 2310, Plaintiff makes no such claim in her SAC.

<u>"Unfair" prong claim:</u>

Defendant and the lower court lump together Plaintiff's UCL claims and reason that both her "unfair" and "unlawful" prong claim are rooted in misrepresentations. As discussed, this is error as to Plaintiff's "unlawful" prong. The same is true when it comes to Plaintiff's "unfair" prong claim. Defendant sold a consumer product with a warranty that is banned by the MMWA's anti-tying provisions and, therefore, engaged in unlawful conduct. Plaintiff's injury does not flow from any misrepresentations; rather, her property interest was impaired by those tying conditions. Because Plaintiff adequately alleged an "unlawful" prong claim, she has also alleged an "unfair" prong claim. *See, e.g., Smart v. NCAA,* 2023

7

U.S. Dist. LEXIS 130570, at *26 (E.D. Cal. July 27, 2023) (having "adequately pled his UCL claim under the unlawful prong[,] . . . Plaintiff Hacker has also adequately pled his UCL claim under the unfair prong . . . .") (citing *Cel-Tech*, 973 P.2d at 544).

### 2. Plaintiff meets the UCL's causation requirement.

Defendant's causation argument also falters because it flows directly from a misrepresentation theory that Plaintiff does not plead. To satisfy the UCL's causation requirement, Plaintiff must allege she lost money or property "as a result of" the unfair competition. *See Kwikset Corp. v. Superior Court*, 246 P.3d 877, 884 (Cal. 2011). It is the "as a result of" language in the UCL that imposes a reliance requirement where, unlike here, the predicate unlawfulness is fraud through misrepresentation and deception. *See Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1363 (2010); *Kwikset*, 246 P.3d at 888 n. 9. By failing to distinguish analogous UCL cases where reliance was *not* required and citing inapposite authority, Defendant erroneously insists the reliance requirement applies and does not entertain any other possibility. As a result, Defendant does not challenge Plaintiff's satisfaction of the relaxed causation standard that applies in cases like this one, outside the context of fraud and misrepresentation. *See Kissel*, 2016 U.S. Dist. LEXIS 184368, at *2.

8

Ample authority supports Plaintiff's UCL theory. For purposes of an "unlawful" or "unfair" prong claim, an allegation of reliance is required only where the claim is based upon allegations of misrepresentation and deception. *See Svenson v. Google, Inc.*, 2015 U.S. Dist. LEXIS 43902, *33 (N.D. Cal. April 1, 2015) (citing *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) and *Durell*, 183 Cal. App. 4th at 1363). But "[t]here are doubtless many types of unfair business practices in which the concept of reliance... has no application." *In re Tobacco II Cases,* 207 P.3d 20, 39 n. 17 (Cal. 2009). This is one such case.

Plaintiff's UCL claims are squarely in line with the UCL claims in the cases Plaintiff cites in her opening brief, where courts found there to be no reliance element—cases where, in the words of Defendant, "a defendant allegedly commits unlawful conduct independent of any misrepresentations to consumers" (Def.'s Br. at 28). *See Svenson*, 2015 U.S. Dist. LEXIS 43902, at *30-33 (no reliance requirement for UCL claims based on violations of the California Online Privacy Protection Act); *Kissel v. Code 42 Software, Inc.,* 2016 U.S. Dist. LEXIS 184368, at *21-23 (C.D. Cal. Apr. 14, 2016) (same for UCL claims based on violations of California's Automatic Renewal Law). As in these cases, Plaintiff alleges a straightforward statutory violation: Defendant's violation of the MMWA's ban of tying conditions in warranties, which does not require allegations of deception or

9

reliance. It is Defendant's misconduct—including the warranty's tying provision—that curtailed Plaintiff's right to use her coffee maker as she sees fit.

Each line of cases Defendant cites is distinguishable because they are premised on fraud and deception. Defendant's key authorities are false advertising cases—Plaintiff's is not. *See Kearns*, 567 F.3d at 1124-26 (allegations involved "misrepresentations"); *Hiradate v. Ralphs Grocery Co.*, 2022 U.S. Dist. LEXIS 214040, at *6 (C.D. Cal. Nov. 28, 2022) ("Plaintiff thus sufficiently alleged that he relied on Defendants' misrepresentations, which caused Plaintiff's harm."); *Waller v. Hewlett-Packard Co.*, 2011 U.S. Dist. LEXIS 145276, at *11 (S.D. Cal. Dec. 14, 2011) (UCL claim arising from the defendant's misrepresentations about product's functioning).

Relatedly, Plaintiff also does not allege that consumers purchase their coffee makers *because* they misunderstand their rights under Keurig's warranty. *See* Def.'s Br. at 32-33. Defendant's unlawful tying practices in violation of the MMWA do not hinge on any consumer having been tricked into making purchases. Rather, Keurig's illegal tying practices represent ongoing harm to the use—and thus value—of the product after the purchase is made.

Defendant also makes a secondary, somewhat muddled, causation argument. Specifically, Defendants argues Plaintiff failed to plead causation because she did not allege she sought or used third-party replacement parts or repair and was never

10

told by Keurig that her warranty rights were void. *See* Def.'s Br. at 70-71. But Plaintiff need not allege any of that to sufficiently plead the *impairment* on the use and thus the value of her coffee maker and the requisite causal link between that injury and Defendant's unlawful and unfair tying conditions in its warranty.

### 3. Plaintiff alleges an economic injury.

Lastly, Plaintiff has satisfied the UCL's economic injury requirement. Defendant's argument presumes only one kind of economic injury: overpayment based on Plaintiff's expectations about the warranty coverage. By ignoring Plaintiff's allegation that Keurig's illegal tying practices directly impair her property interests by restricting her use of the product, Defendant assumes Plaintiff must allege she paid for a warranty that she affirmatively expected would not contain illegal tying provisions and thus was *deceived* into paying too much. Defendant's circular reasoning limits the broad reach of the UCL to fraud-based claims.

"There are innumerable ways in which economic injury from unfair competition may be shown." *Kwikset*, 246 P.3d at 885; *Hinojos v. Kohl's Corp.,* 718 F.3d 1098, 1104 (9th Cir. 2013) (same). One of those ways is for a plaintiff to "have a present or future property interest diminished." *Kwikset*, 246 P.3d at 885-86. Plaintiff alleges this precise form of economic injury. Plaintiff paid for a product covered by a lawful warranty and received something worth less: a product

11

encumbered by a warranty with banned tying provisions. The very fact that the product warranty unlawfully limits coverage directly diminishes the coffee maker's value.

Defendant does not challenge the sufficiency of Plaintiff's allegations as to Plaintiff's diminished property interest. Indeed, Defendant totally ignores the cases Plaintiff cites in support. Defendant's cases concerning economic injury (Def.'s Br. at 70-71), only one of which involves the UCL and California law, have no bearing on the form of economic injury identified in Plaintiff's Opening Brief because they concern injury-by-deception. *See Cahen v. Toyota Motor Corp.,* 717 F. App'x 720, 723 (9th Cir. 2017) ("plaintiffs allege that they suffered an injury because they either would not have purchased their vehicles or would have paid less for them had they known about these hacking risks."); *Naimi v. Starbucks Corp.*, 798 F. App'x 67, 70 (9th Cir. 2019) (insufficient allegations of a cognizable injury under the New York General Business Law).

Instead, Defendant's cases largely concern overpayment under a price premium theory in the false advertising context. *See Davidson v. Kimberly-Clark Corp.,* 889 F.3d 956, 965 (9th Cir. 2018) ("Under California law, the economic injury of paying a premium for a ***falsely advertised*** product is sufficient harm to maintain a cause of action.") (emphasis added). But price-premium economic injuries in false advertising cases requiring reliance are different than Plaintiff's

12

injury here. This is case does not involve misrepresentation and deception allegations, but instead involves an unlawful constraint being placed on the lawful use of one's property.

Because there are no misrepresentations at issue, Plaintiff need not allege that she read and relied on the warranty's tying provisions when "deciding" to pay a premium for her coffee maker (Def.'s Br. at 38). While Plaintiff alleges that she overpaid for Defendant's product (4-ER-617), that overpayment arises from the diminished value created by the warranty's tying conditions—an ongoing and unlawful restriction on Plaintiff's use of the product—that amounts to an economic injury. *See, e.g., Clayworth v. Pfizer, Inc.,* 233 P.3d 1066, 1087 (Cal. 2010) ("They lost money: the overcharges they paid.").

### B. The Operative Complaint is Proper, Stands on its Own, and Does Not Omit or Contradict Prior Factual Allegations.

Defendant contends Plaintiff's removal of allegations in previous iterations of the complaint that the District Court mistook as supporting a fraud theory is somehow improper, as though a plaintiff cannot amend to clarify, change, or even abandon a theory. Def.'s Br. at 30-31. Unlike the authority Defendant cites, there is nothing irreconcilable between the SAC and prior complaints. *Compare Rodriguez v. Sony Comput. Entm't Am., Ltd. Liab. Co*., 801 F.3d 1045, 1054 (9th Cir. 2015) (operative complaint's allegations concerning the defendant's transfer of ownership "completely contradicted" the prior complaint) *with Svenson*, 2015 U.S.

13

Dist. LEXIS 43902, at *10-*11 (declining to reject the allegations in the operative complaint because they were not irreconcilable with the original complaint).[1] Defendant's warranty provision is the crux of this case. The substance of that warranty has not changed over time. And Plaintiff has consistently alleged the warranty violates the MMWA's prohibition against tying conditions, and that unlawfulness caused her injury because it impaired her property interests.

Moreover, Defendant does not identify a single contradictory statement of *fact* or omission that renders the operative complaint at odds with any prior complaint. Defendant (and the lower court) can only point to Plaintiff's omission of the term "misrepresentation" from the current complaint. *See generally* 4-ER-600-19; 1-ER-4-5. But there is nothing improper about Plaintiff framing her factual allegations consistently with a theory of liability she deems viable (nor has Defendant cited any authority providing as such). In any event, Plaintiff's theory is not even novel—the operative complaint simply refines her theory consistent with the facts.[2] Ultimately, it is Plaintiff, not Defendant or the lower court, who is the

---

[1] Defendant also relies on *Davis v. Combined Ins.*, 2018 LEXIS 38464 (N.D. Cal. Mar. 7, 2018), which merely stands for the proposition that a statement of fact in a prior complaint may be used for purposes of determining when the plaintiff's cause of action accrued. *See id.* at *3. This is irrelevant to the issues here.

[2] Relatedly, Plaintiff is *not* bringing a new theory of the case on appeal, contrary to Defendant's assertions. *See* Def.'s Br. at 44-46. After the District Court initially ruled the case sounded in fraud in its initial order granting Defendant's Motion to Dismiss the First Amended Complaint, 4-ER-639, Plaintiff timely amended the complaint to dispel the notion it was. *See generally* 4-ER-600-19 ("SAC"). Next,

master of her complaint. *Aviara Residence Club Owners Ass'n v. Sec. Nat'l Ins. Co.*, 2020 U.S. Dist. LEXIS 193193, at *7-8 (S.D. Cal. June 23, 2020) ("the Court must draw all reasonable inferences in favor of Plaintiff, not Defendant") (citation omitted)).

**II.    Whether Keurig's Warranty Violates the MMWA Should Be Determined at Trial. Even if it Were Considered Here, Keurig's Warranty Amounts to Unlawful Tying in Support of Plaintiff's "Unlawful" and "Unfair" UCL Claims.**

Defendant argues there is no underlying violation of the MMWA. *See* Def.'s Br. at 46-62. But the question of whether Defendant's warranty violates the MMWA is a question for the trier of fact at trial and should not be decided at the pleadings stage, particularly given the parties' competing interpretations of the warranty language. *Burton Way Hotels, Ltd. v. Four Seasons Hotels Ltd.*, 663 Fed. Appx. 567, 568 (9th Cir. 2016) ("If the contract is reasonably susceptible to both parties' interpretations, a conflict in the evidence presented must be resolved in the trial court, as with any question of fact, before the court can declare the meaning of the contract as a matter of law.") (citations and quotations omitted).

---

Defendant moved to dismiss the SAC, arguing it still sounded in fraud and required a showing of reliance. 3-ER-567-70. In response, Plaintiff opposed, unequivocally and explicitly asserting the SAC *did not* sound in fraud. 2-ER-126-27 ("**Reliance is Not an Element of Plaintiff's Claims**").

Nevertheless, should the Court reach the issue of whether Defendant's warranty violates the MMWA,[3] it should find Plaintiff's allegations are adequate at this stage in the case. Defendant incorrectly argues its warranty does not violate the MMWA's tying prohibition because it lacks an express "void" clause. But the statute and regulation prohibit *conditioning* warranty coverage—not just voiding the warranty—on the consumer's use of Defendant's articles or services. *See* 15 U.S.C. § 2302(c); 16 C.F.R. § 700.10(c). The FTC makes clear that tying can be implicit and still unlawful where warranty language "implies" to a reasonable consumer that use of non-branded parts or services will result in the denial of coverage—particularly where such implication deters the consumer's right to repair. 16 C.F.R. 700.10(c).

Indeed, Defendant's warranty provides that "[o]nly the use of Keurig® K-Cup® brand pods and accessories will guarantee the proper functioning and lifetime of your Keurig® brewer." 4-ER-606. "Any damage to or malfunction of your brewer resulting from the use of non-Keurig® pods and accessories may not be covered by this warranty or may result in a service fee if the damage or

---

[3] Plaintiff notes the Court is not obligated to decide the issue given the District Court declined to reach it, having determined the reliance issue was dispositive of Plaintiff's claims. 1-ER-6; *Diaz v. Macy's West Stores, Inc*., 830 Fed. Appx. 213, 214 (9th Cir. 2020) ("Although the parties have fully briefed the issue and this Court may properly consider it, we decline to do so here where the district court has not had the opportunity to rule. We reverse the district court's dismissal and remand for further proceedings.")

16

malfunction is determined to be caused by such use." 4-ER-606-07. Additionally, the Warranty provides: "Nor does this warranty cover damages caused by use of non-Keurig® pods or accessories, services performed by anyone other than Keurig® or its authorized service providers, use of parts other than genuine Keurig® parts, or external causes such as abuse, misuse, inappropriate power supply, or acts of God." 4-ER-607. Collectively, these provisions, at the bare minimum, would lead a reasonable consumer into believing that warranty coverage is conditioned on the consumer's use of Keurig-authorized repair services or parts.[4]

Plaintiff further alleged facts, sourced from consumer advocacy websites, demonstrating reasonable consumers understood the warranty language to exclude the use of third-party repairs and parts. *See* 4-ER-607-08 ("We want to highlight any repairs carried out on your brewer that Keurig does not do will void the warranty…. If you attempt to repair the unit, the warranty will be void…. The big thing here we want to highlight is that any repairs that are carried out on your Keurig brewer that are not done by Keurig will make the warranty void"). Additionally, *Defendant's own customer service representative* stated "[i]f the

---

[4] Defendant argues Plaintiff's claims are predicated on only the last of the three provisions, and any theory based on the other two has been waived. However, Plaintiff's Opening Brief plainly references all three of the provisions as support for the conclusion that Defendant has violated the MMWA. *See* Pl.'s Br. at 6.

17

brewer is dismantled, then yes the warranty would be voided," in response to an inquiry about third party repair. *See* 4-ER-608-09, Fig. 1.

Defendant claims these articles are not evidence of a reasonable consumer's interpretation of its warranty. However, the credibility of conflicting extrinsic evidence is precisely the inquiry that should be decided at trial—not at the pleading stage. *Morey v. Vannucci*, 75 Cal. Rptr. 2d 573, 579 (Cal. Ct. App. 1998) ("it is the jury's responsibility to resolve any conflict in the extrinsic evidence properly admitted to interpret the language of a contract.") (citation omitted). Additionally, while Defendant claims that *some* of the foregoing articles predate the version of the warranty found in the record (dated July 2021), Defendant fails to affirmatively state or request judicial notice of any documents showing that the prior warranty language differed in any meaningful way from the version published in July 2021.

Defendant further contends the following warranty provision only excludes coverage for damages caused by or resulting from non-Keurig sources: "[n]or does this warranty cover damages caused by use of non-Keurig® pods or accessories, services performed by anyone other than Keurig® or its authorized service providers, use of parts other than genuine Keurig® parts, or external causes such as abuse, misuse, inappropriate power supply, or acts of God." Def.'s Br. at 50-53. Even if the Court were to examine this one provision in a vacuum, it could reasonably be interpreted as meaning coverage shall be denied (1) in the event

18

"damages [are] caused by use of non-Keurig® pods or accessories," (2) in the event of the "use of parts other than genuine Keurig® parts," (3) in the event of "abuse, misuse, inappropriate power supply, or acts of God." Isolating the second scenario, reasonable consumers could find that coverage is conditioned on the use of only service or parts authorized by Defendant. This interpretation is supported by the consumer advocacy statements referenced *supra*.

Defendant's attempt to analogize the facts here to those in *Castiel v. Dyson, Inc.*, 717 F. Supp. 3d 698 (N.D. Ill. 2024), is misplaced. There, the court found Dyson's warranty merely did not extend to damages caused by third-party repair and the plaintiff "concede[d] that [Dyson's] terms do not violate the MMWA." *Id.* at 701. Here, it is far from certain (nor does Plaintiff concede) that the warranty simply excludes coverage for damage caused by the use of third-party repair or parts. Again, Defendant's warranty advises consumers that "[o]nly the use of Keurig® parts will guarantee proper functioning and lifetime," which a reasonable consumer could interpret as conditioning warranty protection itself—not merely carving out specific exclusions. 4-ER-606. *See* 16 C.F.R. § 700.10(c).

Additionally, Defendant's series-qualifier argument, based on the notion that the phrase "damages caused by" modifies all items in the following series, including the items of third-party products and services, strains credulity in light of the copious allegations concerning reasonable consumers' interpretation of the

19

language. Contrary to Defendant's assertions, "[a]mbiguities arise when contractual language reasonably may be susceptible to more than one interpretation . . . ." *Abers v. Rounsavell*, 116 Cal. Rptr. 3d 860, 865 (Cal. Ct. App. 2010) (citation omitted). Here, Plaintiff has adequately alleged reasonable consumers could properly construe the warranty as negating coverage based on the use of non-Keurig services or parts.

Lastly, Defendant contends other provisions in the MMWA somehow negate Section 2302(c) and 16 C.F.R. § 700.10(c). *See* Def.'s Br. at 51 (*citing* 15 U.S.C. § 2302(a)(6); 15 U.S.C. § 2302(a)(10)), 56 (*citing* 23 U.S.C. § 2301(6)(A)), 57 (*citing* 15 U.S.C. § 2310(10), 15 U.S.C. § 2302(a)(7), 16 C.F.R. § 701.3(a)(5), 15 U.S.C. § 2307). These provisions permit certain exceptions and exclusions from the terms of a warranty, however, they should not be read to invalidate the clear prohibitions against tying set forth in Section 2302(c) and 16 C.F.R. § 700.10(c). *See Get Oil Out! Inc. v. Exxon Corp.*, 586 F.2d 726, 729 (9th Cir. 1978) ("'[W]hen two statutes are capable of co-existence, it is the duty of the courts . . . to regard each as effective.'" (citation omitted).

In sum, should the Court reach the issue of whether Defendant's warranty violates the MMWA, it should find, at the bare minimum, that the warranty language unlawfully conveys that warranty coverage is conditioned on the consumer's use of only authorized service repair and parts.

20

III.    **Defendant Misapplies the UCL's Safe Harbor Doctrine.**

Plaintiff anticipated Defendant would argue the case should be dismissed on the alternative ground that she failure to plead damages (despite the District Court declining to reach the issue). However, Defendant fails to demonstrate (1) the UCL's safe harbor doctrine actually applies in this instance and (2) Plaintiff is incapable of alleging damages.

The UCL's safe harbor doctrine is a narrow exception that applies only when a legislature has expressly declared that "no action should lie." *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co*., 973 P.2d 527, 541 (Cal. 1999). It does not apply simply because the underlying statute lacks a private right of action. Indeed, California and federal courts have routinely held that the UCL may be predicated on such statutes. *See, e.g., Ingalls v. Spotify USA, Inc.*, 2017 U.S. Dist. LEXIS 110817, at *6 (N.D. Cal. July 17, 2017); *Chabner*, 225 F.3d at 1048; *Matoff v. Brinker Rest. Corp*., 439 F. Supp. 2d 1035, 1038 (C.D. Cal. 2006).

Defendant has not—and cannot—identify any provision of the MMWA that expressly prohibits private enforcement through state-law mechanisms. To the contrary, Section 2302(c) and 16 C.F.R. § 700.10(c) establish affirmative duties for manufacturers concerning consumer warranties. The UCL permits a plaintiff to enforce those duties where they amount to "unlawful" or "unfair" business practices. *See Cel-Tech*, 973 P.2d at 539 (the UCL is "sweeping" and borrows

21

violations of other laws). Contrary to Defendant's contentions, the MMWA's

statutory standing requirement only applies to plaintiffs who are pursuing claim

*under the MMWA's private right of action*. *See* 15 U.S.C. § 2310(d)(1) ("a

consumer who is damaged by [a violation] under this chapter . . . *may* bring suit for

damages") (emphasis added). This language does not preclude a consumer from

enforcing a particular provision within the MMWA under a state cause of action,

such as the UCL. For this reason, Defendant's reliance on *Zhang v. Superior*

*Court*, 304 P.3d 163 (Cal. 2013), is misplaced. There, the California Supreme

Court barred a UCL claim because the plaintiff sought to enforce a statute that the

Legislature had explicitly placed outside the reach of private litigants. *Id.* at 177.

No such bar exists here.

Defendant also relies on *Asencio v. Miller Brewing Co,* 2006 U.S. Dist.

LEXIS 103716 (C.D. Cal. Aug. 11, 2006) and *In re Vaccine Cases*, 36 Cal. Rptr.

3d 80, 94-95 (Cal. Ct. App. 2005), in support of their argument that a UCL claim

cannot proceed unless statutory prerequisites are met. However, those cases

involved procedural bars to relief, namely, failure to serve pre-suit notice. *Id.*

Substantive requirements concerning the "rights and remedies" underpinning the

underlying law, like Section 2301(d)'s damages requirement, are not germane to

whether a UCL claim has been properly pled. This is particularly true where the

UCL has its own standing requirement, which Plaintiff has readily established. *See*

22

Section I(A)(3) *supra*. Defendant's argument that the MMWA's statutory standing requirement is somehow a procedural requirement is meritless. "A lack of statutory standing is a merits determination that requires dismissal for failure to state a claim." *Naranjo v. CRGTS, Inc*., 2022 U.S. Dist. LEXIS 71915, at *5 (E.D. Wa. Apr. 19, 2022) (*citing Maya v. Centex Corp*., 658 F.3d 1060, 1067 (9th Cir. 2011)).

Even if the Court were to require that Plaintiff make a distinct showing of MMWA "damages" to sustain her UCL claims, Plaintiff's allegations more than suffice. Courts have made clear that "damaged" under the MMWA must be read in context, and not conflated with a rigid "actual damages" requirement. As the Supreme Court explained in *FAA v. Cooper*, 566 U.S. 284, 292 (2012), "actual damages" is a term without fixed meaning, varying by statute. *Id.* ("the meaning of 'actual damages' is far from clear"). Here, Congress used the broader term "damaged" in Section 2310(d)(1) and expressly permitted "legal and equitable relief"—reflecting an intent to offer consumers broad remedial access. 15 U.S.C. § 2310(d)(1). Plaintiff was damaged when she purchased a coffee maker accompanied by a warranty that unlawfully restricted third-party repairs, interfering with her right to use the product she purchased, and thus diminishing the value of the product. 4-ER-612.

Courts routinely hold that economic injury arising from interference with property rights constitutes actionable damage under California law and which

23

informs the MMWA's damages analysis. Indeed, courts "look to state law to determine the applicable measure of damages . . . '" under the MMWA. *Pyskaty v. Wide World of Cars, LLC*, 856 F.3d 216, 223–24 (2d Cir. 2017). Under California law, damages include any interference with the economic value or utility of one's property. *See Intel Corp. v. Hamidi*, 71 P.3d 296, 302-03 (Cal. 2003). Here, Plaintiff alleges that her product was worth less than it would have been had it come with a lawful, unrestricted warranty—a concrete economic injury that satisfies both state and federal standards. 4-ER-612. As the court emphasized in *Barrack v. Kolea*, 651 A.2d 149 (Pa. Super. Ct. 1994), "[a]ppellees may not have suffered a harm, but they have been damaged by not receiving what they had contracted to receive." *Id.* at 155. The same applies here: Plaintiff did not get the full, lawful benefit of her bargain.

The district court's reasoning in *Schaer v. Newell Brands Inc.*, 2023 U.S. Dist. LEXIS 28028 (D. Mass. Feb. 15, 2023), supports this conclusion. In *Schaer*, the court held the plaintiff's purchase of a product with an unlawful tying provision amounted to an "injury in fact" and a diminution in product value sufficient to proceed under the MMWA. *Id.* at *4. While Defendant attempts to minimize *Schaer* as merely addressing Article III standing, the court made clear that the same economic harm was actionable under the MMWA's own "damaged by" standard. *Id.* at *3 ("Plaintiff was damaged by the warranty's repair restriction . . . ,

24

resulting in a lower value of and overpayment for the coffee maker."). Moreover, the *Schaer* court did not find or suggest that consumers must experience physical failure of their products before they can challenge illegal warranty terms. *Id.*

Additionally, Plaintiff's allegations are far from conclusory statements of overpayment. *See* Def.'s Br. at 70-72. The warranty affirmatively conditions coverage on the use of Keurig-approved parts, chilling consumers from exercising their right to repair and reducing the scope of the warranty coverage. Courts have consistently found that limitations on the use of purchased goods, even absent physical harm, can amount to economic injury. See *Altvater v. Breckenridge*, 345 P.2d 358, 361-62 (Cal. Ct. App. 1959) (property interest impaired by restriction on use); *Thrifty-Tel, Inc. v. Bezenek*, 46 Cal. App. 4th 1559, 1567 (1996) (interference with chattel gives rise to damages).

Finally, Defendant's reliance on outdated or inapposite cases to overstate the damages requirement under the MMWA is unavailing. These decisions either misread the MMWA to impose a non-existent "actual damages" requirement or dismissed complaints based on pleading deficiencies not present here. *McGarvey v. Penske Auto. Grp., Inc.*, 639 F. Supp. 2d 450, 456 (D.N.J. 2009) ("a plaintiff 'is required to show that he has sustained *actual damage*'") (emphasis in original); *Sasso v. Tesla, Inc.*, 584 F. Supp. 3d 60, 78 (E.D.N.C. Feb. 7, 2022) (plaintiff "does not plausibly allege it suffered actual harm as a result of Tesla's alleged

failure to comply with the MMWA's substantive provisions"), *Atchole v. Silver Spring Imps., Inc.*, 379 F. Supp. 2d 797, 802 (D. Md. 2005) ("Plaintiff is required to show that he has sustained actual damage") and *Moroz v. Alexico Corp.*, 2008 U.S. Dist. LEXIS 1166 (E.D. Pa. 2008) (limiting MMWA claims "only to redress a breach of warranty that causes the Plaintiff to sustain actual damages"). They also predate or ignore *Schaer*, which squarely rejects the notion that a product must malfunction to give rise to MMWA liability. Plaintiff's allegations, grounded in diminished value, loss of use, and interference with core ownership rights, fall well within the actionable scope of the MMWA and California law alike.

## IV.   The District Court Abused its Discretion in Granting Keurig's Motion to Dismiss *With* Prejudice.

Defendant's contention that leave to amend was properly denied on futility grounds is erroneous and inconsistent with the Supreme Court's mandate that leave to amend should be "freely given when justice so requires." *Foman v. Davis*, 371 U.S. 178, 182 (1962) (*citing* Fed. R. Civ. Proc., Rule 15(a)). The analysis does not turn on pleading sufficiency, but the procedural opportunity to test the claims on the merits. *Id.* "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, [s]he ought to be afforded an opportunity to test h[er] claim…." *Id.* Denial of amendment without a stated reason is an abuse of discretion. *Id.*

Here, Plaintiff made a good faith effort to comply with the District Court's prior guidance by amending the complaint to remove allegations that might be construed as sounding in fraud, such that the remaining allegations constituted a "proper subject of relief" under the UCL's "unlawful" and "unfair" prongs without requiring reliance. *Id.* The District Court's one-sentence denial provided no explanation as to why further amendment would be futile, despite Plaintiff's attempts to clarify her legal theory. This warrants reversal. *Id.*

## A. Plaintiff Did Not Waive Her Right to Seek Leave to Amend.

Defendant's argument Plaintiff waived her request for leave to amend misrepresents the legal standard governing waiver and improperly relies on cherry-picked sound bites from non-binding dicta. *See* Def.'s Br. at 40-46.

First, Defendant's authority concerned arguments *raised for the first time on appeal*, not—as here—a timely request for leave to amend squarely presented to the district court. *See, e.g., In re Mercury Interactive Corp. Sec. Litig*, 618 F.3d 988, 992 (9th Cir. 2010) (waiver only if "the argument was not 'raised sufficiently for the trial court to rule on it'") (citations omitted); *Gabourel v. Luxottica of Am., Inc.*, 2024 U.S. App. LEXIS 1628, at *2 (9th Cir. Jan. 24, 2024) (despite potential waiver, court considered an argument raised for the first time on appeal); *Holley-Gallegly v. TA Operating, LLC*, 74 F.4th 997, 1001 (9th Cir. 2023) (no waiver because the district court "explicitly ruled on the delegation clause issue" after defendant raised it). In

27

*Holley-Gallegly*, the fact that the defendant raised the delegation clause with "specificity and vigor" was not central to the holding—rather, that fact merely bolstered the finding that the argument was adequately preserved. 74 F.4th at 1001. Here, there is no question that Plaintiff preserved her explicit request for "leave to cure any pleading deficiencies," giving the court a clear opportunity to consider it. *See* 2-ER-139.

Second, there is no waiver where the district court actually ruled on the issue. In *Holley-Gallegly*, the court emphasized that "[w]hen a party takes a position and the district court rules on it, there is no waiver." 74 F.4th at 1001 (*citing Yamada v. Nobel Biocare Holding AG*, 825 F.3d 536, 543 (9th Cir. 2016)). That is precisely what happened here. The District Court denied Plaintiff's request for leave to amend, demonstrating the issue was adjudicated and preserved. *See* 1-ER-6.

Third, the supposed brevity of Plaintiff's request is irrelevant, given the liberal standard for amendments under Rule 15. Brief or generic requests to amend (including those in opposition briefs) are sufficient to preserve the issue. *See, e.g., Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1053 (9th Cir. 2003) (reversing denial of leave to amend based on the "plaintiffs' proffer that additional evidence was forthcoming" without a detailed proposal).

In short, Plaintiff timely raised the issue, the district court ruled on it, and binding precedent establishes this was more than sufficient to preserve the right to

seek leave to amend. This is consistent with the strong presumption in favor of amendment under Rule 15(a).

### B. The District Court Abused its Discretion in Denying Leave to Amend Because Amendment Was Not Futile.

Keurig notes the District Court's "broad discretion" to deny amendment on grounds the complaint had been previously amended. Def.'s Br. at 11 (*citing Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013)). However, that discretion is not unbounded. The Ninth Circuit has emphasized that the burden is on the district court to articulate why amendment would be futile. *See Eminence Capital*, 316 F.3d at 1052. Here, the District Court failed to meet its burden with its one-sentence explanation.

Additionally, unlike the plaintiffs in Defendant's cited authority, Plaintiff did not simply refile the same deficient claims without change. Rather, Plaintiff's SAC was a good faith attempt to respond to the District Court's concerns that her fraud-based claims failed to plead reliance by eliminating deception-based allegations. This effort to reframe the issue weighs heavily in favor of granting leave to amend, even assuming the SAC ultimately fell short. See *Eminence Capital*, 316 F.3d at 1053 (leave to amend appropriate based on the plaintiff's efforts to assert "additional theories not previously alleged"). Further amendment should have been granted to more clearly articulate how Defendant's conduct does not sound in fraud.

Defendant's authority, including *Telesaurus VPC, LLC v. Power*, 623 F.3d 998 (9th Cir. 2010) and *Kroessler v. CVS Health Corporation*, 977 F.3d 803, 815 (9th Cir. 2020), actually support reversal of the District Court's denial of leave to amend. In *Power*, the Ninth Circuit held amendment was not futile where new facts could support liability under the Federal Communications Act ("FCA"). *Power*, 623 F.3d at 1005–06. Likewise, in *Kroessler*, the court found the plaintiff could allege extra-label evidence to avoid FDCA preemption and held leave to amend should have been granted. *Kroessler*, 977 F.3d at 816.

Defendant's remaining authorities do not compel a different result. Specifically, Defendant relies on *Stross v. Zillow, Inc*., 2023 U.S. App. LEXIS 32505 (9th Cir. Dec. 8, 2023), *Bracht v. Deckers Outdoor Corp*., 2012 U.S. Dist. LEXIS 199720 (C.D. Cal. Oct. 2, 2012), and *Velasquez v. Chase Home Fin. LLC*, 2011 U.S. Dist. LEXIS 4097 (N.D. Cal. Jan. 10, 2011), which it contends compels Plaintiff to provide specific facts justifying leave to amend. However, Plaintiff has repeatedly expressed an intent to remove any and all suggestion from the complaint that this matter sounds in fraud. *See* Pl.'s Br. at 45. Assuming the Court is disinclined to reverse the dismissal of the SAC**,** at a minimum, the Court should reverse the District Court's denial of leave to amend as an abuse of discretion given Plaintiff's good faith effort to refine her case theory.

## CONCLUSION

For the foregoing reasons, the Court should reverse the District Court's order granting Keurig's Motion to Dismiss and remand for further proceedings.

Dated: March 28, 2025                    Respectfully submitted,


_/s/ Gillian L. Wade_ _____
Gillian L. Wade
Sara D. Avila
Marc A. Castaneda
Kristy Graham
**WADE KILPELA SLADE LLP**

*Attorneys for Appellant Christina Groff*

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

### Certificate of Compliance for Briefs

**This brief contains 6, 999 words,** excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[ x ] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties;
    [ ] a party or parties are filing a single brief in response to multiple briefs; or
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).


**Signature**: */s/ Gillian L. Wade*_____ **Date** March 28, 2025__
*(use "s/[typed name]" to sign electronically filed documents)*

32

## CERTIFICATE OF SERVICE

I hereby certify that on March 28, 2025, I electronically filed the foregoing with the Clerk of the Court of the United States Court of Appeals for the Ninth Circuit using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

**Signature**: */s/ Gillian L. Wade*_____   **Date** March 28, 2025__

33