No. 24-5905

_____

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

_____

CHRISTINA GROFF,
PLAINTIFF/APPELLANT,

v.

KEURIG GREEN MOUNTAIN, INC.,
DEFENDANT/APPELLEE

_____

On Appeal from the
United States District Court for the Central District of California
The Hon. Sunshine S. Sykes, District Judge
No. 5:23-cv-01492-SSS-SP

_____

## APPELLANT CHRISTINA GROFF'S REPLY BRIEF

_____

Dated: March 28, 2025

WADE KILPELA SLADE LLP
Gillian L. Wade
Sara D. Avila
Marc A. Castaneda
Kristy Graham
2450 Colorado Ave., Suite 100E
Santa Monica, CA 90404
Telephone: (310) 667-7273

*Attorneys for Appellant Christina Groff*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................... iv

INTRODUCTION ...........................................................................1

ARGUMENT ..................................................................................4

    I.    Plaintiff's SAC Does Not Sound in Fraud .............................4

        A.    Plaintiff Adequately Pleads Each Element of Her UCL Claims ...............................................................4

            1.    Plaintiff alleges a business practice that violates the UCL under the "unlawful" and "unfair" prongs.......................5

            2.    Plaintiff meets the UCL's causation requirement ...........8

            3.    Plaintiff alleges an economic injury ...............................11

        B.    The Operative Complaint is Proper, Stands on its Own, and Does Not Omit or Contradict Prior Factual Allegations ..........13

    II.    Whether Keurig's Warranty Violates the MMWA Should Be Determined at Trial. Even if it Were Considered Here, Keurig's Warranty Amounts to Unlawful Tying in Support of Plaintiff's "Unlawful" and "Unfair" UCL Claims ................................................15

    III.    Defendant Misapplies the UCL's Safe Harbor Doctrine ....................21

    IV.    The District Court Abused its Discretion in Granting Keurig's Motion to Dismiss *With* Prejudice ................................................26

        A.    Plaintiff Did Not Waive Her Right to Seek Leave to Amend......................................................................27

        B.    The District Court Abused its Discretion in Denying Leave to Amend Because Amendment Was Not Futile .........................29

ii

CONCLUSION ................................................................................31

CERTIFICATE OF COMPLIANCE FOR BRIEFS ...............................................32

CERTIFICATE OF SERVICE ...............................................................33

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Abers v. Rounsavell*
116 Cal. Rptr. 3d 860 (Cal. Ct. App. 2010)..................................................20

*Altvater v. Breckenridge*
345 P.2d 358 (Cal. Ct. App. 1959) ................................................................25

*Asencio v. Miller Brewing Co*
2006 U.S. Dist. LEXIS 103716 (C.D. Cal. Aug. 11, 2006) ..........................22

*Atchole v. Silver Spring Imps., Inc.*
379 F. Supp. 2d 797 (D. Md. 2005)...............................................................26

*Aviara Residence Club Owners Ass'n v. Sec. Nat'l Ins. Co.*
2020 U.S. Dist. LEXIS 193193 (S.D. Cal. June 23, 2020) ...........................15

*Backus v. General Mills*
122 F. Supp. 3d 909 (N.D. Cal. 2015)..............................................................6

*Barrack v. Kolea*
651 A.2d 149 (Pa. Super. Ct. 1994) ..............................................................24

*Bracht v. Deckers Outdoor Corp.*
2012 U.S. Dist. LEXIS 199720 (C.D. Cal. Oct. 2, 2012) .............................30

*Burton Way Hotels, Ltd. v. Four Seasons Hotels Ltd.*
663 Fed. Appx. 567 (9th Cir. 2016) ..............................................................15

*Cahen v. Toyota Motor Corp.*
717 F. App'x 720 (9th Cir. 2017) ..................................................................12

*Castiel v. Dyson, Inc.*
717 F. Supp. 3d 698 (N.D. Ill. 2024)..............................................................19

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*
973 P.2d 527 (Cal. 1999)....................................................................5, 8, 21

iv

*Clayworth v. Pfizer, Inc.*
 233 P.3d 1066 (Cal. 2010) ...................................................................13

*Davidson v. Kimberly-Clark Corp.*
 889 F.3d 956 (9th Cir. 2018) ...............................................................12

*Davis v. Combined Ins.*
 2018 LEXIS 38464 (N.D. Cal. Mar. 7, 2018) ................................14

*Diaz v. Macy's West Stores, Inc.*
 830 Fed. Appx. 213 (9th Cir. 2020) .................................................16

*Durell v. Sharp Healthcare*
 183 Cal. App. 4th 1350 (2010) .............................................................8

*Eminence Capital, LLC v. Aspeon, Inc.*
 316 F.3d 1048 (9th Cir. 2003) ......................................................28, 29

*FAA v. Cooper*
 566 U.S. 284 (2012) ................................................................................23

*Foman v. Davis*
 371 U.S. 178 (1962) ................................................................................26

*Gabourel v. Luxottica of Am., Inc.*
 2024 U.S. App. LEXIS 1628 (9th Cir. Jan. 24, 2024) ..................27

*Get Oil Out! Inc. v. Exxon Corp.*
 586 F.2d 726 (9th Cir. 1978) ...............................................................20

*Hinojos v. Kohl's Corp.*
 718 F.3d 1098 (9th Cir. 2013) .............................................................11

*Hiradate v. Ralphs Grocery Co.*
 2022 U.S. Dist. LEXIS 214040 (C.D. Cal. Nov. 28, 2022) ..........10

*Holley-Gallegly v. TA Operating, LLC*
 74 F.4th 997 (9th Cir. 2023) ...............................................................27

*In re Mercury Interactive Corp. Sec. Litig.*
   618 F.3d 988 (9th Cir. 2010) ........................................................................27

*In re Tobacco II Cases*
   207 P.3d 20 (Cal. 2009) ................................................................................9

*In re Vaccine Cases*
   36 Cal. Rptr. 3d 80 (Cal. Ct. App. 2005) ....................................................22

*Ingalls v. Spotify USA, Inc.*
   2017 U.S. Dist. LEXIS 110817 (N.D. Cal. July 17, 2017) ...........................21

*Intel Corp. v. Hamidi*
   71 P.3d 296 (Cal. 2003) ...............................................................................24

*Kearns v. Ford Motor Co.*
   567 F.3d 1120 (9th Cir. 2009) ...................................................................9, 10

*Kissel v. Code 42 Software, Inc.*
   2016 U.S. Dist. LEXIS 184368 (C.D. Cal. Apr. 14, 2016) ..........................8, 9

*Kroessler v. CVS Health Corporation*
   977 F.3d 803 (9th Cir. 2020) ........................................................................30

*Kwikset Corp. v. Superior Court*
   246 P.3d 877 (Cal. 2011) ...........................................................................8, 11

*Matoff v. Brinker Rest. Corp.*
   439 F. Supp. 2d 1035 (C.D. Cal. 2006) ........................................................21

*Maya v. Centex Corp.*
   658 F.3d 1060 (9th Cir. 2011) ......................................................................23

*McGarvey v. Penske Auto. Grp., Inc.*
   639 F. Supp. 2d 450 (D.N.J. 2009) ...............................................................25

*Morey v. Vannucci*
   75 Cal. Rptr. 2d 573 (Cal. Ct. App. 1998) ...................................................18

*Moroz v. Alexico Corp.*
2008 U.S. Dist. LEXIS 1166 (E.D. Pa. 2008) ................................................26

*Naimi v. Starbucks Corp.*
798 F. App'x 67 (9th Cir. 2019) ....................................................................12

*Naranjo v. CRGTS, Inc.*
2022 U.S. Dist. LEXIS 71915 (E.D. Wa. Apr. 19, 2022) ...........................23

*Pyskaty v. Wide World of Cars, LLC*
856 F.3d 216 (2d Cir. 2017) ...........................................................................24

*Rodriguez v. Sony Comput. Entm't Am., Ltd. Liab. Co.*
801 F.3d 1045 (9th Cir. 2015) ......................................................................13

*Salameh v. Tarsadia Hotel*
726 F.3d 1124 (9th Cir. 2013) ......................................................................29

*Sasso v. Tesla, Inc.*
584 F. Supp. 3d 60 (E.D.N.C. Feb. 7, 2022) ..............................................25

*Schaer v. Newell Brands Inc.*
2023 U.S. Dist. LEXIS 28028 (D. Mass. Feb. 15, 2023) ...........................24

*Smart v. NCAA*
2023 U.S. Dist. LEXIS 130570 (E.D. Cal. July 27, 2023) ............................8

*Stross v. Zillow, Inc.*
2023 U.S. App. LEXIS 32505 (9th Cir. Dec. 8, 2023) .................................30

*Svenson v. Google, Inc.*,
2015 U.S. Dist. LEXIS 43902 (N.D. Cal. April 1, 2015) .......................9, 13

*Telesaurus VPC, LLC v. Power*
623 F.3d 998 (9th Cir. 2010) ........................................................................30

*Thrifty-Tel, Inc. v. Bezenek*
46 Cal. App. 4th 1559 (1996) ........................................................................25

*Velasquez v. Chase Home Fin. LLC*
    2011 U.S. Dist. LEXIS 4097 (N.D. Cal. Jan. 10, 2011)................................30

*Waller v. Hewlett-Packard Co.*
    2011 U.S. Dist. LEXIS 145276 (S.D. Cal. Dec. 14, 2011) ..........................10

*Yamada v. Nobel Biocare Holding AG*
    825 F.3d 536 (9th Cir. 2016) ........................................................................28

*Zhang v. Superior Court*
    304 P.3d 163 (Cal. 2013) ..............................................................................22

**Statutes**

15 U.S.C. § 2302(a)(6) ........................................................................................20

15 U.S.C. § 2302(a)(7) ........................................................................................20

15 U.S.C. § 2302(a)(10) ......................................................................................20

15 U.S.C. § 2302(c) ..................................................................................6, 16, 21

15 U.S.C. § 2307 .................................................................................................20

15 U.S.C. § 2310(10) ....................................................................................6, 20

15 U.S.C. § 2310(c)(2) ..........................................................................................7

15 U.S.C. § 2310(d)(1) ................................................................................22, 23

16 C.F.R. § 700.10(c) ........................................................6, 7, 16, 19, 20, 21

16 C.F.R. § 701.3(a)(5) ......................................................................................20

23 U.S.C. § 2301(6)(A) ......................................................................................20

Fed. R. Civ. Proc., Rule 15(a) ..................................................................... 26, 29

## INTRODUCTION

This appeal presents a straightforward yet critical issue: Whether the District Court erred in dismissing Plaintiff's Unfair Competition Law ("UCL") claims on grounds she failed to plead reliance, despite the absence of any fraud-based allegations in the Second Amended Complaint ("SAC"). In the SAC, Plaintiff alleges Defendant's warranty unlawfully restricts the use of third-party repair services and parts in violation of the Magnuson-Moss Warranty Act's ("MMWA") express prohibition on tying arrangements. Plaintiff's Opening Brief explains how her claims rest solely on that statutory violation—not on misrepresentation or consumer confusion—because the violation itself caused her harm, and that the harm she suffered is the impairment of her property interests. Thus, the District Court erred in treating Plaintiff's "unlawful" and "unfair" UCL claims as fraud-based to conclude Plaintiff's economic injury is only redressable if she relied on some misrepresentation made by Defendant.

In its Answering Brief, Defendant, like the District Court, seeks to recast Plaintiff's allegations as sounding in fraud, imposing a reliance requirement that does not apply. Thus, it focuses almost entirely on the concept that Plaintiff must allege her reasonable expectations about the warranty. The UCL, however, allows recovery for unlawful acts that cause economic harm when the theory is not based on deceptive practices. In particular, in cases like Plaintiff's, injured parties may

1

state a claim based on allegations that a defendant's unlawful and unfair practices caused economic harm.

Here, Defendant's unlawful and unfair tying conditions restrict Plaintiff's use of her property in ways that the MMWA is designed to prevent. This is a classic economic injury under California law, and one that does not depend on whether the consumer relied on or even read the unlawful provision. Indeed, Plaintiff alleges she purchased a coffee maker with a warranty containing illegal tying conditions, which in turn diminished the product's value because it proscribed the full and lawful use of Plaintiff's property. Under the MMWA, Plaintiff *may* elect to have her product repaired by a third party, or with third-party parts, and Defendant cannot forbid her from doing so. It is axiomatic that a person's home value is diminished if an unlawful restrictive covenant is placed upon it—and no further inquiry as to the homeowner's reliance would be necessary to make that determination. The same is true here: Defendant's act of placing an unlawful condition on the unfettered use of Plaintiff's property diminishes the value of that property for Plaintiff. No further inquiry is required. Plaintiff is therefore injured *whether or not she expected* at the time of purchase that the product would not be subject to illegal tying conditions. For this reason, the District Court's dismissal of Plaintiff's SAC should be reversed.

2

Defendant is also wrong in arguing that the District Court appropriately dismissed Plaintiff's SAC with prejudice. The District Court's one-sentence denial did not explain why further amendment would be futile, which warrants reversal under controlling Ninth Circuit and Supreme Court precedent. The District Court's refusal to grant leave to amend deprived Plaintiff of the opportunity to test her claims on the merits.

For the foregoing reasons and as discussed more fully herein, the Court should reverse the District Court's order granting Keurig's Motion to Dismiss and remand for further proceedings.

## ARGUMENT

### I.   Plaintiff's SAC Does Not Sound in Fraud.

#### A. Plaintiff Adequately Pleads Each Element of Her UCL Claims.

Defendant misconstrues or challenges each element of Plaintiff's UCL claims, starting with the gravamen of her UCL claims—the business practice itself. Defendant contends that Plaintiff's allegations concerning Defendant's unlawful and unfair business practices are fraud-based. Def.'s Br. at 29, 33-36. Specifically, Defendant erroneously claims Plaintiff's theory is that Keurig misled consumers about their rights under the MMWA's anti-tying provisions. Def.'s Br. at 22; 1-ER-5. This argument is defied by the plain language in the SAC which contains no such allegation. Rather, the SAC asserts Defendant's restrictions on the use of third-party repair and parts constitutes "unlawful" and "unfair" business practices proscribed by the MMWA and the UCL. 4-ER-602. Plaintiff's theory is neither predicated on, nor reliant on, any fraud-based theory.

Defendant's rewriting of Plaintiff's UCL claims as rooted in fraud sets up Defendant's next, equally misguided argument relating to the causation element of Plaintiff's UCL claim. According to Defendant, Plaintiff's UCL claims fail because she does not allege that she relied on the purported misrepresentations. But because this case does not sound in fraud in the first instance, Plaintiff need not allege reliance. Indeed, outside the misrepresentation context, the UCL's relaxed

4

causation standard applies. Defendant does not argue Plaintiff failed to meet this standard.

Lastly, Defendant contends Plaintiff failed to allege an economic injury for purposes of the UCL, arguing that the only way anti-tying language can injure a purchaser is if the purchaser has expectations about the warranty. But the UCL's "unlawful" and "unfair" prongs also permit recovery where the unlawful conduct harms a plaintiff's economic interests notwithstanding any consumer expectations. This is such a case because Keurig's illegal tying practices restrict Plaintiff's use of her property and diminish the value of the product.

### 1. Plaintiff alleges a business practice that violates the UCL under the "unlawful" and "unfair" prongs.

Contrary to Defendant's assertions, Plaintiff's allegations Defendant violated the UCL's "unlawful" and "unfair" prongs are neither based on nor dependent upon misrepresentations or fraud. This is clear from the challenged conduct supporting both claims.

"Unlawful" prong claim:

Plaintiff's "unlawful" prong claim rests on Defendant's violation of the MMWA's ban on tying arrangements, not on deception. *See Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 973 P.2d 527, 539-40 (Cal. 1999) (the UCL borrows violations of other laws and makes them independently actionable). Plaintiff identified the tying language in Defendant's warranty and cited the relevant statute

5

and regulation. *See* 4-ER-616 (*citing* 15 U.S.C. § 2302(c) and 16 C.F.R. § 700.10). The regulation is explicit: such provisions violate the MMWA in ***two***, distinct ways—because they are <u>banned</u> ***and*** because they are <u>deceptive</u>. *See* 16 C.F.R. § 700.10(c) ("These provisions violate the Act in two ways. First, they violate the section 102(c), 15 U.S.C. 2302(c), ban against tying arrangements. Second, such provisions are deceptive under section 110 of the Act, 15 U.S.C. 2310…."). Plaintiff's SAC, however, proceeds ***solely under the first theory***—the anti-tying theory—not the deception theory that Defendant mistakenly attributes to her claims. As the regulations make clear, it is the *tying behavior* that renders the warranty provision banned under the MMWA, full stop. Concepts of misrepresentation, deception, and the reasonable consumer, therefore, do not come into play. *See e.g., Backus v. General Mills*, 122 F. Supp. 3d 909, 925-26 (N.D. Cal. 2015) ("[T]his is simply not a misrepresentation case; the allegedly unfair business conduct here was the distribution of baking mixes with trans fats.").

Ignoring Plaintiff's well-pled theory of unlawfulness—that conditioning warranty coverage on the consumer's use of warrantor's articles or services is banned by the MMWA—Defendant focuses on a phantom theory of deception that supposedly drives Plaintiff's UCL claims. On page 34 of its brief, Defendant omitted from its quotation the portion of the MMWA that support's Plaintiff's theory. The regulations make clear that the second way a warranty with tying

6

language may violate the MMWA is if it is "deceptive **under section 110 of the Act, 15 U.S.C. 2310**, because a warrantor cannot, as a matter of law, avoid liability under a written warranty where a defect is unrelated to the use by a consumer of 'unauthorized' articles or service." 16 C.F.R. § 700.10(c) (emphasis added). Defendant deceptively uses an ellipsis (Def.'s Br. at 34) to gloss over the regulation's critical reference to this section of the MMWA, which deals with deceptive warranties. *See* 15 U.S.C. § 2310(c)(2) (defining "deceptive warranty"). Though Defendant points to this language, *Plaintiff does not cite Section 2310 anywhere in her complaint*. Although deception *may be* the crux of a deceptive warranty claim under Section 2310, Plaintiff makes no such claim in her SAC.

"Unfair" prong claim:

Defendant and the lower court lump together Plaintiff's UCL claims and reason that both her "unfair" and "unlawful" prong claim are rooted in misrepresentations. As discussed, this is error as to Plaintiff's "unlawful" prong. The same is true when it comes to Plaintiff's "unfair" prong claim. Defendant sold a consumer product with a warranty that is banned by the MMWA's anti-tying provisions and, therefore, engaged in unlawful conduct. Plaintiff's injury does not flow from any misrepresentations; rather, her property interest was impaired by those tying conditions. Because Plaintiff adequately alleged an "unlawful" prong claim, she has also alleged an "unfair" prong claim. *See, e.g., Smart v. NCAA,* 2023

7

U.S. Dist. LEXIS 130570, at *26 (E.D. Cal. July 27, 2023) (having "adequately pled his UCL claim under the unlawful prong[,] . . . Plaintiff Hacker has also adequately pled his UCL claim under the unfair prong . . . .") (citing *Cel-Tech*, 973 P.2d at 544).

### 2. Plaintiff meets the UCL's causation requirement.

Defendant's causation argument also falters because it flows directly from a misrepresentation theory that Plaintiff does not plead. To satisfy the UCL's causation requirement, Plaintiff must allege she lost money or property "as a result of" the unfair competition. *See Kwikset Corp. v. Superior Court*, 246 P.3d 877, 884 (Cal. 2011). It is the "as a result of" language in the UCL that imposes a reliance requirement where, unlike here, the predicate unlawfulness is fraud through misrepresentation and deception. *See Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1363 (2010); *Kwikset*, 246 P.3d at 888 n. 9. By failing to distinguish analogous UCL cases where reliance was *not* required and citing inapposite authority, Defendant erroneously insists the reliance requirement applies and does not entertain any other possibility. As a result, Defendant does not challenge Plaintiff's satisfaction of the relaxed causation standard that applies in cases like this one, outside the context of fraud and misrepresentation. *See Kissel*, 2016 U.S. Dist. LEXIS 184368, at *2.

Ample authority supports Plaintiff's UCL theory. For purposes of an "unlawful" or "unfair" prong claim, an allegation of reliance is required only where the claim is based upon allegations of misrepresentation and deception. *See Svenson v. Google, Inc.*, 2015 U.S. Dist. LEXIS 43902, *33 (N.D. Cal. April 1, 2015) (citing *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) and *Durell*, 183 Cal. App. 4th at 1363). But "[t]here are doubtless many types of unfair business practices in which the concept of reliance… has no application." *In re Tobacco II Cases,* 207 P.3d 20, 39 n. 17 (Cal. 2009). This is one such case.

Plaintiff's UCL claims are squarely in line with the UCL claims in the cases Plaintiff cites in her opening brief, where courts found there to be no reliance element—cases where, in the words of Defendant, "a defendant allegedly commits unlawful conduct independent of any misrepresentations to consumers" (Def.'s Br. at 28). *See Svenson*, 2015 U.S. Dist. LEXIS 43902, at *30-33 (no reliance requirement for UCL claims based on violations of the California Online Privacy Protection Act); *Kissel v. Code 42 Software, Inc.,* 2016 U.S. Dist. LEXIS 184368, at *21-23 (C.D. Cal. Apr. 14, 2016) (same for UCL claims based on violations of California's Automatic Renewal Law). As in these cases, Plaintiff alleges a straightforward statutory violation: Defendant's violation of the MMWA's ban of tying conditions in warranties, which does not require allegations of deception or

9

reliance. It is Defendant's misconduct—including the warranty's tying provision—that curtailed Plaintiff's right to use her coffee maker as she sees fit.

Each line of cases Defendant cites is distinguishable because they are premised on fraud and deception. Defendant's key authorities are false advertising cases—Plaintiff's is not. *See Kearns*, 567 F.3d at 1124-26 (allegations involved "misrepresentations"); *Hiradate v. Ralphs Grocery Co.*, 2022 U.S. Dist. LEXIS 214040, at *6 (C.D. Cal. Nov. 28, 2022) ("Plaintiff thus sufficiently alleged that he relied on Defendants' misrepresentations, which caused Plaintiff's harm."); *Waller v. Hewlett-Packard Co.*, 2011 U.S. Dist. LEXIS 145276, at *11 (S.D. Cal. Dec. 14, 2011) (UCL claim arising from the defendant's misrepresentations about product's functioning).

Relatedly, Plaintiff also does not allege that consumers purchase their coffee makers *because* they misunderstand their rights under Keurig's warranty. *See* Def.'s Br. at 32-33. Defendant's unlawful tying practices in violation of the MMWA do not hinge on any consumer having been tricked into making purchases. Rather, Keurig's illegal tying practices represent ongoing harm to the use—and thus value—of the product after the purchase is made.

Defendant also makes a secondary, somewhat muddled, causation argument. Specifically, Defendants argues Plaintiff failed to plead causation because she did not allege she sought or used third-party replacement parts or repair and was never

10

told by Keurig that her warranty rights were void. *See* Def.'s Br. at 70-71. But
Plaintiff need not allege any of that to sufficiently plead the *impairment* on the use
and thus the value of her coffee maker and the requisite causal link between that
injury and Defendant's unlawful and unfair tying conditions in its warranty.

### 3. Plaintiff alleges an economic injury.

Lastly, Plaintiff has satisfied the UCL's economic injury requirement.
Defendant's argument presumes only one kind of economic injury: overpayment
based on Plaintiff's expectations about the warranty coverage. By ignoring
Plaintiff's allegation that Keurig's illegal tying practices directly impair her
property interests by restricting her use of the product, Defendant assumes Plaintiff
must allege she paid for a warranty that she affirmatively expected would not
contain illegal tying provisions and thus was *deceived* into paying too much.
Defendant's circular reasoning limits the broad reach of the UCL to fraud-based
claims.

"There are innumerable ways in which economic injury from unfair
competition may be shown." *Kwikset*, 246 P.3d at 885; *Hinojos v. Kohl's Corp.*,
718 F.3d 1098, 1104 (9th Cir. 2013) (same). One of those ways is for a plaintiff to
"have a present or future property interest diminished." *Kwikset*, 246 P.3d at 885-
86. Plaintiff alleges this precise form of economic injury. Plaintiff paid for a
product covered by a lawful warranty and received something worth less: a product

11

encumbered by a warranty with banned tying provisions. The very fact that the product warranty unlawfully limits coverage directly diminishes the coffee maker's value.

Defendant does not challenge the sufficiency of Plaintiff's allegations as to Plaintiff's diminished property interest. Indeed, Defendant totally ignores the cases Plaintiff cites in support. Defendant's cases concerning economic injury (Def.'s Br. at 70-71), only one of which involves the UCL and California law, have no bearing on the form of economic injury identified in Plaintiff's Opening Brief because they concern injury-by-deception. *See Cahen v. Toyota Motor Corp.,* 717 F. App'x 720, 723 (9th Cir. 2017) ("plaintiffs allege that they suffered an injury because they either would not have purchased their vehicles or would have paid less for them had they known about these hacking risks."); *Naimi v. Starbucks Corp.*, 798 F. App'x 67, 70 (9th Cir. 2019) (insufficient allegations of a cognizable injury under the New York General Business Law).

Instead, Defendant's cases largely concern overpayment under a price premium theory in the false advertising context. *See Davidson v. Kimberly-Clark Corp.,* 889 F.3d 956, 965 (9th Cir. 2018) ("Under California law, the economic injury of paying a premium for a ***falsely advertised*** product is sufficient harm to maintain a cause of action.") (emphasis added). But price-premium economic injuries in false advertising cases requiring reliance are different than Plaintiff's

12

injury here. This is case does not involve misrepresentation and deception allegations, but instead involves an unlawful constraint being placed on the lawful use of one's property.

Because there are no misrepresentations at issue, Plaintiff need not allege that she read and relied on the warranty's tying provisions when "deciding" to pay a premium for her coffee maker (Def.'s Br. at 38). While Plaintiff alleges that she overpaid for Defendant's product (4-ER-617), that overpayment arises from the diminished value created by the warranty's tying conditions—an ongoing and unlawful restriction on Plaintiff's use of the product—that amounts to an economic injury. *See, e.g., Clayworth v. Pfizer, Inc.,* 233 P.3d 1066, 1087 (Cal. 2010) ("They lost money: the overcharges they paid.").

### B. The Operative Complaint is Proper, Stands on its Own, and Does Not Omit or Contradict Prior Factual Allegations.

Defendant contends Plaintiff's removal of allegations in previous iterations of the complaint that the District Court mistook as supporting a fraud theory is somehow improper, as though a plaintiff cannot amend to clarify, change, or even abandon a theory. Def.'s Br. at 30-31. Unlike the authority Defendant cites, there is nothing irreconcilable between the SAC and prior complaints. *Compare Rodriguez v. Sony Comput. Entm't Am., Ltd. Liab. Co*., 801 F.3d 1045, 1054 (9th Cir. 2015) (operative complaint's allegations concerning the defendant's transfer of ownership "completely contradicted" the prior complaint) *with Svenson*, 2015 U.S.

13

Dist. LEXIS 43902, at *10-*11 (declining to reject the allegations in the operative complaint because they were not irreconcilable with the original complaint).[1] Defendant's warranty provision is the crux of this case. The substance of that warranty has not changed over time. And Plaintiff has consistently alleged the warranty violates the MMWA's prohibition against tying conditions, and that unlawfulness caused her injury because it impaired her property interests.

Moreover, Defendant does not identify a single contradictory statement of *fact* or omission that renders the operative complaint at odds with any prior complaint. Defendant (and the lower court) can only point to Plaintiff's omission of the term "misrepresentation" from the current complaint. *See generally* 4-ER-600-19; 1-ER-4-5. But there is nothing improper about Plaintiff framing her factual allegations consistently with a theory of liability she deems viable (nor has Defendant cited any authority providing as such). In any event, Plaintiff's theory is not even novel—the operative complaint simply refines her theory consistent with the facts.[2] Ultimately, it is Plaintiff, not Defendant or the lower court, who is the

---

[1] Defendant also relies on *Davis v. Combined Ins.*, 2018 LEXIS 38464 (N.D. Cal. Mar. 7, 2018), which merely stands for the proposition that a statement of fact in a prior complaint may be used for purposes of determining when the plaintiff's cause of action accrued. *See id.* at *3. This is irrelevant to the issues here.

[2] Relatedly, Plaintiff is *not* bringing a new theory of the case on appeal, contrary to Defendant's assertions. *See* Def.'s Br. at 44-46. After the District Court initially ruled the case sounded in fraud in its initial order granting Defendant's Motion to Dismiss the First Amended Complaint, 4-ER-639, Plaintiff timely amended the complaint to dispel the notion it was. *See generally* 4-ER-600-19 ("SAC"). Next,

14

master of her complaint. *Aviara Residence Club Owners Ass'n v. Sec. Nat'l Ins. Co.*, 2020 U.S. Dist. LEXIS 193193, at *7-8 (S.D. Cal. June 23, 2020) ("the Court must draw all reasonable inferences in favor of Plaintiff, not Defendant") (citation omitted)).

## II. Whether Keurig's Warranty Violates the MMWA Should Be Determined at Trial. Even if it Were Considered Here, Keurig's Warranty Amounts to Unlawful Tying in Support of Plaintiff's "Unlawful" and "Unfair" UCL Claims.

Defendant argues there is no underlying violation of the MMWA. *See* Def.'s Br. at 46-62. But the question of whether Defendant's warranty violates the MMWA is a question for the trier of fact at trial and should not be decided at the pleadings stage, particularly given the parties' competing interpretations of the warranty language. *Burton Way Hotels, Ltd. v. Four Seasons Hotels Ltd.*, 663 Fed. Appx. 567, 568 (9th Cir. 2016) ("If the contract is reasonably susceptible to both parties' interpretations, a conflict in the evidence presented must be resolved in the trial court, as with any question of fact, before the court can declare the meaning of the contract as a matter of law.") (citations and quotations omitted).

---

Defendant moved to dismiss the SAC, arguing it still sounded in fraud and required a showing of reliance. 3-ER-567-70. In response, Plaintiff opposed, unequivocally and explicitly asserting the SAC *did not* sound in fraud. 2-ER-126-27 ("***Reliance is Not an Element of Plaintiff's Claims***").

Nevertheless, should the Court reach the issue of whether Defendant's warranty violates the MMWA,[3] it should find Plaintiff's allegations are adequate at this stage in the case. Defendant incorrectly argues its warranty does not violate the MMWA's tying prohibition because it lacks an express "void" clause. But the statute and regulation prohibit *conditioning* warranty coverage—not just voiding the warranty—on the consumer's use of Defendant's articles or services. *See* 15 U.S.C. § 2302(c); 16 C.F.R. § 700.10(c). The FTC makes clear that tying can be implicit and still unlawful where warranty language "implies" to a reasonable consumer that use of non-branded parts or services will result in the denial of coverage—particularly where such implication deters the consumer's right to repair. 16 C.F.R. 700.10(c).

Indeed, Defendant's warranty provides that "[o]nly the use of Keurig® K-Cup® brand pods and accessories will guarantee the proper functioning and lifetime of your Keurig® brewer." 4-ER-606. "Any damage to or malfunction of your brewer resulting from the use of non-Keurig® pods and accessories may not be covered by this warranty or may result in a service fee if the damage or

---

[3] Plaintiff notes the Court is not obligated to decide the issue given the District Court declined to reach it, having determined the reliance issue was dispositive of Plaintiff's claims. 1-ER-6; *Diaz v. Macy's West Stores, Inc*., 830 Fed. Appx. 213, 214 (9th Cir. 2020) ("Although the parties have fully briefed the issue and this Court may properly consider it, we decline to do so here where the district court has not had the opportunity to rule. We reverse the district court's dismissal and remand for further proceedings.")

malfunction is determined to be caused by such use." 4-ER-606-07. Additionally,

the Warranty provides: "Nor does this warranty cover damages caused by use of

non-Keurig® pods or accessories, services performed by anyone other than

Keurig® or its authorized service providers, use of parts other than genuine

Keurig® parts, or external causes such as abuse, misuse, inappropriate power

supply, or acts of God." 4-ER-607. Collectively, these provisions, at the bare

minimum, would lead a reasonable consumer into believing that warranty coverage

is conditioned on the consumer's use of Keurig-authorized repair services or parts.[4]

Plaintiff further alleged facts, sourced from consumer advocacy websites,

demonstrating reasonable consumers understood the warranty language to exclude

the use of third-party repairs and parts. *See* 4-ER-607-08 ("We want to highlight

any repairs carried out on your brewer that Keurig does not do will void the

warranty…. If you attempt to repair the unit, the warranty will be void…. The big

thing here we want to highlight is that any repairs that are carried out on your

Keurig brewer that are not done by Keurig will make the warranty void").

Additionally, *Defendant's own customer service representative* stated "[i]f the

---

[4] Defendant argues Plaintiff's claims are predicated on only the last of the three provisions, and any theory based on the other two has been waived. However, Plaintiff's Opening Brief plainly references all three of the provisions as support for the conclusion that Defendant has violated the MMWA. *See* Pl.'s Br. at 6.

17

brewer is dismantled, then yes the warranty would be voided," in response to an inquiry about third party repair. *See* 4-ER-608-09, Fig. 1.

Defendant claims these articles are not evidence of a reasonable consumer's interpretation of its warranty. However, the credibility of conflicting extrinsic evidence is precisely the inquiry that should be decided at trial—not at the pleading stage. *Morey v. Vannucci*, 75 Cal. Rptr. 2d 573, 579 (Cal. Ct. App. 1998) ("it is the jury's responsibility to resolve any conflict in the extrinsic evidence properly admitted to interpret the language of a contract.") (citation omitted). Additionally, while Defendant claims that *some* of the foregoing articles predate the version of the warranty found in the record (dated July 2021), Defendant fails to affirmatively state or request judicial notice of any documents showing that the prior warranty language differed in any meaningful way from the version published in July 2021.

Defendant further contends the following warranty provision only excludes coverage for damages caused by or resulting from non-Keurig sources: "[n]or does this warranty cover damages caused by use of non-Keurig® pods or accessories, services performed by anyone other than Keurig® or its authorized service providers, use of parts other than genuine Keurig® parts, or external causes such as abuse, misuse, inappropriate power supply, or acts of God." Def.'s Br. at 50-53. Even if the Court were to examine this one provision in a vacuum, it could reasonably be interpreted as meaning coverage shall be denied (1) in the event

18

"damages [are] caused by use of non-Keurig® pods or accessories," (2) in the event of the "use of parts other than genuine Keurig® parts," (3) in the event of "abuse, misuse, inappropriate power supply, or acts of God." Isolating the second scenario, reasonable consumers could find that coverage is conditioned on the use of only service or parts authorized by Defendant. This interpretation is supported by the consumer advocacy statements referenced *supra*.

Defendant's attempt to analogize the facts here to those in *Castiel v. Dyson, Inc.*, 717 F. Supp. 3d 698 (N.D. Ill. 2024), is misplaced. There, the court found Dyson's warranty merely did not extend to damages caused by third-party repair and the plaintiff "concede[d] that [Dyson's] terms do not violate the MMWA." *Id.* at 701. Here, it is far from certain (nor does Plaintiff concede) that the warranty simply excludes coverage for damage caused by the use of third-party repair or parts. Again, Defendant's warranty advises consumers that "[o]nly the use of Keurig® parts will guarantee proper functioning and lifetime," which a reasonable consumer could interpret as conditioning warranty protection itself—not merely carving out specific exclusions. 4-ER-606. *See* 16 C.F.R. § 700.10(c).

Additionally, Defendant's series-qualifier argument, based on the notion that the phrase "damages caused by" modifies all items in the following series, including the items of third-party products and services, strains credulity in light of the copious allegations concerning reasonable consumers' interpretation of the

19

language. Contrary to Defendant's assertions, "[a]mbiguities arise when contractual language reasonably may be susceptible to more than one interpretation . . . ." *Abers v. Rounsavell*, 116 Cal. Rptr. 3d 860, 865 (Cal. Ct. App. 2010) (citation omitted). Here, Plaintiff has adequately alleged reasonable consumers could properly construe the warranty as negating coverage based on the use of non-Keurig services or parts.

Lastly, Defendant contends other provisions in the MMWA somehow negate Section 2302(c) and 16 C.F.R. § 700.10(c). *See* Def.'s Br. at 51 (*citing* 15 U.S.C. § 2302(a)(6); 15 U.S.C. § 2302(a)(10)), 56 (*citing* 23 U.S.C. § 2301(6)(A)), 57 (*citing* 15 U.S.C. § 2310(10), 15 U.S.C. § 2302(a)(7), 16 C.F.R. § 701.3(a)(5), 15 U.S.C. § 2307). These provisions permit certain exceptions and exclusions from the terms of a warranty, however, they should not be read to invalidate the clear prohibitions against tying set forth in Section 2302(c) and 16 C.F.R. § 700.10(c). *See Get Oil Out! Inc. v. Exxon Corp*., 586 F.2d 726, 729 (9th Cir. 1978) ("'[W]hen two statutes are capable of co-existence, it is the duty of the courts . . . to regard each as effective.'" (citation omitted).

In sum, should the Court reach the issue of whether Defendant's warranty violates the MMWA, it should find, at the bare minimum, that the warranty language unlawfully conveys that warranty coverage is conditioned on the consumer's use of only authorized service repair and parts.

20

## III.   Defendant Misapplies the UCL's Safe Harbor Doctrine.

Plaintiff anticipated Defendant would argue the case should be dismissed on the alternative ground that she failure to plead damages (despite the District Court declining to reach the issue). However, Defendant fails to demonstrate (1) the UCL's safe harbor doctrine actually applies in this instance and (2) Plaintiff is incapable of alleging damages.

The UCL's safe harbor doctrine is a narrow exception that applies only when a legislature has expressly declared that "no action should lie." *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 973 P.2d 527, 541 (Cal. 1999). It does not apply simply because the underlying statute lacks a private right of action. Indeed, California and federal courts have routinely held that the UCL may be predicated on such statutes. *See, e.g., Ingalls v. Spotify USA, Inc.*, 2017 U.S. Dist. LEXIS 110817, at *6 (N.D. Cal. July 17, 2017); *Chabner*, 225 F.3d at 1048; *Matoff v. Brinker Rest. Corp.*, 439 F. Supp. 2d 1035, 1038 (C.D. Cal. 2006).

Defendant has not—and cannot—identify any provision of the MMWA that expressly prohibits private enforcement through state-law mechanisms. To the contrary, Section 2302(c) and 16 C.F.R. § 700.10(c) establish affirmative duties for manufacturers concerning consumer warranties. The UCL permits a plaintiff to enforce those duties where they amount to "unlawful" or "unfair" business practices. *See Cel-Tech*, 973 P.2d at 539 (the UCL is "sweeping" and borrows

21

violations of other laws). Contrary to Defendant's contentions, the MMWA's statutory standing requirement only applies to plaintiffs who are pursuing claim *under the MMWA's private right of action*. *See* 15 U.S.C. § 2310(d)(1) ("a consumer who is damaged by [a violation] under this chapter . . . *may* bring suit for damages") (emphasis added). This language does not preclude a consumer from enforcing a particular provision within the MMWA under a state cause of action, such as the UCL. For this reason, Defendant's reliance on *Zhang v. Superior Court*, 304 P.3d 163 (Cal. 2013), is misplaced. There, the California Supreme Court barred a UCL claim because the plaintiff sought to enforce a statute that the Legislature had explicitly placed outside the reach of private litigants. *Id.* at 177. No such bar exists here.

Defendant also relies on *Asencio v. Miller Brewing Co,* 2006 U.S. Dist. LEXIS 103716 (C.D. Cal. Aug. 11, 2006) and *In re Vaccine Cases*, 36 Cal. Rptr. 3d 80, 94-95 (Cal. Ct. App. 2005), in support of their argument that a UCL claim cannot proceed unless statutory prerequisites are met. However, those cases involved procedural bars to relief, namely, failure to serve pre-suit notice. *Id.* Substantive requirements concerning the "rights and remedies" underpinning the underlying law, like Section 2301(d)'s damages requirement, are not germane to whether a UCL claim has been properly pled. This is particularly true where the UCL has its own standing requirement, which Plaintiff has readily established. *See*

Section I(A)(3) *supra*. Defendant's argument that the MMWA's statutory standing requirement is somehow a procedural requirement is meritless. "A lack of statutory standing is a merits determination that requires dismissal for failure to state a claim." *Naranjo v. CRGTS, Inc*., 2022 U.S. Dist. LEXIS 71915, at *5 (E.D. Wa. Apr. 19, 2022) (*citing Maya v. Centex Corp*., 658 F.3d 1060, 1067 (9th Cir. 2011)).

Even if the Court were to require that Plaintiff make a distinct showing of MMWA "damages" to sustain her UCL claims, Plaintiff's allegations more than suffice. Courts have made clear that "damaged" under the MMWA must be read in context, and not conflated with a rigid "actual damages" requirement. As the Supreme Court explained in *FAA v. Cooper*, 566 U.S. 284, 292 (2012), "actual damages" is a term without fixed meaning, varying by statute. *Id.* ("the meaning of 'actual damages' is far from clear"). Here, Congress used the broader term "damaged" in Section 2310(d)(1) and expressly permitted "legal and equitable relief"—reflecting an intent to offer consumers broad remedial access. 15 U.S.C. § 2310(d)(1). Plaintiff was damaged when she purchased a coffee maker accompanied by a warranty that unlawfully restricted third-party repairs, interfering with her right to use the product she purchased, and thus diminishing the value of the product. 4-ER-612.

Courts routinely hold that economic injury arising from interference with property rights constitutes actionable damage under California law and which

23

informs the MMWA's damages analysis. Indeed, courts "look to state law to determine the applicable measure of damages . . . '" under the MMWA. *Pyskaty v. Wide World of Cars, LLC*, 856 F.3d 216, 223–24 (2d Cir. 2017). Under California law, damages include any interference with the economic value or utility of one's property. *See Intel Corp. v. Hamidi*, 71 P.3d 296, 302-03 (Cal. 2003). Here, Plaintiff alleges that her product was worth less than it would have been had it come with a lawful, unrestricted warranty—a concrete economic injury that satisfies both state and federal standards. 4-ER-612. As the court emphasized in *Barrack v. Kolea*, 651 A.2d 149 (Pa. Super. Ct. 1994), "[a]ppellees may not have suffered a harm, but they have been damaged by not receiving what they had contracted to receive." *Id.* at 155. The same applies here: Plaintiff did not get the full, lawful benefit of her bargain.

The district court's reasoning in *Schaer v. Newell Brands Inc.*, 2023 U.S. Dist. LEXIS 28028 (D. Mass. Feb. 15, 2023), supports this conclusion. In *Schaer*, the court held the plaintiff's purchase of a product with an unlawful tying provision amounted to an "injury in fact" and a diminution in product value sufficient to proceed under the MMWA. *Id.* at *4. While Defendant attempts to minimize *Schaer* as merely addressing Article III standing, the court made clear that the same economic harm was actionable under the MMWA's own "damaged by" standard. *Id.* at *3 ("Plaintiff was damaged by the warranty's repair restriction . . . ,

24

resulting in a lower value of and overpayment for the coffee maker."). Moreover, the *Schaer* court did not find or suggest that consumers must experience physical failure of their products before they can challenge illegal warranty terms. *Id.*

Additionally, Plaintiff's allegations are far from conclusory statements of overpayment. *See* Def.'s Br. at 70-72. The warranty affirmatively conditions coverage on the use of Keurig-approved parts, chilling consumers from exercising their right to repair and reducing the scope of the warranty coverage. Courts have consistently found that limitations on the use of purchased goods, even absent physical harm, can amount to economic injury. See *Altvater v. Breckenridge*, 345 P.2d 358, 361-62 (Cal. Ct. App. 1959) (property interest impaired by restriction on use); *Thrifty-Tel, Inc. v. Bezenek*, 46 Cal. App. 4th 1559, 1567 (1996) (interference with chattel gives rise to damages).

Finally, Defendant's reliance on outdated or inapposite cases to overstate the damages requirement under the MMWA is unavailing. These decisions either misread the MMWA to impose a non-existent "actual damages" requirement or dismissed complaints based on pleading deficiencies not present here. *McGarvey v. Penske Auto. Grp., Inc.*, 639 F. Supp. 2d 450, 456 (D.N.J. 2009) ("a plaintiff 'is required to show that he has sustained *actual damage*'") (emphasis in original); *Sasso v. Tesla, Inc.*, 584 F. Supp. 3d 60, 78 (E.D.N.C. Feb. 7, 2022) (plaintiff "does not plausibly allege it suffered actual harm as a result of Tesla's alleged

failure to comply with the MMWA's substantive provisions"), *Atchole v. Silver Spring Imps., Inc.*, 379 F. Supp. 2d 797, 802 (D. Md. 2005) ("Plaintiff is required to show that he has sustained actual damage") and *Moroz v. Alexico Corp.*, 2008 U.S. Dist. LEXIS 1166 (E.D. Pa. 2008) (limiting MMWA claims "only to redress a breach of warranty that causes the Plaintiff to sustain actual damages"). They also predate or ignore *Schaer*, which squarely rejects the notion that a product must malfunction to give rise to MMWA liability. Plaintiff's allegations, grounded in diminished value, loss of use, and interference with core ownership rights, fall well within the actionable scope of the MMWA and California law alike.

## IV. The District Court Abused its Discretion in Granting Keurig's Motion to Dismiss *With* Prejudice.

Defendant's contention that leave to amend was properly denied on futility grounds is erroneous and inconsistent with the Supreme Court's mandate that leave to amend should be "freely given when justice so requires." *Foman v. Davis*, 371 U.S. 178, 182 (1962) (*citing* Fed. R. Civ. Proc., Rule 15(a)). The analysis does not turn on pleading sufficiency, but the procedural opportunity to test the claims on the merits. *Id.* "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, [s]he ought to be afforded an opportunity to test h[er] claim…." *Id.* Denial of amendment without a stated reason is an abuse of discretion. *Id.*

26

Here, Plaintiff made a good faith effort to comply with the District Court's prior guidance by amending the complaint to remove allegations that might be construed as sounding in fraud, such that the remaining allegations constituted a "proper subject of relief" under the UCL's "unlawful" and "unfair" prongs without requiring reliance. *Id.* The District Court's one-sentence denial provided no explanation as to why further amendment would be futile, despite Plaintiff's attempts to clarify her legal theory. This warrants reversal. *Id.*

### A. Plaintiff Did Not Waive Her Right to Seek Leave to Amend.

Defendant's argument Plaintiff waived her request for leave to amend misrepresents the legal standard governing waiver and improperly relies on cherry-picked sound bites from non-binding dicta. *See* Def.'s Br. at 40-46.

First, Defendant's authority concerned arguments *raised for the first time on appeal*, not—as here—a timely request for leave to amend squarely presented to the district court. *See, e.g., In re Mercury Interactive Corp. Sec. Litig*, 618 F.3d 988, 992 (9th Cir. 2010) (waiver only if "the argument was not 'raised sufficiently for the trial court to rule on it'") (citations omitted); *Gabourel v. Luxottica of Am., Inc.*, 2024 U.S. App. LEXIS 1628, at *2 (9th Cir. Jan. 24, 2024) (despite potential waiver, court considered an argument raised for the first time on appeal); *Holley-Gallegly v. TA Operating, LLC*, 74 F.4th 997, 1001 (9th Cir. 2023) (no waiver because the district court "explicitly ruled on the delegation clause issue" after defendant raised it). In

*Holley-Gallegly*, the fact that the defendant raised the delegation clause with "specificity and vigor" was not central to the holding—rather, that fact merely bolstered the finding that the argument was adequately preserved. 74 F.4th at 1001. Here, there is no question that Plaintiff preserved her explicit request for "leave to cure any pleading deficiencies," giving the court a clear opportunity to consider it. *See* 2-ER-139.

Second, there is no waiver where the district court actually ruled on the issue. In *Holley-Gallegly*, the court emphasized that "[w]hen a party takes a position and the district court rules on it, there is no waiver." 74 F.4th at 1001 (*citing Yamada v. Nobel Biocare Holding AG*, 825 F.3d 536, 543 (9th Cir. 2016)). That is precisely what happened here. The District Court denied Plaintiff's request for leave to amend, demonstrating the issue was adjudicated and preserved. *See* 1-ER-6.

Third, the supposed brevity of Plaintiff's request is irrelevant, given the liberal standard for amendments under Rule 15. Brief or generic requests to amend (including those in opposition briefs) are sufficient to preserve the issue. *See, e.g., Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1053 (9th Cir. 2003) (reversing denial of leave to amend based on the "plaintiffs' proffer that additional evidence was forthcoming" without a detailed proposal).

In short, Plaintiff timely raised the issue, the district court ruled on it, and binding precedent establishes this was more than sufficient to preserve the right to

seek leave to amend. This is consistent with the strong presumption in favor of amendment under Rule 15(a).

### B. The District Court Abused its Discretion in Denying Leave to Amend Because Amendment Was Not Futile.

Keurig notes the District Court's "broad discretion" to deny amendment on grounds the complaint had been previously amended. Def.'s Br. at 11 (*citing Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013)). However, that discretion is not unbounded. The Ninth Circuit has emphasized that the burden is on the district court to articulate why amendment would be futile. *See Eminence Capital*, 316 F.3d at 1052. Here, the District Court failed to meet its burden with its one-sentence explanation.

Additionally, unlike the plaintiffs in Defendant's cited authority, Plaintiff did not simply refile the same deficient claims without change. Rather, Plaintiff's SAC was a good faith attempt to respond to the District Court's concerns that her fraud-based claims failed to plead reliance by eliminating deception-based allegations. This effort to reframe the issue weighs heavily in favor of granting leave to amend, even assuming the SAC ultimately fell short. See *Eminence Capital*, 316 F.3d at 1053 (leave to amend appropriate based on the plaintiff's efforts to assert "additional theories not previously alleged"). Further amendment should have been granted to more clearly articulate how Defendant's conduct does not sound in fraud.

29

Defendant's authority, including *Telesaurus VPC, LLC v. Power*, 623 F.3d 998 (9th Cir. 2010) and *Kroessler v. CVS Health Corporation*, 977 F.3d 803, 815 (9th Cir. 2020), actually support reversal of the District Court's denial of leave to amend. In *Power*, the Ninth Circuit held amendment was not futile where new facts could support liability under the Federal Communications Act ("FCA"). *Power*, 623 F.3d at 1005–06. Likewise, in *Kroessler*, the court found the plaintiff could allege extra-label evidence to avoid FDCA preemption and held leave to amend should have been granted. *Kroessler*, 977 F.3d at 816.

Defendant's remaining authorities do not compel a different result. Specifically, Defendant relies on *Stross v. Zillow, Inc*., 2023 U.S. App. LEXIS 32505 (9th Cir. Dec. 8, 2023), *Bracht v. Deckers Outdoor Corp*., 2012 U.S. Dist. LEXIS 199720 (C.D. Cal. Oct. 2, 2012), and *Velasquez v. Chase Home Fin. LLC*, 2011 U.S. Dist. LEXIS 4097 (N.D. Cal. Jan. 10, 2011), which it contends compels Plaintiff to provide specific facts justifying leave to amend. However, Plaintiff has repeatedly expressed an intent to remove any and all suggestion from the complaint that this matter sounds in fraud. *See* Pl.'s Br. at 45. Assuming the Court is disinclined to reverse the dismissal of the SAC**,** at a minimum, the Court should reverse the District Court's denial of leave to amend as an abuse of discretion given Plaintiff's good faith effort to refine her case theory.

## CONCLUSION

For the foregoing reasons, the Court should reverse the District Court's order granting Keurig's Motion to Dismiss and remand for further proceedings.

Dated: March 28, 2025                    Respectfully submitted,


                                         */s/ Gillian L. Wade*
                                         Gillian L. Wade
                                         Sara D. Avila
                                         Marc A. Castaneda
                                         Kristy Graham
                                         **WADE KILPELA SLADE LLP**

                                         *Attorneys for Appellant Christina Groff*

31

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Certificate of Compliance for Briefs

**This brief contains 6, 999 words,** excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[ x ] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties;
    [ ] a party or parties are filing a single brief in response to multiple briefs; or
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature**: */s/ Gillian L. Wade*_____ **Date** March 28, 2025_
*(use "*s/[typed name]*" to sign electronically filed documents)*

32

## CERTIFICATE OF SERVICE

I hereby certify that on March 28, 2025, I electronically filed the foregoing with the Clerk of the Court of the United States Court of Appeals for the Ninth Circuit using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.


**Signature**: */s/ Gillian L. Wade*　　　　**Date** March 28, 2025